FILED

1  Christopher J. Hamner, Esq.  (SBN 197117)
2  Amy T. Wootton, Esq.  (SBN 188856)
   **HAMNER LAW OFFICES, APC**
3  555 W. 5th Street, 31st Floor
   Los Angeles, California 90013
4  Telephone: (213) 533-4160
5  Facsimile: (213) 533-4167
   chamner@hamnerlaw.com
6  awootton@hamnerlaw.com
7
   Attorneys for Plaintiff PAYAM AHDOOT, on behalf of himself and all others
8  similarly situated

2013 APR 22  PM 3:48

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

9           **UNITED STATES DISTRICT COURT**
10          **CENTRAL DISTRICT OF CALIFORNIA**

11                                   Case No.: **CV 13 - 02823 - GW (CRZx)**

12  PAYAM AHDOOT, on behalf of     **CLASS ACTION COMPLAINT**
    himself and all others similarly   **FOR:**
13  situated, and the general public,

14                                   **1. VIOLATION OF THE UNFAIR**
                                         **COMPETITION LAW, Business**
15          Plaintiff,                   **and Professional Code § 17200 et**
                                         **seq.;**
16  v.                               **2. VIOLATIONS OF CONSUMER**
                                         **LEGAL REMEDIES ACT, Civil**
17                                       **Code §1750 et seq.;**
    Babolat VS North America, Inc. a  **3. BREACH OF EXPRESS**
18  Colorado Corporation and DOES 1      **WARRANTY;**
    through 10, inclusive,           **4. VIOLATION OF FALSE**
19                                       **ADVERTISING LAW, California**
20          Defendants.                  **Business and Professions Code §§**
                                         **17500 *et seq.* ;**
21                                   **5. FRAUD;**
                                     **6. NEGLIGENT**
22                                       **MISREPRESENTATION;**
23                                   **7. UNJUST ENRICHMENT**
24
25
26
27                                   **DEMAND FOR JURY TRIAL**

CLASS ACTION COMPLAINT

Plaintiff, PAYAM AHDOOT ("Plaintiff") brings this action on behalf of himself and all others similarly situated against defendant Babolat VS North America, Inc., a Colorado Corporation ("Babolat" or "Defendants") and Does 1 through 10 and states:

## JURISDICTION AND VENUE

1.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the class of plaintiffs are citizens of states different from Defendants.  Further, greater than two-thirds of the class members reside in states other than the state in which defendant is a citizen.

2.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

    (a) are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this district;

    (b) do substantial business in this district; and

    (c) are subject to personal jurisdiction in this district.

    (d) Babolat is headquartered in Louisville, Colorado, and distributes and

CLASS ACTION COMPLAINT                1

sells to many different retailers in California, including but not limited to, Westwood Sporting Goods, located at 1065 Gayley Avenue, Westwood, CA 90024; Merchant Of Tennis, located at 1118 S. La Cienega Blvd, Los Angeles, CA 90035; Tennis Warehouse, located at 747 Buckley Road, San Luis Obispo, CA 93401; Dick's Sporting Goods, Big 5 and Sport Chalet.

Plaintiff has concurrently filed an affidavit of proper venue pursuant to Section 1780(d) which states facts showing that the instant action has been commenced in a county which is a proper place for the trial of the action.

## SUMMARY OF THE CASE

3.      Babolat is a maker and worldwide seller of tennis racquets founded in 1875 in Lyon, France. Babolat manufactures, markets, and promotes its tennis racquets, and various other sporting items. In 2000, Babolat established its U.S. headquarters in Boulder, Colorado. The company's biggest selling lines of racquets are the Pure Drive line (endorsed by Andy Roddick) and the Aeropro Drive line (endorsed by Rafael Nadal).

4.      Babolat markets and sells its racquets in the U.S. through authorized dealers throughout the country and over the internet. In its advertisements, Babolat claims its sponsored players use these racquets on the professional tennis tour. In many cases, this is not true. The racquets which many of the Babolat-sponsored pros actually use are much different than and not available to the public. Prior to major professional tennis tournaments, Babolat paints and otherwise modifies

CLASS ACTION COMPLAINT                    2

these pros' customized racquets so that they appear to be identical to the ones sold in stores and on the internet.  Members of the public are led to believe they are buying the same racquets used by their favorite tennis pros, when in fact there are significant differences between the racquets used by the pros and those sold to the public.

