Christopher J. Hamner, Esq.  (SBN 197117)
Amy T. Wootton, Esq.  (SBN 188856)
**HAMNER LAW OFFICES, APC**
555 W. 5th Street, 31st Floor
Los Angeles, California 90013
Telephone:  (213) 533-4160
Facsimile:  (213) 533-4167
chamner@hamnerlaw.com
awootton@hamnerlaw.com

[Additional counsel listed on following page]

Attorneys for Plaintiffs PAYAM AHDOOT AND BRANDON CLARK, on behalf of themselves and all others similarly situated

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PAYAM AHDOOT, and BRANDON CLARK, on behalf of themselves and all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>Babolat VS North America, Inc., a Colorado Corporation and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.  CV13-02823 GAF (VBKx) Consolidated with CV13-7898 GAF (VBKx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>[Filed concurrently with Notice of Motion, Declaration of Christopher J. Hamner; Declaration of Susan E. Dibiase; [Proposed] Order]<br><br>Date:          September 8, 2014<br>Time:          9:30 a.m.<br>Courtroom:       740 |

Christopher A. Olsen, Esq. (SBN 236928)
**OLSEN LAW OFFICES, APC**
1010 Second Avenue, Suite 1835
San Diego, California 92101
Telephone: (619) 550-9352
Facsimile: (619) 923-2747
caolsen@caolsenlawoffices.com

Chad B. Wootton, Esq. (SBN 151188)
**WOOTTON LAW GROUP, LLP**
119½ N. Larchmont Blvd., Suite 2
Los Angeles, California 90004
Telephone: (323) 460-2100
Facsimile: (323-460-2112
chadwootton@woottonlawgroup.com

Attorneys for Plaintiffs PAYAM AHDOOT AND BRANDON CLARK, on behalf of themselves and all others similarly situated

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# Table of Contents

Page #

I.    INTRODUCTION………………………………………………………1

     A.   Plaintiffs' Complaints And Consolidation of the Actions...........2

     B.   Plaintiffs' Investigation Of Claims................................................3

     C.   Settlement Was Reached At An Arms's Length Mediation........4

II.   SUMMARY OF THE SETTLEMENT ………………………......................5

     A.   The Settlement Class...................................................................6

     B.   Monetary Benefits.......................................................................6

     C.   Non-monetary Benefits...............................................................8

          1.   Professional Endorsements...............................................8

          2.   Tungsten.............................................................................8

          3.   GT Technology....................................................................8

III.  THE STANDARD FOR SETTLEMENT APPROVAL ………………......9

IV.   THE SETTLEMENT IS FAIR, REASONABLE,
AND ADEQUATE ……………………........................................................11

     A.   Strength of Plaintiffs' Case and Risks of Further Litigation.....12

          1.   Risk Regarding Certification of Claims.........................13

          2.   The Risks of Proceeding Through Liability Phase.........13

     B.   The Equitable Distribution of the Settlement...........................15

     C.   The Extent of Discovery Completed.........................................16

i

D.    The Experience and Views of Counsel....................................16

E.    This Action Has Resulted In Changes In Babolat's Advertising................................................................................17

F.    Both Federal And State Officials Will Be Provided With The Opportunity To Review And Consult Regarding The Settlement..........................................................................18

V.    PLAINTIFFS HAVE SATISFIED THE PREREQUISITES FOR CERTIFICATION OF A SETTLEMENT CLASS UNDER FRCP 23(A)...............................................................................................18

    A.    The Class Is So Numerous that Joinder of All Members Is Impracticable.........................................................................19

    B.    There Are Questions of Law and Fact Common to the Class..................................................................................................19

    C.    Plaintiffs' Claims Are Typical Of The Claims Of The Class..................................................................................................20

    D.    Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.............................................21

VI.    FRCP RULE 23(B) REQUIREMENTS ARE MET......................................22

VII.    THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE.....23

VIII.    CONCLUSION............................................................................................25

ii

## Table of Authorities

*Acosta v. TransUnion, LLC*
243 F.R.D. 377, 386 (C.D. Cal. 2007)……………………………………………..10

*Amchem Products, Inc. v. Windsor*
521 U.S. 591, 623 (1997)..............................................................................22

*Ansari v. New York Univ.*
179 F.R.D. 112, 114 (S.D.N.Y 1998)............................................................19

*Bullock v. Administrator of Estate of Kircher*
84 F.R.D. 1, 10 (D.N.J. 1979)......................................................................14

*Churchill Village, L.L.C. v. General Electric*
361 F.3d 566, 575 (9th Cir. 2004)...........................................................10, 23

*Class Plaintiffs v. City of Seattle*
995 F.2d 1268, 1276 (9th Cir. 1992)...............................................................9

*General Tel. Co. v. Falcon*
457 U.S. 147, 155 (1982)..............................................................................20

*Hanlon v. Chrysler Corp.*
150 F. 3d 1011, 1026 (9th Cir. 1998)......................................................10,18, 22

*Harris v. Palm Springs Alpine Estates, Inc.*
329 F.2d 909, 913-914 (9th Cir. 1964)..........................................................19

*In re Armored Car Antitrust Lit.*
472 F.Supp. 1357 (N.D. Ga. 1979)................................................................11

*In re Chicken Antitrust Litigation*
560 F.Supp. 957, 962 (N.D. Ga. 1980)...........................................................11

