1  Christopher J. Hamner, Esq.  (SBN 197117)
2  Amy T. Wootton, Esq.  (SBN 188856)
   **HAMNER LAW OFFICES, APC**
   555 W. 5th Street, 31st Floor
3  Los Angeles, California 90013
   Telephone:  (213) 533-4160
4  Facsimile:  (213) 533-4167
   chamner@hamnerlaw.com
5  awootton@hamnerlaw.com

6  Christopher A. Olsen, Esq. (SBN 236928)
   **OLSEN LAW OFFICES, APC**
7  1010 Second Avenue, Suite 1835
   San Diego, California 92101
8  Telephone: (619) 550-9352
   Facsimile: (619) 923-2747
9  caolsen@caolsenlawoffices.com

10 Chad B. Wootton, Esq. (SBN 151188)
   **WOOTTON LAW GROUP, LLP**
11 119½ N. Larchmont Blvd., Suite 2
   Los Angeles, California 90004
12 Telephone: (323) 460-2100
   Facsimile: (323)-460-2112
13 chadwootton@woottonlawgroup.com

14 Attorneys for Plaintiffs PAYAM AHDOOT AND BRANDON CLARK, on behalf of
   themselves and all others similarly situated
15

16 **UNITED STATES DISTRICT COURT**
   **CENTRAL DISTRICT OF CALIFORNIA**

17

18 PAYAM AHDOOT, and BRANDON          Case No.  CV13-02823 GAF (VBKx)
   CLARK, on behalf of themselves and   Consolidated with CV13-7898 GAF
19 all others similarly situated, and the  (VBKx)
   general public,
20                                        **DECLARATION OF**
                   Plaintiffs,           **CHRISTOPHER J. HAMNER IN**
21                                        **SUPPORT OF MOTION FOR**
   v.                                     **PRELIMINARY APPROVAL OF**
22                                        **CLASS ACTION SETTLEMENT**
   Babolat VS North America, Inc., a
23 Colorado Corporation and DOES 1       [Filed Concurrently with Notice of
   through 10, inclusive,                Motion; Memorandum of Points and
24                                        Authorities in Support of Motion;
                   Defendants.           Declaration of Susan E. DiBiase; and
25                                        [Proposed] Order]

26                                        Date:          September 8, 2014
                                         Time:_         9:30 a.m.
27                                        Courtroom:     740

28

## <u>DECLARATION OF CHRISTOPHER J. HAMNER</u>

I, Christopher J. Hamner, declare as follows:

1.      **Class Counsel Adequacy:**   I am the principal owner of Hamner Law Offices, APC, co-counsel of record for Plaintiffs and the putative class in this matter (the "Action").   I am duly admitted to practice before all the courts of the State of California.   The following facts are within my personal knowledge and if called to testify I could and would competently testify thereto.

2.      This case has been extensively litigated by my co-counsel, Amy T. Wootton, Chad Wootton and Christopher Olsen and me.   We performed a significant investigation of the facts and law both before and after the Action was filed.   We conducted a detailed investigation, diligently pursued an investigation of the claims of the Class Members, and retained an expert who has been in constant communication with me and my co-counsel regarding the technological aspects of the racquets at issues and how the materials, composition, weight and specifications impact the racquets and the player.   I, along with my co-counsel, with the assistance of named Plaintiffs, reviewed and responded to discovery.   Voluminous written discovery has been propounded, reviewed and responded to by Babolat as well.   Babolat produced, and Babolat produced and we reviewed over 30,000 pages of documents, many of which were in French and required translation into English.   The documents pertained to Babolat's advertising and marketing, press releases, internal and external

communications, sales and revenues of Babolat's tennis racquets, and contracts with

Rafael Nadal and Andy Roddick.  Amy Wootton and Chad Wootton traveled to

Colorado and deposed three corporate representatives of Babolat over a two day

period.  Mrs. Wootton deposed Susan DiBiase regarding, *inter alia,* Babolat's sales

and marketing, Aristide Wolfrom regarding Babolat's tennis racquet materials,

composition, specifications and manufacturing, and J.C. Verborg regarding Babolat-

sponsored players, communications and player contracts.  Mr. Wolfrom and Mr.