5.     By way of example, Rafael Nadal, who is currently the fourth ranked men's tennis player in the world (and formally ranked number one in the world), endorses the Babolat AeroPro Drive line of tennis racquets.   Babolat represents on its website, in its marketing materials to its retailers and in print advertisement that Mr. Nadal uses the AeroPro on the professional tour.  Babolat retailers sell the AeroPro Drive  in the U.S for approximately $199.  The AeroPro Drive line of racquets is colored with a distinctive yellow and black striping.  Mr. Nadal is seen on the professional tennis tour using a racquet that closely resembles the yellow and black striped AeroPro Drive GT.

6.     However, the racquet Mr.  Nadal uses on tour is not the current AeroPro Drive racquet sold to the public.  The racquet Mr. Nadal has used on the pro tour for many years is instead a customized racquet made with different material, with different stiffness, and different balance points.  Mr. Nadal's racquet is not available for sale to the public.  Babolat makes many of these custom racquets for Mr. Nadal each season, which are made to appear like the newest

CLASS ACTION COMPLAINT                    3

Babolot AeroPro Drive racquet available to the public.

7.     Plaintiff, on behalf of himself and the proposed class, alleges that for at least the last four (4) years, Babolat has misrepresented to its customers that the Babolat racquets used on the professional tennis tour by its sponsored players are the same as the racquets that are made available to the public.  In reality, Babolat deceptively alters the actual racquets used by its pros so that they look like the racquets Babolat sells to U.S. customers.  Plaintiff, on behalf of himself and the proposed class, seeks damages for false advertising, and restitution.

## ALLEGATIONS

### A.     Babolat-Sponsored Players

8.     On its website and through its advertising and marketing materials, Babolat claims that certain professional tennis players, including Rafael Nadal, use the Babolat racquets which are sold to the public, on the professional tour.  This is not true.  Many Babolat-sponsored players do not use the Babolat racquets which they endorse and supposedly play with on tour.  These players in fact use customized racquets, made with different materials, different stiffness and different balance points—these racquets are often the one the player has used for years – which Babolat paints, modifies, customizes and otherwise alters to look like the Babolat racquets actually sold to consumers in the U.S.  The sponsored player is then seen in major tennis tournaments like Wimbledon and the U.S. Open using the

CLASS ACTION COMPLAINT                    4

racquet which Babolat represents to its customers is the same racquet that (1) the particular pro uses on tour, and (2) is available for purchase by the general public.

9.      Plaintiff alleges, on information and belief, and after significant investigation, that many of these professional tennis players never use the Babolat racquet they sponsor and *appear* to be using in professional tournaments.  Instead, on information and belief, many of these players regularly, if not always, use a different racquet, which is customized, painted, modified and otherwise disguised to look like the particular model of Babolat racquet that the player sponsors and purportedly uses.

## B.      Babolat Advertisements and Statements.

10.     Babolat markets and advertises its racquets on the internet at babolat.com.  This website has a U.S version the customer can select, which directs customers to Babolat "Dealers" throughout the U.S.  The website also has a section where it promotes a roster of the professional tennis players who endorse Babolat racquets.   Viewers of the website can choose to view a player profile page for each Babolat-sponsored player.  The player profile for each such player lists the racquet that player purportedly uses with a picture of the particular racquet at the bottom of the page.

11.     For example, on the babolat.com player profile page for Rafael Nadal, it states: "Racquet: AeroPro Drive GT".  At the bottom of Mr. Nadal's profile

page is has a picture of a black and yellow striped AeroPro Drive racquet. Clicking on this picture opens a page which markets the Babolat AeroPro Drive line of racquets. The website also boasts:

" Nadal's racquet of choice.

The Aeropro Drive 2013 is a great fit for a very wide array of players. This new version will be equipped with the new Cortex Active Technology at the top of the handle to provide an even better solid feel thanks to Cortex material and a new handle construction.  The Aero shaft is designed for faster swing speeds. The result is more power and spin."