*In re Traffic Executive Assoc.-Eastern Railroads*
627 F.2d 631, 634 (2d Cir. 1980).................................................................10

*In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*
122 F.R.D. 251, 256 (C.D. Cal. 1988)............................................................20

*In re Veritas Software Corp. Sec. Litig.*
2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005).......................14

*Lerwill v. Inflight Motion Pictures, Inc.*
582 F.2d 507, 512 (9th Cir. 1978)............................................................21

*Lightbourn v. County of El Paso, Tex.*
118 F.3d 421, 426 (5th Cir. 1998)............................................................20

*Mars Steel Corp. v. Continental Illinois Nat'l Bank&Trust Co.*
834 F.2d 677, 682 (7th Cir. 1987)............................................................11

*Milstein v. Huck*
600 F. Supp. 254, 267 (E.D.N.Y. 1984)......................................................14

*Mullane v. Central Hanover Bank & Trust Co.*
339 U.S. 306, 314 (1950)......................................................................23

*Phillips Petroleum Co. v. Shutts*
472 U.S. 797, 811-12 (1985)..................................................................23

*Priddy v. Edelman*
883 F.2d 438, 447 (6th Cir. 1989)............................................................11

*Satchell v. Federal Express Corp.*
2007 Westlaw 1114010, *4 (N.D. Cal. 2007)................................................11

*Stambaugh v. Sup. Court*
62 Cal.App.3d 321, 326 (1976).................................................................9

*Steinberg v. Carey*
470 F.Supp 471 (S.D.N.Y. 1979)............................................................11

*Wehner v. Syntex Corp.*
117 F.R.D. 641, 644 (N.D. Cal. 1987)........................................................21

iv

TABLE OF AUTHORITIES

Federal Rules of Civil Procedure

Federal Rule of Civil Procedure 23(a)…………………………………......18,19,20

Federal Rule of Civil Procedure 23(a)(2)…………………………………………..19

Federal Rule of Civil Procedure Rule 23(b)(3)……………………………………23

Federal Rule of Civil Procedure Rule 23(c)(2)(B)…………………………………23

Federal Rule of Civil Procedure Rule 23(e)…………………………………...9,24

Federal Rule of Civil Procedure Rule 23(e)(1)……………………………………24

Other Authority

Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) …………10,11,17
*Manual for Complex Litigation*, 3d (1997) ……………………………………..10

# I.

## INTRODUCTION

This case is brought by plaintiffs Payam Ahdoot ("Ahdoot") and Brandon Clark ("Clark") (collectively "Plaintiffs") against defendant Babolat VS North America, Inc. ("Babolat") for false advertising in connection with the marketing, labeling and sales of its tennis racquets throughout the United States.  After engaging in extensive discovery, including the production and review of tens of thousands of pages of documents, many of which were in French and required translation into English, and taking depositions of the parties, the parties attended a day long mediation in San Francisco with mediator Antonio Piazza where the parties reached a $4.5 million settlement, subject to Court approval.  Pursuant to the Stipulation and Agreement of Settlement (the "Settlement Agreement" or "Settlement") filed herewith, Plaintiffs request that the Court grant an Order under the following terms (as more specifically set forth in the Notice and Proposed Order): (1) preliminarily approving the proposed Settlement as fair, reasonable, and adequate; (2) approving the form and the content of the Short Form and Long Form Publication Notices, substantially in the forms attached as Exhibits D and E, to the Settlement Agreement; (3) certifying the Class for settlement purposes; (4) appointing Payam Ahdoot and Brandon Clark as Class Representatives for the Class; (5) appointing Hamner Law Offices, APC; the Olsen Law Offices, and Wootton Law Group, LLP as Class Counsel for purposes of the Settlement (6) granting Plaintiffs leave to amend their complaint ; (7) enjoining

Settlement Class Members from commencing or continuing any action asserting any claims encompassed by the Settlement Agreement unless the Class Member submits a valid Request for Exclusion, with the exception of the Plaintiffs filing the Second Amended Complaint, proceedings related to final approval of the Settlement and consideration of Class Counsel's Fee and Cost Application; (8) preliminarily approving administration costs to be paid to the Settlement Administrator;  (9) issue an immediate stay of the Action, with the exception of proceedings relating to this Settlement Agreement; and (10) scheduling a final approval hearing.

**A.      Plaintiffs' Complaints And Consolidation of the Actions.**

On January 11, 2013, Ahdoot filed an initial complaint against Babolat in the U.S. District Court, Central District, Case No. CV13-00231. Before Babolat answered the complaint, Ahdoot dismissed the action.  Additional investigation was conducted. On April 22, 2013, Ahdoot filed a complaint against Babolat in this Court, which initiated the instant matter.  On June 24, 2013, Ahdoot filed a First Amended Complaint.[1]  Thereafter, Babolat filed a Motion to Dismiss, which the Court denied in part and granted in part. (Hamner Decl., ¶4.)

On October 25, 2013, Clark filed a complaint against Babolat in the U.S. District Court, Central District, Case No. CV13-7898.  Thereafter, on December 19, 2013, this Court consolidated the Ahdoot Action and the Clark Action for all purposes

---

[1] In conjunction with the Settlement reached in this Action as set forth in the Parties' Settlement Agreement, Plaintiffs move this Court for an order for leave to file a Second Amended Complaint. (Declaration of Christopher J. Hamner ("Hamner Decl."), ¶5.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

into the instant action (hereinafter "the Action"). (Hamner Decl., ¶4.)