Verborg both traveled from France to appear for deposition.  Additionally, we

inspected several racquets, including those manufactured specifically for Rafael Nadal

and Andy Roddick.  Counsel for the Parties have also engaged in numerous telephone

conferences, written communications, and in-person meetings (despite the fact that

counsel for the Parties are located in California and Utah) regarding the claims at issue

in the litigation.

      3.     Based on our extensive investigation and evaluation of the pending case,

including, a review of the pleadings and discovery, the deposition testimony, the

actual racquets at issue, the sales documentation, and the current law, I am of the

opinion that the $4.5 million Settlement reached in this Action is fair, reasonable,

adequate and in the best interest of the Class in light of all known facts and

circumstances, including the risk of significant delay and further expense, and the

uncertainty of the outcome inherent in any litigation.

      4.    **Summary of Claims:**  On January 11, 2013, my office filed an initial

complaint on behalf of Plaintiff Payam Ahdoot ("Ahdoot") against Babolat in the United States District Court, Central District, Case No. CV13-00231. Before Babolat answered the complaint, Ahdoot dismissed the action.  Additional investigation was conducted.  On April 22, 2013, Ahdoot filed a complaint against Babolat in this Court, which initiated the instant matter.  On June 24, 2013, Ahdoot filed a First Amended Complaint.  The First Amended Complaint contained the following causes of action: (1) Violation of the Unfair Competition Law, Business and Professional Code § 17200 et seq.; (2) Violations of Consumer Legal Remedies Act, Civil Code §1750 et seq.; (3) Breach of Express Warranty; (4) Violation of False Advertising Law, California Business and Professions Code §§ 17500 et seq.; (5) Fraud; (6) Negligent Misrepresentation; and (7) Unjust Enrichment.  Thereafter, Babolat filed a Motion to Dismiss, which the Court denied in part and granted in part.

On October 25, 2013, my office filed a complaint on behalf of Brandon Clark against Babolat in the United States District Court, Central District, Case No. CV13-7898.  Thereafter, on December 19, 2013, this Court consolidated the Ahdoot Action and the Clark Action for all purposes into the instant Action.

5.      Following extensive discovery, including the production and review of thousands of Babolat's documents including, financial and sales information, internal memoranda, and advertising documentation, and lengthy depositions, counsel for the Parties agreed to participate in a mediation before Antonio Piazza, a renowned and well-respected neutral who specializes in resolving complex commercial litigation.

On May 15, 2014, a full day mediation was held in San Francisco before Mr. Piazza and the participants traveled from Los Angeles, Utah, Colorado and France to attend. Furthermore, additional representatives from Babolat traveled from France and Colorado to attend the mediation in San Francisco, where the Parties were able to communicate their positions regarding the claims at issue.  As a result of arms-length negotiations facilitated by Mr. Piazza, the Parties reached agreement on a settlement and the material terms, and the Parties continued to negotiate at arms-length the balance of the terms described in the Settlement Agreement through the date it was executed by the Parties.  In conjunction with the Settlement reached in this Action as set forth in the Parties' Settlement Agreement, Plaintiffs move this Court for an order for leave to file a Second Amended Complaint to expand the class definition and to add additional factual allegations and claims based thereon.  (See Exhibit 1, Section II, B.)

6.     **Settlement Summary & Favorable Terms Supporting Preliminary Approval:**   As a result of the mediation on May 15, 2014, a settlement was reached. After considering all the risks and evaluating all available evidence, the Parties reached agreement on a non-reversionary settlement in the amount of $4,500,000. The Settlement applies to all Class Members who do not timely opt-out of the Settlement during the Settlement Class Period.  The Settlement was reached as a result of arm's-length negotiations facilitated by an experienced wage and hour mediator.  Though cordial and professional, the settlement negotiations have been, at all times,

adversarial and non-collusive in nature.  Indeed, continued good faith but occasionally contentious negotiations were required to ultimately reach agreement.  While Plaintiffs believe in the merits of their case, they also recognize the inherent risks of litigation and understands the benefit to the Class in receiving settlement funds immediately, as opposed to risking an unfavorable decision on class certification, the merits of the case after trial, the damages awarded, and/or on an appeal that can take several more years to litigate.  (See Exhibit 1, Definitions EE and W.)