12.    Babolat also markets, advertises and sells its tennis racquets in the U.S through Babolat authorized dealers, such as Westwood Sporting Goods, Tennis Warehouse, Tennis Express and Tennis Experts.  Each of these Babolat dealers has a significant web presence and sells thousands of Babolat racquets each year over the internet to U.S. consumers.

13.    Tennis Warehouse states on its website the Babolat AeroPro Drive GT is "Rafael Nadal's racquet of choice."  Tennis Warehouse states on its website the Babolat Pure Drive Roddick GT Plus is "Andy Roddick's signature racquet." Plaintiff alleges on information and belief that Babolat and each of its Dealers are aware that the racquets marketed and sold through these Dealers have little  in common with the racquets players like Rafael Nadal and Andy Roddick actually

use in pro tournaments. The principal similarity between the racquets is their appearance, because the customized racquets have deceptively been made to look like the lesser racquets sold to the public. One of the internet ads in question states:

> **Babolat AeroPro Drive 2013**
>
> *New* **Rafael Nadal's racquet of choice,** the AeroPro Drive offers a truly exceptional blend of maneuverability, stability and all-around playability. Strung weight: 11.3 oz. Headsize: 100 sq. in. Standard length. This racquet is available for pre-sale. Due in stock 12/12.
>
> (Emphasis included.)

14.   Tennis Express also claims on its website, that the Babolat AeroPro Drive GT is "Rafael Nadal's racquet of choice."

15.   Tennis Experts advertise the following, next to a yellow and black striped 2013 AeroPro Drive racquet:

> **Babolat AeroPro Drive Plus GT 2013**
> The **Babolat AeroPro Drive Plus GT** is the extended version of **Rafael Nadal's** racquet of choice. This is an exceptionally aerodynamic racquet, allowing for tremendous swing speed, awesome power and great access to spin.   (Emphasis included.)

///
///
///

16.    The Tennis Warehouses website also provides a reviews page which states:

> **Babolat AeroPro Drive Racquets Review**
>
> One of the hottest up and coming players on the ATP tour is **Rafael Nadal** of Spain. His athleticism, combined with amazing shot-making and shouts   of "Vamos!", make him an exciting player to watch.
>
> Nadal began using the **Babolat AeroPro Drive** in 2004, and his ATP ranking has steadily climbed to a career high of 18 (2/1/05). Using his new AeroPro Drive, Nadal helped capture the Davis Cup for Spain in 2004 with an impressive win over fellow Babolat player, Andy Roddick, in the final.  Is it the racquet...?
>
> The AeroPro Drive is a hybrid racquet of sorts, combining Babolat's Woofer technology, which revolutionized the interactivity between the strings and the frame, and AeroModular technology, which focuses on applying laws of aerodynamics to the shape and contours of the racquet frame. (Emphasis included.)

17.    Plaintiff alleges on information and belief, and after substantial pre-filing investigation, that these and other Babolat Dealers and retailers are simply repeating marketing materials these racquet sellers receive from Babolat, which are false and misleading.

## C.    Babolat Alters Its Players' Actual Racquets to Look Like the Ones It Sells To the Public.

18.    Plaintiff alleges on information and belief, and after significant pre-filing investigation, that the aforementioned false advertising is part of a policy and practice by Babolat.  Mr. Nadal does not use the current version of the Babolat

Babolat AeroPro Drive racquet.  He instead uses a custom racquet produced by Babolat which is customized, altered, modified and/or painted over before televised matches to look like the latest version of the Babolat AeroPro Drive.

19.     Plaintiff alleges on information and belief that Babolat does this to deceive consumers into thinking they are purchasing the same tennis racquet Raphael Nadal and others use on the professional tour.  Babolat benefits by leading the public to believe that Nadal changes his racquet periodically, by using supposedly "new and improved" versions of Babolat racquets with new technology; this is intended to coerce consumers into thinking that they, too, would benefit by purchasing the latest version of the racquet supposedly being used by Nadal.  In fact, Nadal does not change his racquet with the frequency Babolat leads the public to believe.

20.     Plaintiff alleges that he and the proposed class have been damaged by the aforementioned deceptive marketing practices by Babolat.