**B.      Plaintiffs' Investigation Of Claims.**

This case has been actively litigated.  Plaintiffs conducted a thorough investigation of the facts and law both before and after the Action was filed. Plaintiffs' counsel conducted a detailed investigation of the claims of the Class Members and retained an expert who has been in constant communication with Plaintiffs' counsel regarding the technological aspects of the racquets at issue, the materials, composition, weight and specifications of the racquets, and the impact of same on the performance of the racquets.  Voluminous written discovery has been propounded, reviewed and responded to by the Parties.  Babolat produced, and Plaintiffs' Counsel reviewed over 30,000 pages of documents, many of which were in French and required translation into English.  The documents pertained to Babolat's advertising and marketing, press releases, internal and external communications, sales and revenues of Babolat's tennis racquets, and contracts with Rafael Nadal and Andy Roddick.  Plaintiffs' Counsel traveled to Colorado and deposed three corporate representatives of Babolat over a two day period.  Plaintiffs' counsel deposed Susan DiBiase regarding, *inter alia,* Babolat's sales and marketing, Aristide Wolfrom regarding Babolat's tennis racquet materials, composition, specifications and manufacturing, and J.C. Verborg regarding Babolat-sponsored players, communications and player contracts.  Mr. Wolfrom and Mr. Verborg both traveled from France to appear for deposition.  Additionally, Plaintiffs' Counsel inspected

several racquets, including those made specifically for Nadal and Roddick.  Counsel for the Parties have also engaged in numerous telephone conferences, written communications, and in-person meetings (despite the fact that counsel for the Parties are located in California and Utah) regarding the claims at issue in the litigation. Furthermore, additional corporate representatives from Babolat traveled from France and Colorado to attend the mediation in San Francisco, where the Parties were able to communicate their positions regarding the claims at issue and ultimately reach a resolution of the claims that resulted in the Settlement. (Hamner Decl., ¶¶2 & 5.)

Based on their own independent investigation and evaluation of the pending case, including a review of the pleadings and discovery, the deposition testimony, the actual racquets at issue, the sales documentation, and the law, Plaintiffs' Counsel is of the opinion that the $4.5 million Settlement reached in this Action is fair, reasonable, and in the best interest of the Class in light of all known facts and circumstances. The Parties further recognize that the issues presented in the Action are likely only to be resolved with extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay and expense disproportionate to the potential benefits of litigation.  The Parties have also taken into account the risk and uncertainty of the outcome inherent in any litigation. (Hamner Decl., ¶¶3, 6, 12 & 17.)

**C.     Settlement Was Reached At An Arms's Length Mediation.**

Following extensive discovery and lengthy depositions, counsel for the Parties agreed to participate in a mediation before Antonio Piazza, a renowned and well-

respected neutral who specializes in resolving complex commercial litigation.  On

May 15, 2014, a full day mediation was held in San Francisco before Mr. Piazza and

the participants traveled from Los Angeles, Utah, Colorado and France to attend.  As a

result of arms-length negotiations facilitated by Mr. Piazza, the Parties reached

agreement on a settlement and the material terms, and the Parties continued to

negotiate at arms-length the balance of the terms described in the Settlement

Agreement through the date it was executed by the Parties.  (Hamner Decl., ¶¶5-6.)

## II.

## SUMMARY OF THE SETTLEMENT

The Parties have entered into a Settlement Agreement (Hamner Decl., ¶7,

Exhibit 1) which accurately reflects the terms of the settlement between the Parties.

The putative class will be informed of the proposed Settlement by way of Publication

Notice, which will advise the Class of their rights to participate in the Settlement, to

object, or to request exclusion from the Settlement, the procedures and timing for

doing so, the Final Fairness hearing date, and the claims to be released under the

proposed Settlement.  The Publication Notice will also contain a Claim Form. The

Short Form Publication Notice (Short Form) will be published in the

November/December 2014 issue of Tennis Magazine.[2]  In addition, a banner

advertisement referencing the Settlement will be published on Tennis.com and the

---

[2] Tennis Magazine is a nationwide publication, distributed free of charge to all United States Tennis Association Members.  Tennis Magazine is considered by those in the tennis industry as the leading tennis magazine in the U.S. Tennis Magazine requires all submissions for the November/December 2014 issue to be submitted prior to September 30, 2014.  See Declaration of Susan Dibiase ("DiBiase Decl."), ¶6.

U.S. version of Babolat.com contemporaneously with the Short Form's first appearance in Tennis Magazine and contain a link to the Settlement website, contemplated to be Babolatsettlement.com.  The Settlement website will include the Short Form, the Long Form Publication Notice, the Claim Form, the Settlement Agreement (without exhibits), the Second Amended Complaint, and the Preliminary Approval Order.  (Hamner Decl., ¶10; Exhibit 1, Section IV, A; and Exhibits A, D & E attached to the Settlement Agreement (Exhibit 1).)  It is respectfully requested that the Court approve these documents so they may be disseminated to the Class through the Settlement Administrator consistent with the manner and timing as set forth in the Settlement Agreement.