7.      **Monetary Benefits:**  Attached hereto as Exhibit 1 is a true and correct copy of the Stipulation and Agreement of Settlement ("Settlement Agreement" or "Settlement"), which is the proposed Settlement presented to the Court.  The Settlement provides a substantial monetary settlement in the amount of $4,500,000 ("Gross Settlement Fund") to the Settlement Class, which is defined as follows:

> All Persons who purchased or purchases any of the following racquets for personal use and not for re-sale from January 1, 2009 to November 11, 2014, or, if the actual publication date of the November/December issue of Tennis Magazine containing the Short Form Publication Notice is later, to the actual date of first publication:  Pure Drive, Pure Drive +, Pure Drive 107, Pure Drive Roddick, Pure Drive + Roddick, Pure Drive Roddick Junior, Pure Drive Lite, Pure Drive French Open, Pure Drive Lite French Open, Pure Drive 260 French Open, Pure Drive Junior 26 French Open, Pure Drive Lite Pink, Pure Drive Wimbledon, Pure Drive Junior Wimbledon, Pure Drive Play, AeroPro Drive, AeroPro Drive +, AeroPro Drive Junior, AeroPro Team, AeroPro Lite, AeroPro Drive French Open, AeroPro Drive Junior French Open, AeroPro Lite French Open, AeroPro Team Wimbledon, Aero Storm, Aero Storm Tour, Pure Storm, Pure Storm Limited, Pure Storm Limited +, Pure Storm Tour, Pure Storm Tour +, Pure Storm Team, Pure Control, Pure Control Tour, Pure Control Tour +, Pure Control 95

and Pure Control 95+.  Specifically excluded from the Settlement Class are: (i)employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, or assignees of Babolat; (ii) distributors, dealers, and retailers of Babolat racquets if the racquets were purchased for resale and not for personal use; and (iii) judges assigned to this Action and any members of their immediate families.

8.     The GSF includes the following payments, subject to Court approval:  (1) attorneys' fees of $1,125,000, which is 25% of the maximum total payment; (2) past, present and future costs of $150,000.00; (3) incentive awards in the amount of $5,000 to each named plaintiff in consideration for serving as Class Representative; and (4) estimated Settlement Administration expenses of $133,000-$240,000 (the estimated expenses are based upon estimates of 50,000-150,000 claimants and could fluctuate if the number of claimants increases or decreases.)  After all Court-approved deductions, the Net Settlement Fund is estimated to be approximately $2,975,000-$3,082,000 ("NSF"), all of which will be available for distribution to the Settlement Class Members who return a valid and timely claim form.  If all members of the Settlement Class participate in the Settlement, the NSF shall be entirely exhausted.  The Settlement is **non-reversionary**.  The Settlement Agreement provides for substantial payments to each Settlement Class Member.  Each Settlement Class Member who submits a Valid Claim will be entitled to a reimbursement for each Qualifying Transaction of **$50** for each adult racquet and **$25** for each junior racquet, with proof of purchase *or* valid serial number, as set forth in the Settlement Agreement, with a maximum of ten Qualifying Racquets per Person.  Settlement Class Members who

submit Valid Claims *without a proof of purchase or a serial number* will still be entitled to reimbursement of **$20** for each adult racquet and **$10** for each junior racquet obtained through a Qualifying Transaction, with a maximum of 3 Qualifying Racquets per Person.  (See Exhibit 1, Section III, C, 2.)  The Class Recovery is significant in that it contemplates reimbursement in the range of 25%-34% of the purchase price with respect to the racquets at issue.

9.      **Non-Monetary Benefits:** The Settlement also provides substantial non-monetary benefits which is designed to end potentially false and misleading advertising by Babolat.  First, pursuant to the terms of the Settlement, Babolat agreed that its print and internet advertising in the United States which features still images of a professional tennis player with a Babolat racquet will **include a disclaimer** that states, "Team Babolat Pro Players may play with a customized or different model than the equipment depicted" or words to like effect.  Second, as of June 18, 2014, Babolat **ceased** making reference to any of its racquets containing tungsten in its new advertising in the United States, including on its website.  No racquets shipped by Babolat after August 1, 2014, will be labeled as containing tungsten.  Third, Babolat, and its parent, Babolat VS SA, agreed to **refrain** from referencing "tungsten" in their advertising, marketing, communications and labeling in the United States in connection with "GT Technology."  (See para. 6, Exhibit 1, Section VIII.)