**D.     Reliance by and Harm to the Class.**

21.     Plaintiff alleges on information and belief that Babolat has engaged in this unfair advertising conduct for at least the last 4 years, and that said conduct continues.

22.     U.S. consumers who purchased some of the racquets in question have reasonably relied on the representations that the Babolat-sponsored players, such as

CLASS ACTION COMPLAINT                    9

Rafael Nadal, are in fact using the models that Babolat states, in its advertisements, the player actually uses on tour. This reliance is furthered by the fact that the racquet the Babolat-sponsored player uses has been customized, "painted" and otherwise altered to look like the new model advertised and sold to U.S. consumers. Plaintiff reserves the right to seek to amend this complaint to state a claim for fraud, should Plaintiff discover additional facts which would tend to prove such claim.

## PARTIES

23.    At all times relevant to this matter, plaintiff Payam Ahdoot ("Plaintiff") resides and continues to reside in this district. During the class period, Plaintiff was exposed to and saw Defendants' advertising claims in printed advertisements, on the internet and through television images depicting what appeared to be Rafael Nadal playing with the tennis racquet that was being sold to the public in 2011. In reliance on these claims and images, Plaintiff purchased the Babolat AeroPro from the Westwood Sporting Goods on or about January 15, 2011. As a result, Plaintiff suffered injury in fact and lost money as a result of the false and deceptive advertising.

24.    Babolat, is a Colorado corporation headquartered in Louisville, Colorado and does business in the State of California. Babolat has dealers that it distributes to in Northern and Southern California, including but not limited to,

CLASS ACTION COMPLAINT                    10

Westwood Sporting Goods, located at 1065 Gayley Avenue, Westwood, CA 90024; Merchant Of Tennis, located at 1118 S. La Cienega Blvd, Los Angeles, CA 90035; and Tennis Warehouse, located at 747 Buckley Road, San Luis Obispo, CA 93401. From its headquarters and throughout California, Babolat perpetuated its false and deceptive advertising campaign at issue, and promotes, markets, and distributes its racquets to hundreds of thousands of consumers throughout the United States.

25.    The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 50, inclusive, are currently unknown to Plaintiff, who therefore sues Defendants by such fictitious names. Plaintiff is informed and believes, and based thereon alleges, that each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein. Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

26.    At all times mentioned herein, each of said Defendants participated in the doing of the acts alleged to have been done by the named Defendants; and furthermore, the Defendants, and each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times mentioned herein, were acting within the course

and scope of said agency and employment.

27. At all times mentioned herein, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

28. At all times herein mentioned, the acts and omissions of various Defendants, and each of them, occurred with and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

29. At all times mentioned herein, Defendants, and each of them, approved of, condoned and/or otherwise ratified each and every one of the acts or omissions complained of herein. At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and every one of the other Defendants, thereby proximately causing the damages as alleged.

## CLASS DEFINITION AND ALLEGATIONS

30. Plaintiff brings this action on behalf of himself and members of a Class of similarly situated consumers defined as: All persons or entities who purchased a Babolat AeroPro Drive, AeroPro Drive GT, Pure Drive Roddick GT, Pure Storm +GT, AeroPro Drive Plus GT and other Babolat tennis racquets purportedly used by a Babolat-sponsored tennis professional in the United States in

the last four (4) years.

31.    ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes, and on that basis alleges, that the proposed Class contains hundreds of thousands of members.  The precise number of Class members is unknown to Plaintiff.  The true number of Class members is known by the Defendant, however, and thus, may be notified of the pendency of this action by first class mail, electronic mail, and by published notice.

32.    ***Existence and Predominance of Common Questions of Law and Fact.*** Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)    whether Defendants had adequate substantiation for their claims prior to making them;

(b)    whether the advertising claims made by Defendants are true, or are false and/or misleading, or reasonably likely to deceive;

(c)    whether Defendants' alleged conduct violates public policy;

(d)    whether the alleged conduct constitutes violations of the laws asserted;

(e)   whether Defendants engaged in false or misleading advertising;

(f)   whether Plaintiff and Class members have sustained monetary loss and the proper measure of that loss;

(g)   whether Plaintiff and Class members are entitled to an award of punitive damages; and;

(h)   whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

33.   *Typicality.*  Plaintiff's claims are typical of the claims of the members of the Class in that the Defendants were unjustly enriched as a result of Plaintiff's and the Class' respective purchases of the tennis racquets.