### A.     The Settlement Class.

The Settlement Class includes all persons who purchased specific Babolat tennis racquets between January 1, 2009 and November 11, 2014 (or the actual publication date of the November/December 2014 Tennis Magazine).  (See Hamner Decl., ¶7 for specific Class definition.)  The Settlement Agreement, Claim Form and Notice Form all contain the Class definition.  The Settlement applies to all Settlement Class Members who submit valid claims and who do not timely exclude themselves from the Settlement.  (Hamner Decl., ¶¶7-8.)

### B.     Monetary Benefits.

The proposed Settlement provides substantial monetary benefits and non-monetary benefits to the Class.  Pursuant to the Settlement, the Parties agreed to settle

this Action in the amount of $4,5000,000 ("Gross Settlement Fund" or "GSF"), which includes the following payments, subject to Court approval:  (1) attorneys' fees of $1,125,000, which is 25% of the GSF ; (2) past, present and future costs of $150,000.00; (3) incentive awards in the amount of $5,000 to each named plaintiff in consideration for serving as Class Representative; and (4) estimated Settlement Administration expenses of $133,000-$240,000. (Hamner Decl., ¶¶7-8.)  After all Court-approved deductions, the Net Settlement Fund is estimated to be approximately $2,975,000-$3,082,000 ("NSF"), all of which will be available for distribution to the Settlement Class Members who return a valid and timely claim form.  If all members of the Settlement Class participate in the Settlement, the NSF shall be entirely exhausted.  The **Settlement is non-reversionary.**  (Hamner Decl., ¶8.)

The Settlement provides for **substantial payments** to each Settlement Class Member.  Each Settlement Class Member who submits a Valid Claim will be entitled to a reimbursement for each Qualifying Transaction of **$50** for each adult racquet and **$25** for each junior racquet, with proof of purchase *or* valid serial number, with a maximum of 10 Qualifying Racquets per Person.  Settlement Class Members who submit Valid Claims *without a proof of purchase or a serial number* will still be entitled to reimbursement of **$20** for each adult racquet and **$10** for each junior racquet obtained through a Qualifying Transaction, with a maximum of 3 Qualifying Racquets per Person.  (Hamner Decl., ¶8; Exhibit 1, Section III, C, 2.)  The Class Recovery is significant in that it contemplates reimbursement in the range of 25%-

34% of the purchase price with respect to the racquets at issue. (Hamner Decl., ¶8)

The Parties have further agreed that if any funds remain in the NSF after payment of all Valid Claims, such funds will ***not revert*** to Babolat and instead will be distributed *cy pres* equally to St. Jude's Children's Research Hospital and USTA Serves, a National Charitable Foundation dedicated to improving the quality of life among youth and the disabled through tennis.

## C.    Non-Monetary Benefits.

Plaintiffs' counsel obtained significant non-monetary benefits to the Class as well. (Hamner Decl., ¶¶8-9, Exhibit 1, Section VIII.)

### 1.    Professional Endorsements.

Pursuant to the terms of the Settlement, Babolat agreed that its print and internet advertising in the United States which feature still images of a professional tennis player with a Babolat racquet will include a disclaimer that states, "Team Babolat Pro Players may play with a customized or different model than the equipment depicted" or words to like effect.

### 2.    Tungsten.

As of June 18, 2014, Babolat ceased making reference to any of its racquets containing tungsten in its new advertising in the United States, including on its website.  No racquets shipped by Babolat after August 1, 2014, will be labeled as containing tungsten.

### 3.    GT Technology.

Babolat, and its parent, Babolat VS SA, agreed to refrain from referencing

tungsten in their advertising, marketing, communications and labeling in the United States in connection with "GT Technology."

Counsel for the Class is convinced that the proposed Settlement is in the best interests of the Class based on the negotiations and a detailed knowledge of the issues present in this Action. The length and risks of trial and other normal perils of litigation that may have impacted the value of the claims were all weighed in reaching the proposed Settlement.  In addition, the uncertainty of class certification, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Plaintiffs' counsel in agreeing to the proposed Settlement.  (Hamner Decl.,¶¶3, 18.)

### III.

### THE STANDARD FOR SETTLEMENT APPROVAL

"Strong judicial policy . . . favors settlement, particularly where complex class litigation is concerned", so long as there is no indicia of collusion or unfairness among the negotiating parties. *Class Plaintiffs v. City of Seattle*, 995 F.2d 1268, 1276 (9th Cir. 1992), cert. den., 506 U.S. 953, 113 S.Ct. 408, 121 L.Ed.2d 333 (1992). Likewise, California's Courts strongly favor settlement. *Stambaugh v. Sup. Court*, 62 Cal.App.3d 321, 326 (1976).  The "universally applied standard" for approval of a proposed class action settlement under Rule 23(e) of the *Federal Rules of Civil Procedure* ("FRCP") is "whether the settlement is fundamentally fair, adequate, and reasonable." *Class Plaintiffs, supra,* 955 F.2d at 1276, 1291.  Settlement approval

therefore balances several factors, including: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status through trial; (4) the amount of the settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a government participant; and (8) the reaction of the class members to the proposed settlement.  *Id.*; *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1026 (9th Cir. 1998); *Churchill Village, LLC v. G.E.*, 361 F. 3d 566, 575-576 (9th Cir. 2004).