10.     **Notice to the Class:** Pursuant to the Settlement Agreement, the putative

class will be informed of the proposed Settlement by way of Publication Notice, which will advise the Class of their rights to participate in the Settlement, to object, or to request exclusion from the Settlement, and the procedures and timing for doing so. It also advises of the Final Fairness hearing date, the claims to be released by the proposed Settlement and will contain a Claim Form.  The Short Form Publication Notice (Short Form) will be published in the November/December 2014 issue of Tennis Magazine.  In addition, a banner advertisement referencing the Settlement shall be published on the Internet website Tennis.com and the United States version of the Internet website Babolat.com contemporaneously with the Short Form's first appearance in Tennis Magazine and contain a hyperlink to the Settlement website, contemplated to be Babolatsettlement.com.  The Settlement website will include the Short Form, the Long Form Publication Notice, the Claim Form, the Settlement Agreement (without exhibits), the Second Amended Complaint, and the Preliminary Approval Order.  (See Exhibit 1, section IV, A.  True and correct copies of these documents are attached to the Settlement Agreement (Exhibit 1) as Exhibits A, D and E. This procedure will satisfy due process standards by including:  (1) the nature of this action, the Settlement Class, Class Counsel, and the essential terms of the Settlement; (2) the manner in which each Class Member's Settlement Payment will be calculated; (3) the requests for Class Representative Payment, the Class Counsel Attorneys' Fees and Costs Payment; (4) how to participate in the Settlement; (5) how to opt-out of the Settlement; (6) how to object to the Settlement; (7) this Court's

procedures for final approval of the Settlement; and (8) how to obtain additional information regarding this action and the Settlement.  The Notice is written in plain English and is organized and formatted so as to be as clear as possible.  It encourages Class Members to contact Class Counsel or the Settlement Administrator with any questions. (See Exhibit 1, Section IV, A, C & E.)  The proposed Notice is designed to meaningfully reach the largest possible number of Settlement Class Members.  As such, it complies fully with applicable case law that the notice given should have a reasonable chance of reaching a substantial percentage of the class. The proposed Notice states that any member of the class may choose not to participate in the settlement, and that any such person who chooses to exclude him or herself from the Class (1) will not be entitled to receive any monetary relief under the settlement; (2) will not be considered to have released any potential claims against Defendants; and (3) will have no right to challenge the settlement or participate in the final approval hearing.  The proposed Notice also discloses the date by which the written exclusion notification must be postmarked.  The proposed Notice also provides that any Class Member who has not excluded him or herself from the Settlement may file written objections to the settlement and may attend the hearing to make any objections.  The proposed Notice provides the procedures by which an objecting party must give notice to the Court and counsel of his/her objections.  The Parties have agreed that such proposed Notice is the best possible notice in light of the circumstances.  (Exhibit 1, Section IV, C.)

1

2      11.    **Adequacy and Typicality of Named Plaintiffs:**  The proposed class

3
representatives, Payam Ahdoot and Brandon Clark are members of the Class they seek
4
to represent and their claims are typical of the claims of the Class.  Ahdoot and Clark
5
6      suffered injury from the same specific actions- alleged false advertising- that harmed

7
other members of the Class and their claims are typical of the Class as a whole
8
9      because they arise from the same factual basis and are based on the same legal

10     theories as those applicable to the Class Members.  Both Ahdoot and Clark are

11
qualified Class Representatives, in that Plaintiffs and the members of the Class are
12
13     similarly situated as purchasers of one of the Qualifying Racquets (e.g., Babolat's

14     AeroPro Lite, AeroPro Drive, Pure Drive Roddick) during the Class Period.  Further,

15
neither Ahdoot nor Clark have any known conflict with the proposed class and are
16
17     committed to putting the needs and interests of the Class ahead of their own.