34.   *Adequacy of Representation.*  Plaintiff will fairly and adequately protect the interests of the members of the Class.  Plaintiff has retained counsel experienced and highly successful in complex consumer class action litigation. Plaintiff intends to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

35.   *Superiority.*  A class action is superior to all other available means for the fair and   efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.  It would thus be virtually impossible for the

Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

36.    Unless a Class is certified, Defendants will retain monies received as a result of its conduct that was taken from Plaintiff and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

### FIRST CLAIM FOR RELIEF

### Violation of Business & Professions Code Section 17200, *et seq.*

37.    Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 36 above as though fully set forth herein.

38.    Plaintiff brings this claim individually and on behalf of the Class.

CLASS ACTION COMPLAINT                    15

39.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code §§17200, et seq., 17500, et seq., California Health & Safety Code §110390 et seq., 21 U.S.C. §301, et seq., and the common law.

40.     As alleged herein, Defendants' misrepresentations and omissions of material facts, constitute "unfair" business acts and practices within the meaning of Business & Professions Code §§17200, et seq., in that Defendants' conduct was injurious to consumers, offended public policy, and was unethical and unscrupulous.

41.     Plaintiff also asserts a violation of public policy by Defendants' withholding of material facts from consumers.  Defendants' violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers including Plaintiff and the Class.

42.     Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct because he purchased Defendants' AeroPro tennis

racquet on or about January 15, 2011 from Westwood Sporting Goods in reliance upon Defendants' false advertising claims, which were made in magazines and other printed materials, on television, on the internet and perpetuated by the images of the tennis pros playing with what appeared to by the racquet available to the public. The racquet that Plaintiff purchased is not the racquet Mr. Nadal plays with despite Defendants' claims.

43.    Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

44.    The actions of Defendants constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engage in false advertising, misrepresent and omit material facts regarding the tennis racquets offered for sale to the public, and thereby offend an established public policy, and engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

45.    As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers. Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers. This conduct violates the unfair prong of

Business & Professions Code § 17200, et seq.

46.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the unlawful and fraudulent conduct described herein.

47.     Business & Professions Code §17200, et seq., also prohibits any "fraudulent business act or practice" which is alleged herein.

48.     Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, were false, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

49.     Plaintiff and other members of the Class have in fact been deceived as a result of their reliance on Defendants' representations and omissions.  This reliance has caused harm to Plaintiff and other members of the Class. Plaintiff and other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

50.     As a result of its deception, Defendants have been able to reap unjust revenue and profit.

51.     Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

52.     Plaintiff, on behalf of himself, all others similarly situated, and the

general public, seeks restitution and disgorgement of all money obtained from

Plaintiff and the members of the Class collected as a result of unfair competition,

an injunction prohibiting Defendants from continuing such practices, corrective

advertising and all other relief this Court deems appropriate, consistent with

Business & Professions Code §17203.

## SECOND CLAIM FOR RELIEF
### Violations of the Consumers Legal Remedies Act -
### Civil Code §1750 *et* seq.

53.     Plaintiff incorporates by reference and realleges each and every

allegation contained in paragraphs 1 through 52 above as though fully set forth

herein.

54.     Plaintiff brings this claim individually and on behalf of the Class.

55.     This cause of action is brought pursuant to the Consumers Legal

Remedies Act, California Civil Code §1750, *et seq.* (the "Act").  Plaintiff and

members of the Class are consumers as defined by California Civil Code §1761(d).

Defendants' tennis racquets described herein are goods within the meaning of

California Civil Code §1761(a).

56.     Defendants, Babolat, and each of them, violated and continue to

violate the Act by engaging in the following practices proscribed by California

Civil Code §1770(a) in transactions with plaintiff and the Class which were

intended to result in, and did result in, the sale of the above-referenced tennis

racquets:

(a) The following unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(1) Passing off goods or services as those of another.

\*    \*    \*

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another.