At the preliminary approval stage, the Court's inquiry is whether there is a reasonable possibility of final approval under the foregoing standards.  If a proposed settlement falls within the range of possible final approval and does not suffer from any obvious deficiency or reason to doubt its fairness (*e.g.,* unjustifiable preferential treatment of class representatives or some segment of the defined class, excessive compensation for attorneys at the expense of the class, etc.), a court should generally grant preliminary approval and direct that notice of the settlement and fairness hearing be disseminated.  *See, e.g.*, Newberg & Conte, *Newberg on Class Actions* (Fourth Ed. 2002) §11.25, pp. 38-39, citing *Manual for Complex Litigation*, 3d (1997) §30.41; *In re Traffic Executive Assoc.-Eastern Railroads*, 627 F.2d 631, 634 (2d Cir. 1980), (noting preliminary approval at most requires a determination that there is "probable cause" to submit the settlement proposal to class members and hold a full-scale fairness hearing); *Acosta v. TransUnion, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007),

("To determine whether preliminary approval is appropriate, the settlement need only be potentially fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out"); *Satchell v. Federal Express Corp*., 2007 Westlaw 1114010, *4 (N.D. Cal. 2007), (granting preliminary approval because proposed settlement appeared to be the result of arm's length negotiations, non-collusive, free of "obvious defects," and "within the range of possible settlement approval"). Under the foregoing standards, preliminary approval is appropriate here.

## IV.

### THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

Courts presume the absence of fraud or collusion in the negotiation of a settlement unless evidence to the contrary is offered.  In short, there is a presumption that negotiations were conducted in good faith. *Newberg*, §11.51; *In re Chicken Antitrust Litigation*, 560 F.Supp. 957, 962 (N.D. Ga. 1980); *Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank&Trust Co*., 834 F.2d 677, 682 (7th Cir. 1987).  Courts do not substitute their judgment for that of the proponents, particularly where, as here, settlement has been reached with the participation of experienced counsel familiar with the litigation. *Hammon v. Barry*, 752 F.Supp 1087 (D.D.C. 1990); *Steinberg v. Carey*, 470 F.Supp 471 (S.D.N.Y. 1979); *In re Armored Car Antitrust Lit.*, 472 F.Supp. 1357 (N.D. Ga. 1979), aff'd in part, rev'd in part in 645 F.2d 488 (5th Cir. 1981).

Under the foregoing standard for settlement approval, the proposed settlement is fair, reasonable and adequate. There is no "obvious deficiency" or indicia of unfairness. The Settlement was reached only after discovery was propounded, thousands of pages of documents and data had been produced and thoroughly reviewed by Plaintiffs' Counsel, depositions were taken, and arm's length negotiations under the guidance of a highly respected and experienced mediator had occurred. The Settlement amount falls within the range of possible final approval.

**A.     Strength of Plaintiffs' Case and Risks of Further Litigation.**

Plaintiffs strongly believe that the Class claims are legally meritorious and present more than a reasonable probability of a favorable determination on behalf of the Class. Plaintiffs allege that there are two types of false advertising at issue in this matter. First, prior to the settlement, Babolat claimed its sponsored players, such as Rafael Nadal and Andy Roddick, used the same racquets as those available for sale to the public on the professional tennis tour, when they did not. Second, while Babolat advertised its racquets as containing "GT Technology" - purportedly a hybrid material consisting of "braided carbon fibers and tungsten filaments" - none of its racquets actually contain tungsten (more specific allegations are contained in the [proposed] Second Amended Complaint). However, to succeed in this Action, Plaintiffs would have to obtain class certification and prevail on each and every element of their claims.

### 1.      Risks Regarding Certification Of Claims.

Plaintiffs believe that their case is suitable for class certification in that Babolat engaged in a long-term, widespread advertising campaign that affected all Class Members.  However, Plaintiffs' counsel is well aware of the difficulty of obtaining class certification in false advertising cases, particularly in light of the Judge Walter's recent denial of class certification in *Brandon Kramer v. Wilson Sporting Goods Co.*, Case No. 2:13-cv-06330-JFW-SH, which involved some of the same issues as the instant case (e.g., a manufacturer's advertising claims regarding a professional tennis player's purported use of the same racquet available for sale to the public). In *Kramer*, the District Court denied class certification, finding that Kramer failed to meet his burden of demonstrating that questions of law or fact common to class members predominate over any questions affecting only individual members. Although Plaintiffs' Counsel is of the strong opinion that the instant Action differs factually from *Kramer* on several grounds (including, but not limited to, the scope and breadth of the advertising campaigns at issue, the ability of the plaintiffs to recall specific printed advertisements upon which they relied, and the significant issue of mislabeled racquets purportedly containing tungsten) and believe that certification should have been obtainable in this Action, they are cognizant of the fact that proceeding through class certification presents real recognized risks. (Hamner Decl.,¶13.)