18
19     12.    The named Plaintiffs have diligently and actively participated in the

20     litigation despite tangible risks to themselves.  The Named Plaintiffs have

21     communicated regularly through e-mail, teleconferences, and meetings with counsel
22
and the expert, and have played a critical factor in the prosecution of this case.
23
24     Plaintiffs have served as class representatives with diligence, participated in

25     discovery, sat for deposition and were fully engaged in investigations with counsel

26     regarding the allegations in this Action.  Both Plaintiffs have acted in the best interests
27
of the Class Members, will continue to do so and have no conflicts with the Class.
28

1

2        13.     In reaching this Settlement, I, along with my co-counsel, took into

3   consideration the fact that to succeed in this Action, Plaintiffs would have to obtain

4   class certification and prevail on each and every element of their claims.  While

5   Plaintiffs believe that the case is suitable for class certification in that Babolat engaged

6   in a long-term, widespread advertising campaign to which all putative class members

7   were exposed.  Further, the putative class members all purchased racquets which were

8

9   mislabeled as containing tungsten.  However, Plaintiffs' counsel is well aware of the

10  difficulty of obtaining class certification in false advertising cases, particularly in light

11  of the Judge Walter's recent denial of class certification in *Kramer v. Wilson Sporting*

12

13  *Goods Co.* (Case No. 2:13-cv-06330-JFW-SH; Docket No. 60), which involved some

14  of the same/similar issues with respect to a manufacturer's advertising claims

15  regarding a professional tennis player's purported use of the same racquet available

16

17  for sale to the public.  In *Kramer v. Wilson*, the District Court denied class

18  certification, finding that the plaintiff failed to meet his burden of demonstrating that

19  questions of law or fact common to class members predominate over any questions

20  affecting only individual members.  Although Plaintiffs' Counsel I am of the opinion

21

22  that the instant Action differs factually from *Kramer* on several grounds, including,

23  but not limited to, the scope and breadth of the advertising campaigns at issue, the

24  ability of the plaintiffs to recall specific printed advertisements upon which they

25

26  relied, the issue of mislabeled racquets, and that certification may have been

27  obtainable in this Action, proceeding through class certification presents real

28

DECLARATION OF CHRIS HAMNER                    11.

recognized risks.  By approving the Settlement, the Court can guarantee recovery for every single Class Member who files a valid claim.  If the Parties continued the prosecution of this case, the Parties would have to expend hundreds, if not thousands, of additional hours in attorney time, and spend much more in costs.  Expenses incurred for a trial would severely deplete any eventual recovery.  Further, post-trial motions and appeals could force class members to wait many more years for any recovery, further reducing its value.  Consequently, resolution of this case before trial will substantially benefit the Settlement Class.  By granting approval of the settlement, the Court can eliminate all risks and provide participating class members with a certain recovery.  Thus, based on the inherent risks of proceeding, the proposed Settlement is justified.

14.    Each Class Member will receive his or her share of the Settlement based on the type of Qualifying Racquet purchased (adult or junior), the number of Qualifying Racquets purchased,  and whether he or she can provide proof of purchase or a valid serial number (thereby eliminating the requirement of a receipt) for each Qualifying Racquet purchased. (See Exhibit 1, Section III, C.)

15.    Because the case was filed in Federal Court based on CAFA, the Settlement Administrator, will be providing notice of the settlement to the United States Attorney General as well as the appropriate state officials.  As part of the notice, the governmental officials will be supplied with various relevant documents to the settlement.  As a result of CAFA's requirements and the stipulation of the Parties,

numerous governmental officials will have the opportunity to weigh in on the proposed settlement should they believe it unfair in any respect. This process will help ensure that the interests of the Settlement Class are protected.

16.     The settlement not only falls within the range of possible judicial approval, but represents an excellent recovery on behalf of the Class.

17.     Plaintiffs' counsel are experienced in consumer class actions and they are experienced and qualified to evaluate the class claims and to evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses. Plaintiffs' counsel have negotiated many class settlements, including many involving similar issues presented in this Action and have been approved as Class Counsel in numerous other class actions.

18.     Counsel on both sides share the view that the Settlement is fair and reasonable in light of the complexities of the case and uncertainties of class certification and litigation, and represents a fair and reasonable recovery for the Class. Class Counsel is convinced that the Settlement is in the best interest of the class based on their pre-mediation investigation and discovery as well as the post-mediation confirmatory discovery efforts, their detailed understanding of the issues raised in this action, and the outcome of long negotiation process assisted by an exceptionally experienced and knowledgeable mediator.

/ / /

1

2     I declare under penalty of perjury under the laws of the United States that the

3

4     foregoing is true and correct and that this declaration is executed on August 7, 2014,

5     at Los Angeles, California.

6

7                                                    _____/s/_____

8                                                    CHRISTOPHER J. HAMNER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28