\*    \*    \*

(9) Advertising goods or services with intent not to sell them as advertised.

57.     Defendants, and each of them, violated the Act by representing and advertising that their racquets, including, but not limited to the Babolat AeroPro Drive GT tennis racquet, offered for sale to the public, were the same as the racquets used in professional competition by, *inter alia*, Rafael Nadal when they knew, or should have known, that the representations and advertisements were unsubstantiated, false and misleading. Defendants, and each of them, concealed the truth about the racquets sold to the public. By doing so, Defendants, and each of them, encouraged consumers to purchase the racquets that they believed were

the same as those used by the Babolat-sponsored tennis pros.

58.     Pursuant to California Civil Code §1782(d), Plaintiff and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

59.     Pursuant to section 1782 of the Act, by letter dated March 11, 2013, Plaintiff notified Defendant in writing of the particular violations of the Consumer Legal Remedies Action ("CLRA") set forth in §1770 and demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of its intent to so act.  The CLRA letter was mailed as directed by Civil Code §1782.

60.     Defendants have failed to rectify or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act. Therefore, Plaintiff further seeks claims for actual, punitive and statutory damages, as appropriate.

61.     Defendants' conduct is malicious, fraudulent, willful and wanton, and Defendants intentionally misleads and withholds material information from consumers in order to increase the sale of the racquets.  Plaintiff and the class members would not have purchased the racquets had it not been for Defendants' misrepresentations and concealment of material misrepresentations and omissions.

62.     Concurrent with the filing of the complaint in this action, Plaintiff filed an Affidavit of Venue in accordance with Civil Code section 1780(d).

## THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

63.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 62 above as though fully set forth herein.

64.     Plaintiff brings this claim individually and on behalf of the Class.

65.     Plaintiff, and each member of the Class, formed a contract with Defendants at the time Plaintiff and the other members of the Class purchased Defendants' tennis racquets based on the representations and warranties made by Defendants.  These representation and warranties included representations that Babolat-sponsored pros, including but not limited to Mr. Nadal, used the tennis racquet(s) offered for sale to the public, when in fact such racquets were not available to the public.  The terms of that contract include these promises and affirmations of fact made by Babolat in their advertisements and through their marketing campaign, as described above.  This advertising included express warranties, which became part of the basis of the bargain, and is part of a standardized contract between plaintiff and the members of the Class on the one hand, and Defendants on the other.  In reliance on these claims and images,

Plaintiff purchased the Babolat AeroPro from the Westwood Sporting Goods on or about January 15, 2011.

66.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

67.    Defendants, and each of them, breached the terms of their contracts, including the express warranties with Plaintiff and the Class by not providing its consumers with the tennis racquets they believed they were purchasing, as described above.

68.    As a result of Defendants' breach, Plaintiff and the Class have been damaged in the amount of the purchase price of the tennis racquets they purchased.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF FALSE ADVERTISING LAW
### (California Business & Professions Code §§ 17500 *et seq.*)

69.    Plaintiff incorporated by reference and re-alleges each and every allegation contained in paragraphs 1 through 68 above as though fully set forth herein.

70.    California *Business and Professions* Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

71.    Defendant violated California Business and Professions Code section

17500 by, *inter alia*, misleadingly advertising that Babolat-sponsored tennis professionals, including but not limited to Rafael Nadal, used the tennis racquet(s) offered for sale to the public, when in fact such racquets were not available to the public; concealing material information about the tennis racquets available for sale to the public, specifically that such racquets are not the same as those used by the Babolat-sponsored tennis professionals such as Mr. Nadal; that the tennis professionals use customized racquets that are not available for sale by Babolat to the public.

72.    Defendant's deceptive practices were specifically designed to induce Plaintiff and members of the Class to purchase the Babolat racquets over those of its competitors. Defendant's deceptive practices were carried out in advertisements and promotions in print, on television, on Defendant's website, and other broad-based media, in order to induce Plaintiff and members of the Class to purchase Babolat tennis racquets.