### 2.      The Risks Of Proceeding Through Liability Phase.

Plaintiffs' Counsel recognizes the inherent risks associated with prosecuting

this matter through trial including the fact that the issues presented in the Action are likely only to be resolved with extensive and costly pretrial proceedings and that further litigation will cause inconvenience, distraction, disruption, delay and expense disproportionate to the potential benefits of litigation and have taken into account the risk and uncertainty of the outcome inherent in any litigation.  Courts consistently find that "[t]he expense and possible duration of the litigation are major factors to be considered in evaluating the reasonableness of [a]…settlement."  *Milstein v. Huck*, 600 F. Supp. 254, 267 (E.D.N.Y. 1984); *Bullock v. Administrator of Estate of Kircher*, 84 F.R.D. 1, 10 (D.N.J. 1979).  While Babolat has agreed to settle the action, if this case were to proceed, Babolat would undoubtedly continue to assert a vigorous defense on liability.  Therefore, while Plaintiffs believe the claims are meritorious, Plaintiffs recognize the uncertainties of trial and the risks inherent in establishing liability in a complex case of this nature.

Expert discovery and trial preparation would be expensive and complex.  While certainly attainable, victory in such a complex trial is hardly assured.  Thus, even if Plaintiffs prevailed in establishing liability, additional risks would remain in establishing the amount of damages sustained by the Settlement Class. *See In re Veritas Software Corp. Sec. Litig.*, 2005 U.S. Dist. LEXIS 30880 at *14-15 (N.D. Cal. Nov. 15, 2005) (challenges in proving damages and other litigation risks supported approval of settlement).

By approving the Settlement, the Court can **guarantee recovery for every**

**single Class Member** who files a valid claim without having the class face the risk of trial and a possible appeal.  Should the Parties proceed with the prosecution of this case, the Parties would have to expend hundreds, if not thousands, of additional hours in attorney time, and spend much more in costs.  Expenses incurred for a trial would severely deplete any eventual recovery.  Further, post-trial motions and appeals could force class members to wait many more years for any recovery, further reducing its value.  Consequently, resolution of this case before trial will substantially benefit the Settlement Class.  Moreover, the potential recovery to each individual class member is likely not high enough to provide an incentive to sue individually.  By granting approval of the Settlement, the Court can eliminate all risks and provide participating class members with a certain recovery.  Thus, based on the inherent risks of proceeding, the proposed Settlement is justified. (Hamner Decl.,¶13.)

### B.    The Equitable Distribution of the Settlement.

The proposed Settlement provides for an equitable distribution of the settlement funds.  There is no preferential treatment for any particular segment of the Class as Settlement payments will be determined based on the type of racquet(s) purchased and whether the Class Member has the requisite proof of purchase or ownership.  Named Plaintiffs will seek a modest incentive award typical of those approved in class action litigation.  Plaintiffs will also submit claims and will receive their proper share of the Settlement based upon the number of Qualifying Transactions.  (Hamner Decl.,¶14; Exhibit 1, Section III, C.)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.    The Extent of Discovery Completed.**

Counsel for Plaintiffs have conducted a thorough investigation of fact and law. Babolat has produced and Plaintiffs' Counsel have reviewed over 30,000 pages of Babolat's documents, many of which required translation from French to English, reflecting advertising and marketing, manufacturing, profits and sales, internal communications, press releases, communications with Babolat's distributors and retailers, and endorsement contracts, in addition to multiple sets of discovery responses.  Plaintiffs' counsel traveled from Los Angeles to Colorado to depose three corporate representatives of Babolat, two of whom traveled from France.  The depositions were lengthy and included questioning on numerous documents (in English and in French) and internet video advertisements.  Ms. DiBiase, was deposed all day regarding Babolat's advertising, marketing, sales and revenues.  Mr. Wolfrom traveled from France for deposition (and testified partially in French with the use of a translator) regarding Babolat's tennis racquet manufacturing processes, and the materials, composition and specifications pertaining to different tennis racquet models.  Mr. Verborg, who also traveled from France, testified regarding communications between Babolat and its sponsored players, including players' endorsement contracts. Additionally, Plaintiffs' Counsel inspected several racquets, including those made specifically for Nadal and Roddick. (Hamner Decl., ¶2.)

**D.    The Experience and Views of Counsel.**

While the recommendations of counsel proposing the Settlement are not

conclusive, the court can properly take them into account, particularly where, as here,

they have been involved in litigation for some period of time, appear to be competent,

have experience with the pertinent type of litigation, and have obtained substantial

evidence from the opposing party. *See Newberg*, section 11.47.  Here, the firms

involved in the case have a great deal of experience in class action litigation and

specifically, commercial litigation.  (Hamner Decl. ¶17.)  Each side has apprised the

other of their respective factual contentions, legal theories, and defenses, resulting in

extensive arms-length negotiations taking place among the Parties.

### E.     This Action Has Resulted In Changes In Babolat's Advertising.

This Action resulted in substantial changes in Babolat's advertising and

marketing.  First, Babolat agreed that its print and internet advertising in the United

States which feature still images of a professional tennis player with a Babolat racquet

**will include a disclaimer** that states, "Team Babolat Pro Players may play with a

customized or different model than the equipment depicted" or words to like effect.

This disclaimer will alert consumers to the fact that they may be purchasing a different

model tennis racquet than that used by the Babolat-sponsored professional.  Second,

Babolat has **ceased making reference to any of its racquets containing tungsten** in

its new advertising in the United States, including on its website.  No racquets shipped

by Babolat after August 1, 2014, will be labeled as containing tungsten. Third,

Babolat, and its parent, Babolat VS SA, agreed to refrain from referencing tungsten in

their advertising, marketing, communications and labeling in the United States in

connection with "GT Technology." These changes will result in modification to Babolat's advertising to ensure that its advertising no longer misleads consumers.