73.    Plaintiff and members of the Class would not have purchased the tennis racquets had it not been for Defendant's misrepresentations and concealment of material facts. Plaintiff and members of the Class were denied the benefit of the bargain when they decided to purchase the tennis racquets over other racquets, which are often less expensive. Had Plaintiff and members of the Class been aware of Babolat's false and misleading advertising tactics, they would not

have purchased those tennis racquets purportedly used by the tennis professionals promoting the racquets, would have paid less than what they paid for the racquets, or they would not have purchased the racquets at all.

74.     The content of the advertisements, as alleged herein, were of a nature likely to deceive a reasonable consumer.

75.     Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

76.     Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions also established causation between Defendant's conduct and Plaintiff's and the members of the Class' injuries.

77.     Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

78.     As a result of the foregoing, Plaintiff and members of the Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

/ / /

/ / /

# FIFTH CLAIM FOR RELIEF

## FRAUD

79.     Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 78 above as though fully set forth herein.

80.     Plaintiff brings this cause of action on behalf of himself and the members of the Class.

81.     Defendant represented and advertised the tennis racquets, as discussed above, with false and materially misleading claims, including the claim that the Babolat-sponsored tennis players, such as Rafael Nadal uses the same racquet available for sale to the public: **"Babolat AeroPro Drive 2013   *New* Rafael Nadal's racquet of choice;" "Babolat AeroPro Drive Plus GT 2013    The Babolat AeroPro Drive Plus GT is the extended version of Rafael Nadal's racquet of choice."**

82.     Defendant conceals the truth about its products that the racquets sold are not the same as those used by the pros thereby encouraging consumers to purchase its products each year a "new" racquet is introduced and endorsed by the tennis pro.

83.     Defendant knew these statements were false and misleading. Defendant was aware of laws and regulations concerning the claims and marketing

of the racquets.

84. Whether or not the tennis professional uses a particular racquet is a material feature of the racquet itself. Plaintiff and other members of the Class would not have purchased the racquets but for Defendant's false and misleading representations and concealment of material facts.

85. Defendant made the misrepresentations and omissions stated with knowledge of the effect of concealing these material facts. Defendant knew that by misleading consumers, it would sell more racquets, which would result in higher profits.

86. By misrepresenting and concealing material information about the racquets, Defendant intended to induce Plaintiff and members of the Class into purchasing the racquets.

87. Plaintiff and the members of the Class justifiably relied on the representations made about the products.

88. Defendant's representations and omissions regarding the tennis racquets, namely that they are the same as those used by the pros, were made with knowledge or with reckless disregard of the laws of California prohibiting false and misleading statements.

89. Defendant:

    a.   made representations, as facts, which were not true and

Defendant did not believe to be true at the time made;

    b.    made assertions, as facts, which were not true and Defendant had no reasonable grounds for believing to be true at the times they were made; and/or

    c.    suppressed facts, which it was bound to disclose, or give information of other facts which were likely to mislead for want of communications of the suppressed facts.

90.    As a result of Defendant's wrongful conduct, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to monies paid for the tennis racquets, stringing the racquets, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

91.    The wrongful acts of Defendants were done maliciously, oppressively and with the intent to defraud, and Plaintiffs and members of the Class are entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish, deter, and set an example of Defendant.

92.    Defendant acted with malice, oppression, or fraudulent intent.

93.    As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiff and each member of the Class has been damaged in an amount according to proof at trial.

# SIXTH CLAIM FOR RELIEF

## NEGLIGENT MISRPRESENTATION

94.     Plaintiff incorporates by reference and re-alleges each and every allegation contained in paragraphs 1 through 93 above as though fully set forth herein.

95.     Defendant, directly or through its agents and employees, made false representations, concealments, and nondisclosures to Plaintiff and members of the Class.

96.     In making the representations of fact to Plaintiff and members of the Class described herein, Defendant has failed to fulfill its duties to disclose the material facts set forth above.  The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

97.     In making the representations and omissions, and in doing the acts alleged above, Defendant acted without any reasonable grounds for believing the representations were true, and intended by said representations to induce the reliance of Plaintiff and members of the Class.

98.     Plaintiff and members of the Class relied on these false representations, concealments and nondisclosures by Defendant when purchasing the products at issue herein, which reliance was justified.