### F. Both Federal And State Officials Will Be Provided With The Opportunity To Review And Consult Regarding The Settlement.

Another factor is the presence of a governmental participant. *See Hanlon*, 150 F.3d at 1026. Given that the case was brought under CAFA, the Parties are required to notify responsible federal and state officials to provide them with the opportunity to intervene. Pursuant to CAFA, the Settlement Administrator will be providing notice of the settlement to the United States Attorney General as well as the appropriate state officials. As part of the notice, the governmental officials will be supplied with various relevant documents to the settlement. As a result of CAFA's requirements and the stipulation of the Parties, numerous governmental officials will have the opportunity to weigh in on the proposed settlement should they believe it unfair in any respect. This process will further ensure that the interests of the Settlement Class are protected. (Hamner Decl., ¶15.)

### V.

### PLAINTIFFS HAVE SATISFIED THE PREREQUISITES FOR CERTIFICATION OF A SETTLEMENT CLASS UNDER FRCP 23(A).

Federal Rule of Civil Procedure 23(a) provides:
One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

1
2
3    Plaintiffs have met each of these elements and thus certification of the
4  Settlement Class is proper.
5
6    **A.    The Class Is So Numerous that Joinder of All Members Is**
7          **Impracticable.**
      The class must be so numerous that joinder of all members, individually, is
8
9  "impracticable."  FRCP 23(a)(1).  It need not be shown that the number is so large that
10  it would be impossible to join every class member; "impracticability" does not mean
11  "impossibility," only that it would be difficult or inconvenient to join all members of
12  the class.  *Harris v. Palm Springs Alpine Estates, Inc*., 329 F.2d 909, 913-914 (9th
13  Cir. 1964).  "Generally speaking, courts will find that the 'numerosity' requirement
14  has been satisfied when the class comprises 40 or more members."  *See Ansari v. New*
15  *York Univ*., 179 F.R.D. 112, 114 (S.D.N.Y 1998).  Here, the evidence indicates there
16  are thousands of Class Members during the Class Period.  A potential class of this size
17  is so numerous that joinder of all members is clearly impracticable.  Additionally, the
18  proposed class is ascertainable because the Class is defined to include all Class
19  Members who engaged in a Qualifying Transaction(s) during the Class Period.
20
21
22
23    **B.    There Are Questions of Law and Fact Common to the Class.**
24      There must be "questions of law or fact common to the class."  FRCP 23(a)(2).
25  The "common question" requirement can be satisfied either by a shared legal issue
26  with divergent factual predicates or by a common core of salient facts with disparate
27  legal remedies.  *Id.*  As stated by the Supreme Court, "Class relief is 'particularly
28

appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." *General Tel. Co. v. Falcon*, 457 U.S. 147, 155 (1982).

Here, there are factual and legal questions common to the Class that predominate over questions affecting individual members. For example, relevant and common legal questions include: (1) whether Babolat had adequate substantiation for its claims prior to making them; (2) whether Babolat engaged in false or misleading advertising; (3) whether Babolat's alleged conduct violates public policy; (4) whether the alleged conduct constitutes violations of the laws asserted; (5) whether Plaintiffs and Class Members have sustained monetary loss and the proper measure of that loss; and (6) whether Plaintiffs and Class Members are entitled to an award of punitive damages, declaratory and injunctive relief, and/or restitution.  This Action satisfies Rule 23(a)'s commonality requirement because the common factual and legal questions are applicable in the same manner to each member of the Class.

### C.    Plaintiffs' Claims Are Typical Of The Claims Of The Class.

The typicality requirement focuses on the similarity between the named Plaintiffs' legal and remedial theories and the legal and remedial theories of those whom they purport to represent.  *Lightbourn v. County of El Paso, Tex.*, 118 F.3d 421, 426 (5th Cir. 1998); *In re United Energy Corp. Solar Power Modules Tax Shelter Ivs. Sec. Litig.*, 122 F.R.D. 251, 256 (C.D. Cal. 1988).  Here, typicality is established because Plaintiffs are members of the Class which they seek to represent and their

claims are the same as those asserted by the other Class members (i.e., all Class Members allege that they purchased Babolat's racquets believing them to be the same racquets used by the professional who endorsed them and believing them to contain tungsten). Plaintiffs suffered injury from the same specific actions that harmed other members of the Class and their claims are typical of the Class as a whole because they arise from the same factual basis and are based on the same legal theory as those applicable to the Class Members. *See Wehner v. Syntex Corp.*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).  (Hamner Decl., ¶11.)  Plaintiffs are qualified Class Representatives in that they and the Class Members are similarly situated as purchasers of the Babolat tennis racquets at issue. (Hamner Decl., ¶¶11-12.)

### D.      Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of the Class.

The requirement of adequate representation has two components.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  First, the Court must determine whether the representative plaintiff and his counsel have any conflicts of interest with other Class Members. *Id*. Second, the Court must satisfy itself that the representative plaintiff and his counsel will prosecute the action fairly, vigorously, and competently on behalf of the Class. *Id*. As detailed in the Declaration of Mr. Hamner, Plaintiffs' counsel are not aware of any conflicts of interest with other Class Members, are committed to representing the Class vigorously and fairly, and have served as lead or co-counsel in numerous other class actions demonstrating their substantial litigation

and consumer protection experience.  (Hamner Decl., ¶¶11, 12 &17.)