99.     As a result of Defendant's wrongful conduct, Plaintiff and members

of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the racquets, the costs of stringing the racquet and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

## SEVENTH CLAIM FOR RELIEF

## UNJUST ENRICHMENT

100.   Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 99 above as though fully set forth herein.

101.   As described above, Defendants, and each of the, received money from Plaintiff and the proposed Class, which Defendants knowingly accepted, at the expense of Plaintiff and the proposed Class.  Plaintiff alleges it would be unjust and unconscionable to permit Defendants to be unjustly enriched at the expense of Plaintiff and the proposed Class.

102.   As a proximate result of the wrongful conduct described herein by Defendants and each of them, Plaintiff and the proposed Class have suffered and continue to suffer damages.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, on behalf of himself and the Class, prays for a

CLASS ACTION COMPLAINT                                30

judgment:

1.     Certifying the Class as requested herein, and appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

2.     Awarding Plaintiff and the proposed Class Members damages;

3.     Awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class Members;

4.     Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

5.     Ordering Defendants to engage in a corrective advertising campaign;

6.     Awarding attorneys' fees and costs to Plaintiff's counsel;

7.     Awarding punitive damages as against Defendants;

8.     Awarding fines and penalties against Defendants as permitted by law; and

9.     Providing such further relief as may be just and proper.

///

///

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Date:  April 22, 2013

**HAMNER LAW OFFICES, APC**

By
Christopher J.  Hamner
Amy T. Wootton
Attorneys for Plaintiff PAYAM AHDOOT,
on behalf of himself and all others similarly
situated

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Ralph Zarefsky.

The case number on all documents filed with the Court should read as follows:

## CV13- 2823 GW (RZx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=====================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[ ] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

Christopher J. Hamner, Esq. (SBN 197117)
Amy T. Wootton, Esq. (SBN 188856)
HAMNER LAW OFFICES, APC
555 W. 5th Street, 31st Floor
Los Angeles, California 90013
Telephone: (213) 533-4160

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAM AHDOOT, on behalf of himself and all others similarly situated, and the general public,<br><br>PLAINTIFF(S)<br><br>v.<br><br>Babolat VS North America, Inc. a Colorado Corporation and DOES 1 through 10, inclusive,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>CV13-02823 ~GW(R2x)<br><br><br>SUMMONS |

TO:    DEFENDANT(S):

A lawsuit has been filed against you.

Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney, _Christopher J. Hamner / Amy Wootton_, whose address is _555 W. 5th Street, 31st Floor, Los Angeles, California 90013_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

APR 2 2 2013
Dated: _____

By: MAR_____
Deputy Clerk

(Seal of the Court)

_[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)]._

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| I. (a) PLAINTIFFS ( Check box if you are representing yourself ☐ ) | DEFENDANTS ( Check box if you are representing yourself ☐ ) |
|---|---|
| PAYAM AHDOOT, on behalf of himself and all others similarly situated, and the general public, | Babolat VS North America, Inc. a Colorado Corporation and DOES 1 through 10, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) |
|---|---|
| Christopher J. Hamner / Amy T. Wootton<br>HAMNER LAW OFFICES, APC<br>555 W. 5th Street, 31st Floor<br>Los Angeles, California 90013 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding   ☐ 2. Removed from State Court   ☐ 3. Remanded from Appellate Court   ☐ 4. Reinstated or Reopened   ☐ 5. Transferred from Another District (Specify)   ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ 10,000,000

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Violation of Unfair Business Competition Law; Violations of Consumer Remedies Act (Civil Code Section 1750 et seq.); Breach of Express Warranty; Unjust Enrichment

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☒ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | ☐ 196 Franchise | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | **REAL PROPERTY** | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 210 Land Condemnation | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 220 Foreclosure | | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

FOR OFFICE USE ONLY: Case Number: **CV13-02823**

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☐ NO   ☒ YES

If yes, list case number(s): CV13-00231 — GAF (VBK)

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO   ☐ YES

If yes, list case number(s):

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Colorado |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| LA County as to named Plaintiff, other counties as to the putative class. | Various cities and counties throughout California and the U.S. |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):**                           DATE: 4/22/13

Notice to Counsel/Parties: The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

CV-71 (02/13)                                              CIVIL COVER SHEET                                              Page 2 of 2