Plaintiffs have served as class representatives with diligence and dedication. Plaintiffs responded to written discovery, produced responsive documents, sat for deposition, participated in settlement negotiations, and were fully engaged in investigations with counsel and the expert regarding the allegations in this Action. Plaintiffs have acted in the best interests of the Class, will continue to do so, and have no conflicts with the Class.  (Hamner Decl, ¶¶11-12.)

## VI.

## FRCP RULE 23(B) REQUIREMENTS ARE MET.

Rule 23(b) of the FRCP requires, in part, the court find that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. ..." The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997).  "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon, supra*, 1022.

Common issues of law and fact predominate.  Each Class Member was subject to the same advertising and marketing representations and purchased a racquet that

was falsely labeled as containing tungsten and/or GT Technology. Each of these

issues could be proven through Babolat's advertising claims and marketing campaign,

the racquets at issue, and the testimony of Babolat. The requirement that a class action

is superior to other methods of adjudication under Rule 23(b)(3) is also met.

## VII.

### THE PROPOSED METHOD OF CLASS NOTICE IS APPROPRIATE

To protect the rights of absent class members, the notice provided to members

of a class certified under Rule 23(b)(3) must be the "best notice that is practicable

under the circumstances." FRCP 23(c)(2)(B); *Phillips Petroleum Co. v. Shutts*, 472

U.S. 797, 811-12 (1985); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S.

306, 314 (1950) (best practicable notice is that which is "reasonably calculated, under

all the circumstances, to apprise interested Parties of the pendency of the action and

afford them an opportunity to present their objections").  The content and method of

the notice should be designed to apprise the class members of the terms of the

proposed settlement and of the class members' rights regarding the settlement.  *See*

*Mullane*, 339 U.S. at 314.  Notice is satisfactory "if it generally describes the terms of

the settlement in sufficient detail to alert those with adverse viewpoints to investigate

and to come forward and be heard."  *Churchill Village, L.L.C. v. General Electric*,

361 F.3d 566, 575 (9th Cir. 2004) (internal citations omitted).  For any class certified

under Rule 23(b)(3), the notice must inform class members "that the court will

exclude from the class any member who requests exclusion."  FRCP 23(c)(2)(B).

1

2    Pursuant to Rule 23(e), the "court must direct notice in a reasonable manner to all

3    class members who would be bound by the proposal."   FRCP 23(e)(1).

4

5            Here, the Parties have agreed upon procedures by which the Settlement Class

6    Members will be provided with written notice of the Settlement similar to that

7    approved and utilized in hundreds of class action settlements.   The Parties have jointly

8

9    drafted a Short Form and Long Form Publication Notice (collectively "Notice") to

10   Class Members and request the Court's approval to publish the Notice, or ones

11   substantially in the same form, to the Settlement Class Members as set forth in the

12

13   Settlement Agreement.   The proposed Notice forms are accurate and informative.   The

14   Short Form Notice will be published in the November/December 2014 issue of Tennis

15   Magazine.   In addition, a banner advertisement referencing the Settlement will be

16

17   published on the U.S. version of the Babolat.com and Tennis.com contemporaneously

18   with the first appearance of the Short Form Notice in Tennis Magazine and will

19   remain on the two referenced websites until the day after the last day of the Claim

20

21   Period. The banner advertisement on the U.S. version of Babolat.com and Tennis.com

22   will contain a link to the Settlement website, contemplated to be

23   Babolatsettlement.com.   The Settlement website will include the Notices, the Claim

24

25   Form, the Settlement Agreement (without exhibits), the Second Amended Complaint,

26   and the Preliminary Approval Order.   (Hamner Decl., 10; and Exhibit 1, section IV,

27   A) This procedure will satisfy due process standards by including:  (1) the nature of

28   this action, the Settlement Class, Class Counsel, and the essential terms of the

Settlement; (2) the manner in which each Class Member's Settlement Payment will be calculated; (3) the requests for Class Representative Payment, Class Counsel Attorneys' Fees and Costs Payment; (4) how to participate in the Settlement; (5) how to opt-out of the Settlement; (6) how to object to the Settlement; (7) this Court's procedures for final approval of the Settlement; and (8) how to obtain additional information regarding the Settlement. The Notice is organized and formatted so as to be as clear as possible. (Hamner Decl., 10; Exhibit 1, Section IV, A, C & E)

Additionally, the proposed Notice is designed to meaningfully reach the largest possible number of Settlement Class Members.  As such, it complies fully with applicable case law that the notice given should have a reasonable chance of reaching a substantial percentage of the class.  (Hamner Decl., ¶10.)

## VIII.

### CONCLUSION

For the reasons stated above, Plaintiffs respectfully request that the Court grant the Motion in its entirety.


Dated:  August _8_, 2014                    HAMNER LAW OFFICES, APC


                                            /s/
                                            CHRISTOPHER J. HAMNER
                                            AMY T. WOOTTON
                                            Attorneys for Plaintiffs PAYAM
                                            AHDOOT AND BRANDON CLARK
                                            on behalf of themselves and the class
                                            they seek to represent