# EXHIBIT 1

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Settlement Agreement is made between plaintiffs Payam Ahdoot ("Ahdoot") and Brandon Clark ("Clark") (collectively "Plaintiffs") for themselves and on behalf of the Settlement Class (defined below), on the one hand, and Defendant Babolat VS North America, Inc., on the other hand, to settle Ahdoot v. Babolat VS North America, Inc., CV13-02823 GAF (VBKx) (the "Ahdoot Action") and Clark v. Babolat VS North America, Inc., CV13-7898 GAF (VBKx) (the "Clark Action"), which actions were consolidated into one action, proceeding under the title and civil action number of the Ahdoot Action (hereinafter the "Action"), subject to final approval by the District Court.

**WHEREAS**, Babolat VS North America, Inc. distributes and sells tennis equipment and related products, including various racquet models in the Pure Drive, AeroPro, Aero Storm, Pure Storm and Pure Control racquet lines;

**WHEREAS**, Ahdoot commenced Ahdoot v. Babolat VS North America, Inc., CV13-02823 GAF (VBKx) on April 22, 2013, by filing a Complaint;

**WHEREAS**, Ahdoot filed his First Amended Complaint on June 24, 2013, seeking certification of a nation-wide class and alleging causes of action against Babolat VS North America, Inc. for violation of California Business and Professions Code Sections 17200 et seq., and 17500, et seq., California Civil Code sections 1750, et seq., as well as breach of express warranty, fraud, negligent misrepresentation, and restitution/unjust enrichment based on averments that Babolat VS North America, Inc. made false claims in advertising on the internet, in magazines and other publications, and on television that certain tennis professionals who endorse Babolat racquets played with the same racquets available for sale to the public in the United States when the tennis professionals' racquets are allegedly different from the retail

1

versions available in the United States.  Ahdoot further alleged that Babolat painted and otherwise disguised these professionals' racquets so that they appeared identical to the retail racquets available for sale to the public in the United States;

**WHEREAS**, on October 25, 2013, Clark filed his Complaint seeking certification of a nationwide class and alleging causes of action against Babolat VS North America, Inc. for violation of California Business and Professions Code Sections 17200 et seq., and 17500, et seq., California Civil Code sections 1750, et seq., as well as breach of express warranty, fraud, and negligent misrepresentation based on averments that Babolat VS North America, Inc. made false claims in advertising on the internet, in magazines and other publications, and on television that tennis professional Andy Roddick ("Roddick") played with the same Pure Drive Roddick racquet available for sale to the public in the United States when Roddick's  racquets were allegedly different from the retail version of the Pure Drive Roddick available in the United States.  Clark further alleged that Babolat painted and otherwise disguised Roddick's racquets so that they appeared identical to the Pure Drive Roddick racquets available for sale to the public in the United States;

**WHEREAS**, on December 19, 2013, the District Court consolidated the Ahdoot Action and the Clark Action for all purposes into the Action;

**WHEREAS**, Ahdoot and Clark will file a Second Amended Complaint (the "Second Amended Complaint") in the Action as more fully set forth in Section II.B. below, seeking certification of a nationwide class and reasserting their original claims against Babolat VS North America, Inc. and adding claims on behalf of a putative nationwide class under California Business and Professions Code Sections 17200 et seq., and 17500, et seq., California Civil Code sections 1750, et seq., as well as breach of express warranty, fraud,  and negligent

misrepresentation based upon allegations that Babolat VS North America, Inc. falsely advertised and labeled its racquets with GT Technology from January 1, 2009 to the present as containing tungsten when the racquets allegedly did not contain tungsten;

**WHEREAS**, Babolat VS North America, Inc. denies all liability or wrongdoing with respect to any and all of the claims asserted or that will be asserted in the Action and asserts that it has numerous defenses to those claims;

**WHEREAS**, extensive discovery has been conducted and voluminous documents have been exchanged in the Action;

**WHEREAS**, the Parties engaged in a full day mediation before Antonio Piazza in San Francisco on May 15, 2014, in an attempt to negotiate a settlement of the Action and that mediation resulted in this proposed Agreement;

**WHEREAS**, Class Counsel (defined below) has determined that this Settlement Agreement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class (defined below); and

**WHEREAS**, notwithstanding its view that Plaintiffs' claims are meritless, Babolat VS North America, Inc. desires to settle the Action because a settlement will avoid the risk, expense and distraction of continued litigation, and therefore believes settlement is appropriate without admitting liability;

**NOW THEREFORE**, the Parties agree as follows:

I.     **DEFINITIONS**

A.     "Babolat's Counsel" means Brent E. Johnson, of Holland & Hart LLP.

B.     "Babolat Releasees" means:  (a) Babolat VS North America, Inc.; (b) Babolat VS North America, Inc.'s past, present, and future direct and indirect owners, shareholders,

investors, parents (including, without limitation, Babolat VS SA), subsidiaries, websites, other corporate affiliates; suppliers, vendors, wholesalers, distributors, dealers, retailers, and advertisers; (c) Babolat VS North America, Inc.'s successors and predecessors and their past, present, and future direct and indirect owners, shareholders, investors, parents, subsidiaries, websites, other corporate affiliates, suppliers, vendors, wholesalers, distributors, dealers, retailers,  and advertisers; (d) all suppliers, distributors, wholesalers, vendors, dealers, retailers, advertisers, manufacturers, and suppliers of any Qualifying Racquet (as defined below) or any of their components; and (e) for each of the foregoing Persons, each of their past, present, or future officers, directors, shareholders, owners, investors, employees, contractors, lawyers, accountants, advisors, representatives, agents, principals, partners, affiliates, members, administrators, legatees, executors, heirs, estates, predecessors, successors, and assigns.

C.      "Claim Form" means the claim form attached hereto as Exhibit A.

D.      "Claim Period" means the period beginning on November 11, 2014, which is the date that Tennis Magazine has set for publication of its November/December issue that will contain the Short Form Publication Notice (defined below) as set forth in Section IV.A., below, and ending on March 11, 2015.  If the actual publication date for Tennis Magazine's November/December issue is later than November 11, 2014, the last day of the Claim Period will be adjusted so that the Claim Period is comprised of one-hundred twenty (120) days, commencing on the date of actual publication of Tennis Magazine's November/December issue of Tennis Magazine.

E.      "Class Counsel" means Hamner Law Offices, APC; Law Offices of Christopher A. Olsen; and Wootton Law Group, LLP.

F.      "Class Counsel Fees and Costs" means the aggregate of any attorneys' fees and costs awarded by the District Court to Class Counsel.

G.      "Class Period" means the period beginning on January 1, 2009, and ending on November 11, 2014, or, if later, the actual date of publication of the November/December issue of Tennis Magazine containing the Short Form Publication Notice as set forth in Section IV.A. below.

H.      "Class Recovery" means the aggregate amount of all payments made to Settlement Class Members who submit Valid Claims.

I.      "Class Representatives" means Payam Ahdoot and Brandon Clark and "Class Representative" means each of them separately.

J.      "District Court" means the United States District Court for the Central District of California.

K.      "Fee and Cost Application" means that written motion or application by which Class Representatives and/or Class Counsel request that the District Court award attorneys' fees and costs to Class Counsel and incentive awards to Class Representatives.

L.      "Final Approval Hearing" means the hearing at which the District Court shall:  (a) determine whether to grant final approval to this Settlement Agreement and certify the Settlement Class; (b) consider any timely objections to this Settlement and responses thereto; and (c) rule on the Fee and Cost Application.

M.      "Final Approval Order and Judgment" means the order and judgment, substantially in the form of Exhibit B attached hereto, in which the District Court, among other things set forth in Exhibit B, grants final approval of this Settlement Agreement, certifies the

Settlement Class, and authorizes the entry of a final judgment and dismissal of the Action with prejudice.

N.      "Final Effective Date of the Settlement" means the date on which the last of the following occurs:  (a) the day after the time to appeal the Final Approval Order and Judgment expires without any such appeal having been filed; (b) in the event of an appeal of the Final Approval Order and Judgment, the day after a final resolution, affirming in all material respects the Final Approval Order and Judgment; (c) in the event of the filing of a petition for certiorari to the United States Supreme Court, the day after the denial of that petition or, if granted, the day after a final resolution by the Supreme Court in favor of and affirming in all material respects the Final Approval Order and Judgment.

O.      "Gross Settlement Fund" means four million five hundred thousand U.S. dollars ($4,500,000).  The entire amount of the Class Recovery, Class Counsel Fees and Costs, Class Representatives' incentive awards that may be awarded by the District Court, Settlement Administration Expenses, and any other costs or expenses assessable hereunder against Babolat VS North America, Inc. (other than its own legal fees and associated costs and expenses of its representation), shall be paid from the Gross Settlement Fund in accordance with the provisions of this Settlement Agreement.  The Gross Settlement Fund represents the absolute, capped amount of Babolat VS North America, Inc.'s liability for the entire Settlement.

P.      "GT Technology" means that certain carbon fiber/fiberglass layup of Babolat's Pure Drive, AeroPro, Aero Storm, Pure Storm, and Pure Control racquet lines that was first introduced in 2009.

Q.      "Net Settlement Fund" means the total funds remaining in the Gross Settlement Fund after payment of the entire amount of Class Counsel Fees and Costs, Class

Representatives' incentive awards that may be awarded by the District Court, and Settlement Administration Expenses.

R.      "Parties" means Plaintiffs Payam Ahdoot and Brandon Clark and defendant Babolat VS North America, Inc.

S.      "Person" means any natural person, firm, corporation, unincorporated association, partnership, or other firm of legal entity or government body, including its agents and representatives.

T.      "Preliminary Approval Hearing" means the hearing at which the District Court shall:  (a) grant Plaintiffs' Stipulated Motion for Leave to File the Second Amended Complaint; (b) determine whether to grant preliminary approval of this Settlement Agreement; (c) preliminarily certify the Settlement Class; (d) authorize Publication Notice to the Settlement Class; and (e) appoint the Settlement Administrator.

U.      "Preliminary Approval Order" means the order, substantially in the form attached as Exhibit C hereto, whereby the District Court, among other things set forth in Exhibit C, grants Plaintiffs' Stipulated Motion for Leave to File the Second Amended Complaint, grants its preliminary approval of this Settlement Agreement and preliminarily certifies the Settlement Class, authorizes dissemination of Publication Notice to the Settlement Class, and appoints the Settlement Administrator.

V.      "Publication Notice" means the Short Form and Long Form notices, substantially in the form of Exhibits D and E, respectively, attached hereto.

W.      "Qualifying Racquet" means the following Babolat tennis racquets:  Pure Drive, Pure Drive +, Pure Drive 107, Pure Drive Roddick, Pure Drive + Roddick, Pure Drive Roddick Junior, Pure Drive Lite, Pure Drive French Open, Pure Drive Lite French Open, Pure Drive 260

French Open, Pure Drive Junior 26 French Open, Pure Drive Lite Pink, Pure Drive Wimbledon, Pure Drive Junior Wimbledon, Pure Drive Play, AeroPro Drive, AeroPro Drive +, AeroPro Drive Junior, AeroPro Team, AeroPro Lite, AeroPro Drive French Open, AeroPro Drive Junior French Open, AeroPro Lite French Open, AeroPro Team Wimbledon, Aero Storm, Aero Storm Tour, Pure Storm, Pure Storm Limited, Pure Storm Limited +, Pure Storm Tour, Pure Storm Tour +, Pure Storm Team, Pure Control, Pure Control Tour, Pure Control Tour +, Pure Control 95 and Pure Control 95 +.

   X. "Qualifying Transaction" means a purchase of a Qualifying Racquet(s) for personal use, and not for resale during the Class Period.

   Y. "Released Claims" means the claims released as set forth in Section VII.B. of this Settlement Agreement.

   Z. "Request for Exclusion" means a request for exclusion from being a Settlement Class Member by a Person in the Settlement Class.  To be valid, a request for exclusion must:  (i) be submitted by a Person in the Settlement Class; (ii) be submitted to the Settlement Administrator and postmarked by a date not later than twenty-one (21) days before the Final Approval Hearing; (iii) contain the submitter's name, address and telephone number; and (iv) otherwise comply with the instructions set forth in the Publication Notice.

   AA. "Settlement Account" means an escrow account at a reputable financial institution in the name of Babolat VS North America, Inc. and the Settlement Class, into which Babolat VS North America, Inc. will deposit money over time to fund this Settlement and from which the entire amount of Class Counsel Fees and Costs, Class Representatives' incentive awards and other amounts hereunder that may be awarded by the District Court, Settlement Administration Expenses, and the Class Recovery shall be paid.

BB.     "Settlement Administrator" means Rust Consulting, Inc., or in the event that Rust Consulting cannot perform as Settlement Administrator, such settlement administrator mutually agreeable to the Parties.

CC.     "Settlement Administration Expenses" means the fees and costs charged and incurred by the Settlement Administrator, including, but not limited to, the fees and costs associated with the banking and escrow charges for the Settlement Account, required notices under the Class Action Fairness Act, 28 U.S.C. §1715, the Publication Notice as set forth in Section IV.A. below, the Settlement website, the banner advertisement on Tennis.com, the toll-free Settlement telephone number with recorded messages, the Settlement Administrator's review of claims to determine whether they are Valid Claims, all reports and declarations required to be submitted by the Settlement Administrator under this Settlement Agreement, the fulfillment of all Valid Claims (not including the Class Recovery) and such other costs and expenses of the Settlement Administrator as required and approved by the Court pursuant to the Settlement Administrator's services agreement.

DD.     "Settlement Agreement," "Settlement," or "Agreement" means this Stipulation and Agreement of Settlement, including the attached exhibits.

EE.     "Settlement Class" means all Persons who engaged in a Qualifying Transaction with the exception of employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, or assignees of Babolat VS North America, Inc.; distributors, dealers, and retailers of Babolat VS North America, Inc. or its parent, Babolat VS SA, to the extent the Qualifying Racquets were purchased by the distributors, dealers, and retailers for resale and not for personal use; and the District Court and any other judges who may be assigned to the Action and any members of their immediate families.

FF.     "Settlement Class Member" means any Person within the Settlement Class who does not submit a valid Request for Exclusion.

GG.     "Valid Claim" means a claim for reimbursement by a Settlement Class Member that is made by the Settlement Class Member submitting a fully completed Claim Form signed under penalty of perjury and supplying all documents and information required for the claim as set forth in the Claim Form and submitted electronically through the Settlement website on or before the final day of the Claim Period or postmarked on or before the final day of the Claim Period.  To be a Valid Claim, the claim must also meet any and all additional criteria established by the Parties' counsel and the Settlement Administrator.

## II.     PROCEDURE FOR SETTLEMENT

A.     Preliminary Approval Order.

Within ten (10) court days following the execution of this Settlement Agreement by all Parties, the Class Representatives shall move the District Court for entry of the Preliminary Approval Order in the form of Exhibit C.  The Class Representatives shall apply to the District Court for entry of the Final Approval Order and Judgment, in the form of Exhibit B, not later than fourteen (14) days prior to the date set by the District Court for the Final Approval Hearing. Babolat VS North America, Inc. shall support these motions in such manner as the Parties may agree.

B.     Second Amended Complaint.

Within ten (10) court days of the date set by the District Court for the Preliminary Approval Hearing, Plaintiffs will file a Stipulated Motion for Leave to File a Second Amended Complaint in the Action (the Second Amended Complaint in the form attached as Exhibit F hereto), seeking certification of a nationwide class and reasserting their original claims against

Babolat VS North America, Inc. and adding claims on behalf of a putative nationwide class under California Business and Professions Code Sections 17200 et seq., and 17500, et seq., California Civil Code sections 1750, et seq., as well as breach of express warranty, fraud, and negligent misrepresentation based upon allegations that Babolat VS North America, Inc. falsely advertised and labeled its racquets with GT Technology from January 1, 2009 to the present as containing tungsten when the racquets allegedly did not contain tungsten.  The Preliminary Approval Order shall, among other things, grant Plaintiffs' Motion for Leave to File a Second Amended Complaint and permit the filing of the Second Amended Complaint prior to the stay of the Action taking effect.  Plaintiffs will file the Second Amended Complaint on the same day of the District Court's entry of the Preliminary Approval Order.

## III.    SETTLEMENT CLASS RELIEF

In consideration of the full, complete, and final settlement of the Action, including but not limited to the claims set forth in the Second Amended Complaint, pursuant to the terms of this Settlement Agreement, dismissal of the Action with prejudice, and the Releases in Section VII.B. below, and subject to the District Court's approval, the Parties agree to the following relief:

A.    Gross Settlement Fund.

In the month that the District Court approves and enters the Preliminary Approval Order, Babolat VS North America, Inc. shall open the Settlement Account as an escrow account with a reputable financial institution (which institution shall be subject to escrow instructions regarding the release of funds therefrom as approved by the Parties and the Settlement Administrator), and deposit three hundred thousand U.S. dollars ($300,000) into such Settlement Account in escrow. Babolat VS North America, Inc. shall thereafter make additional deposits of two hundred

thousand U.S. dollars ($200,000) into the Settlement Account in escrow in each of the following six months.  Babolat VS North America, Inc. shall deposit sufficient funds in the eighth month from the approval and entry of the Preliminary Approval Order to bring the total of deposits and accrued interest to four million five hundred thousand U.S. dollars ($4,500,000).  Babolat VS North America, Inc. shall not be liable for payment of any fees, costs, expenses, awards, Class Recovery, or any other sums authorized under this Agreement beyond its deposits into the Settlement Account, totaling $4,500,000, including accrued interest, as set forth in this paragraph.  Once Babolat VS North America, Inc. deposits funds into the Settlement Account, the risk of loss for such funds shall pass from Babolat VS North America, Inc. to the financial institution operating the Settlement Account unless otherwise agreed by the Parties.  Unless this Settlement Agreement is terminated pursuant to Section V.D. below, Babolat VS North America, Inc. shall not withdraw or otherwise utilize the funds in the Settlement Account other than to pay them into the Gross Settlement Fund within five (5) business days after the Final Effective Date of the Settlement, or to pay the Settlement Administrator's costs and expenses in accordance with the terms of the Settlement Administrator's services agreement and applicable escrow instructions.  The Settlement Administrator shall provide copies of the Settlement Account's monthly statements to Class Counsel and Babolat's Counsel no later than the fifteenth (15th) day of each month between the date the District Court approves and enters the Preliminary Approval Order and the Final Effective Date of the Settlement.  Except for the payment of the Settlement Administrator's costs and expenses in accordance with the terms of the Settlement Administrator's services agreement and applicable escrow instructions, all funds in the Settlement Account shall be held in escrow for the benefit of the Settlement Class or the payment

of such other fees, costs and expenses as may be approved by the Court in its Preliminary Approval Order or its Final Approval Order and Judgment.

        B.      <u>Distribution of the Gross Settlement Fund</u>.

The entirety of the Class Recovery, Class Counsel Fees and Costs, incentive awards to the Class Representatives that may be awarded by the District Court, and Settlement Administration Expenses shall be paid from the Gross Settlement Fund in accordance with the approved escrow instructions and the Court's Final Approval Order and Judgment.

        C.      <u>Class Recovery</u>.

        1.      The Net Settlement Fund shall be available to pay Valid Claims in accordance with the escrow instructions and the Court's Final Approval Order and Judgment. Distribution of funds from the Net Settlement Fund to Settlement Class Members who submitted Valid Claims shall be completed within twenty one (21) days after the Final Effective Date.

        2.      A Settlement Class Member who submits a Valid Claim will be entitled to a reimbursement of fifty U.S. dollars ($50) for each adult racquet and twenty five U.S. dollars ($25) for each junior racquet for each Qualifying Transaction, upon submission of a proof of purchase (i.e., a copy of the original sales receipt that identifies the Qualifying Racquet(s) and shows the amount paid, the seller, and date of purchase), up to a maximum of ten (10) Qualifying Racquets per person.  If no proof of purchase is available but the Qualifying Racquet's serial number, which is two (2) letters followed by six (6) numerals printed on a label on the throat of the racquet, can be provided, a Settlement Class Member who submits a Valid Claim will also be entitled to a reimbursement of fifty U.S. dollars ($50) for each adult racquet for each Qualifying Transaction, upon submission of the Qualifying Racquet's serial number (i.e. a picture that identifies the Qualifying Racquet and shows the Qualifying Racquet's serial number) up to a

maximum of ten (10) Qualifying Racquets per Person.  If no proof of purchase is available and no Qualifying Racquet serial number can be provided (junior racquets have no serial numbers and some adult racquets have no serial numbers), a Settlement Class Member who submits a Valid Claim will be entitled to a reimbursement of twenty U.S. dollars ($20) for each adult racquet and ten U.S. dollars ($10) for each junior racquet obtained through a Qualifying Transaction up to a maximum of three (3) Qualifying Racquets per Person.  The Settlement Administrator shall have the right to, and may make reasonable requests for information to a Person who submits a Claim Form for the purpose of determining whether the Person has made a Valid Claim.  If the Person submitting the Claim Form does not timely comply and/or is unable to produce information or documents requested by the Settlement Administrator to substantiate and/or verify the information related to a claim that is submitted, the claim shall be disqualified.

3.     If the aggregate value of Valid Claims exceeds the amount of the Net Settlement Fund, the amount of reimbursement to Settlement Class Members will be adjusted downward on a per Qualifying Racquet *pro rata* basis.

4.     If any funds remain in the Net Settlement Fund after payment of all Valid Claims, such funds shall be distributed *cy pres* as follows:  (a) fifty percent (50%) to St. Jude's Children's Research Hospital, a pediatric treatment and research facility dedicated to finding cures for children with cancer and other catastrophic diseases through research and treatment; and (b) fifty percent (50%) to USTA Serves, the National Charitable Foundation of the United States Tennis Association, Inc. dedicated to improving the quality of life among youth and people with disabilities in the United States by, among other things, supporting organizations that use tennis as a vehicle to help at-risk children finish high school and qualify for college

14

scholarships.  Both St. Jude's Children's Research Hospital and USTA Serves are chartered as 501(c)(3) tax-exempt organizations under IRS regulations.

5.      Settlement Class Members will be able to obtain a Claim Form by requesting one by mail at the address of the Settlement Administrator or by downloading the Claim Form from the Internet website established by the Settlement Administrator.  Settlement Class Members may submit Claim Forms online or by mail to the Settlement Administrator at the address provided.

## IV.     PUBLICATION NOTICE AND REQUESTS FOR EXCLUSION

A.      Publication Notice.

Because the identities of the Persons in the Settlement Class are unknown, notice to the Settlement Class shall be by publication.  Publication Notice shall be provided in the forms attached as Exhibit D (Short Form) and Exhibit E (Long Form).  The Short Form Publication Notice shall be published in the November/December 2014 issue of Tennis Magazine.  In addition, a banner advertisement referencing the Settlement shall be published on the United States version of the Internet website Babolat.com and the Internet website Tennis.com contemporaneously with the Short Form Publication Notice's first appearance in Tennis Magazine and shall remain on the two referenced websites until the day after the last day of the Claim Period.  The banner advertisement on the United States version of Babolat.com and Tennis.com shall contain a link to the Settlement website, contemplated to be Babolatsettlement.com to be established by the Settlement Administrator.  The Settlement website shall be operational on or before the first day the Short Form Publication Notice appears in Tennis Magazine and will be disabled immediately upon the conclusion of the Claim Period.

The Settlement website shall include the Short Form Publication Notice, the Long Form Publication Notice, the Claim Form, the Settlement Agreement (without exhibits), the Second Amended Complaint, and the Preliminary Approval Order.  The publication of the Short Form Publication Notice in Tennis Magazine, the placement of the banner advertisement regarding the Settlement on Tennis.com, and the creation, operation, maintenance, and cessation of the Settlement website shall be administered by the Settlement Administrator.

      B.    <u>Declaration of Compliance</u>.

The Settlement Administrator shall prepare a declaration affirming compliance with the notice requirements set forth above, which shall be provided to Babolat's Counsel and Class Counsel no later than fourteen (14) days prior to the Final Approval Hearing.  Class Counsel shall file this declaration of compliance with the District Court no later than ten (10) days prior to the Final Approval Hearing.

      C.    <u>Best Notice Practicable</u>.

The Parties agree, and the Preliminary Approval Order shall state, that compliance with the notice provisions herein is the best notice practicable under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the pendency of the Action and the terms of the Settlement and shall satisfy the requirements of all applicable local and court rules, the Federal Rules of Civil Procedure, the United States Constitution, and any other applicable law.

      D.    <u>Report on Requests for Exclusion</u>.

Not later than fourteen (14) days before the Final Approval Hearing, the Settlement Administrator shall prepare and deliver to Babolat's Counsel and Class Counsel a report stating the total number of Persons who submitted valid Requests for Exclusion from the Settlement

Class and the names and contact information of such Persons as well as the quantity and type of the Qualifying Racquets each such Person purchased.  Such Persons will not be entitled to the relief under this Settlement Agreement and will not be bound by the releases contained herein. Not later than ten (10) days before the Final Approval Hearing, Class Counsel shall file the Settlement Administrator's report with the District Court.

        E.      <u>Inquiries from Settlement Class Members</u>.

        It shall be the sole responsibility of Class Counsel to respond to inquiries from Settlement Class Members.  Babolat VS North America, Inc. and Babolat's Counsel may, but are not required to, respond to such inquiries.

        F.      <u>Reporting by Settlement Administrator</u>.

        The Settlement Administrator shall provide periodic updates to Class Counsel and Babolat's Counsel regarding Claim Form submissions beginning not later than one week after the commencement of the Claim Period and continuing on no less than a monthly basis thereafter.

        G.      <u>List of Class Members</u>.

        Within thirty (30) days of the completion of distribution of all payments to Settlement Class Members who submitted Valid Claims by the Settlement Administrator, the Settlement Administrator shall provide to Babolat VS North America, Inc. or to such other Persons as Babolat VS North America, Inc. may direct, an electronically searchable alphabetical list of the Settlement Class Members who were paid out of the Net Settlement Fund, their contact information, and the amount paid to them.

## V.    <u>COURT APPROVAL OF SETTLEMENT</u>

A.    <u>Preliminary Approval Order</u>.

Class Counsel shall apply for entry of the Preliminary Approval Order in the form of Exhibit C hereto pursuant to the schedule set forth in Section II above.  The Preliminary Approval Order shall include provisions:  (i) granting Plaintiffs' Stipulated Motion for Leave to File the Second Amended Complaint, the Second Amended Complaint in the form attached hereto as Exhibit  F; (ii) preliminarily certifying the Settlement Class for settlement purposes only; (iii) preliminarily approving this Settlement Agreement and finding the Settlement sufficiently fair, reasonable and adequate to allow notice to be disseminated to the Settlement Class; (iv) approving the form, content, and manner of notice to the Settlement Class; (v) setting a schedule for proceedings with respect to final approval of the Settlement; (vi) providing that, pending entry of the Final Approval Order and Judgment, no Settlement Class Member (either directly, in a representative capacity, or in any other capacity) shall commence or continue any action against Babolat VS North America, Inc. or any other Babolat Releasees asserting any claims related in any way to the Released Claims; and (vii) staying the Action, other than the filing of the Second Amended Complaint and subsequent proceedings related to this Settlement.

B.    <u>Objections to Settlement</u>.

Any Settlement Class Member wishing to object to this Settlement and/or the Fee and Cost Application shall file a written objection (with a statement of reasons), either on the Settlement Class Member's own or through an attorney retained at the Settlement Class Member's expense with the District Court and serve it on Babolat's Counsel and Class Counsel at least twenty-one (21) days before the Final Approval Hearing.  Such objection must include a proof of purchase for one or more Qualifying Racquet(s), or, if no proof of purchase is available,

either an identification of the serial number(s) for the Qualifying Racquet(s) or a declaration under penalty of perjury that the Settlement Class Member purchased one or more Qualifying Racquet(s) and identifying the Qualifying Racquet(s) by model.  Such objection must also include the Settlement Class Member's home address.  Any Settlement Class Member who fails to provide the information required by this paragraph shall be foreclosed from making such objection.

Class Representatives and Class Counsel will file with the District Court their brief in support of the Final Approval Order and Judgment and in response to any objections at least seven (7) days before the Final Approval Hearing.  Any Settlement Class Member who fails to file a timely written objection and to appear and argue, either personally or through personally retained counsel, at the Final Approval Hearing shall have no right to file an appeal relating to the approval of this Settlement Agreement, and shall be bound by all the terms of this Settlement Agreement and by all proceedings, orders and judgments, including but not limited to the releases as set forth in Section VII herein.

C.   Final Approval Hearing.

The Parties shall request that the District Court, on the date set forth in the Preliminary Approval Order, or on such other date that the District Court may set, conduct a Final Approval Hearing to:  (i) determine whether to grant final approval to this Settlement Agreement and certify the Settlement Class; (ii) consider any timely objections to this Settlement and Class Counsel's responses to such objections; and (iii) rule on the Fee and Cost Application.  At the Final Approval Hearing, the Parties shall ask the Court to give final approval to this Settlement Agreement.  If the Court grants final approval of this Settlement Agreement, the Parties shall ask the Court to enter a Final Approval Order and Judgment, substantially in the form of Exhibit B

hereto, which approves this Settlement Agreement, certifies the Settlement Class, authorizes

entry of a final judgment, and dismisses the Action with prejudice.

      D.    <u>Termination of Settlement</u>.

      1.    Each Party shall have the right to terminate this Settlement Agreement if:

(a) the District Court does not enter the Preliminary Approval Order or Final Approval Order and

Judgment substantially in the forms attached as Exhibits C and B hereto; or (b) the Final

Approval Order and Judgment does not become final by reason of a higher court reversing final

approval by the District Court and the District Court thereafter declines to enter a further order or

orders approving the Settlement Agreement.  If a Party elects to terminate this Settlement

Agreement under this paragraph, that Party must provide written notice to the other Party within

thirty (30) days of the occurrence of the condition permitting termination.  Such written notice

shall be provided by electronic delivery and/or next day (excluding Saturdays, Sundays and legal

holidays) express delivery service to the other Party's counsel.

      2.    Babolat VS North America, Inc. shall have the right, but not be obligated

to, terminate this Settlement Agreement if, prior to entry of the Final Approval Order and

Judgment, the total number of Persons who have submitted valid Requests for Exclusion from

the Settlement Class exceeds seven hundred fifty (750).  If Babolat VS North America, Inc.

elects to terminate this Settlement Agreement under this paragraph, Babolat VS North America,

Inc. must provide written notice to Class Counsel on or before the date of the Final Approval

Hearing by electronic delivery and/or next day (excluding Saturdays, Sundays and legal

holidays) express delivery service.

      3.    If the Settlement Agreement is terminated pursuant to this Section, then:

(a)  this Settlement Agreement shall be null and void; (b) this Settlement Agreement and all

20

negotiations and proceedings relating hereto shall be of no force or effect and without prejudice to the rights of the Parties (and except for documents filed with the Court and of public record, all settlement and negotiation documents and communications shall remain confidential), (c) all Parties shall be reverted to their respective status in the Action as of the date of the execution of the Settlement Agreement; (d) the Parties shall stand in the same position as if the Settlement Agreement and all related orders had never been executed  or entered; (e) the Parties shall not seek to recover from one another any fees or costs associated with this Settlement; and (f) all monies paid by Babolat VS North America, Inc. into the Settlement Account as set forth in Section III.A., including accrued interest and minus applicable Settlement Administration Expenses paid to the date of termination, shall be immediately returned to Babolat VS North America, Inc.

## VI.    ADMINISTRATIVE EXPENSES, ATTORNEYS' FEES AND COSTS

A.    Settlement Administration Expenses.

The Settlement Administration Expenses shall be fully paid from the Gross Settlement Fund.

B.    Fee and Cost Application.

Class Counsel may make a Fee and Cost Application to be heard at the Final Approval Hearing seeking an award of attorneys' fees not to exceed twenty-five percent (25%) of the Gross Settlement Fund and reimbursement of costs and expenses actually incurred not to exceed $150,000 to be paid out of the Gross Settlement Fund.  The Fee and Cost Application may also seek an incentive award to each Class Representative not to exceed $5,000 per Class Representative to be paid out of the Gross Settlement Fund.  Babolat VS North America, Inc. will not oppose the Fee and Cost Application to the extent that it complies with the terms of this

paragraph.  Attorneys' fees, attorneys' costs and expenses, and Class Representative incentive awards shall be paid out of the Gross Settlement Fund within seven (7) business days of the Final Effective Date.  Payments under this paragraph shall be made as one combined payment to the Hamner Law Office, APC and the Hamner Law Office, APC shall be solely responsible for further distributing any payments required by this paragraph. Class Counsel indemnifies and holds harmless Babolat VS North America, Inc. and the Babolat Releasees and their legal counsel from and against any and all claims for payments due from Class Counsel as provided in this Settlement Agreement or as otherwise due from Class Counsel with respect to the Action.

        C.      <u>Effect on Settlement</u>.

The Parties agree that the rulings of the District Court regarding the amount of attorneys' fees, attorneys' costs and expenses, and any Class Representative incentive awards, and any claim or dispute relating thereto, shall be considered by the District Court separately from the remaining matters considered at the Final Approval Hearing and any determinations regarding those matters will be made in a separate order.  Any order regarding attorneys' fees, attorneys' costs and expenses, and any Class Representative incentive awards, including any appeals from or modifications or reversals of any order related thereto, shall not operate to modify, reverse, terminate, or cancel the Settlement Agreement, affect the releases contained in the Settlement Agreement, or affect whether the Final Approval Order and Judgment is final as set forth herein.

**VII.**    **<u>RELEASES</u>**

        A.      <u>Stay of the Action</u>.

The Parties agree to request the District Court, in connection with the Preliminary Approval Order, issue an immediate stay of the Action, with the exception of Plaintiffs filing the Second Amended Complaint and proceedings relating to this Settlement Agreement, and an

injunction prohibiting any Settlement Class Member (either directly, in a representative capacity, or in any other capacity) from prosecuting any other action relating in any way to the Released Claims.

      B.    <u>Releases</u>.

In consideration for the Settlement benefits described in this Agreement, and effective upon the Final Effective Date of the Settlement, the Class Representatives and each and every Settlement Class Member (including any of their past, present or future agents, successors, assigns, legal representatives, trustees, estates, heirs, executors and administrators) shall be deemed to have, and by operation of the Final Approval Order and Judgment shall have fully, finally, and forever released, relinquished and discharged each and all of the Babolat Releasees from any and all of the Class  Representatives' and each and every Settlement Class Member's (including any of their past, present or future agents, successors, assigns, legal representatives, trustees, estates, heirs, executors and administrators) respective claims, actions, demands, suits, and causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, direct or indirect, contingent or absolute, existing or potential, in contract or in tort, in law or equity, that the Class Representatives and each and every Settlement Class Member (including any of their past, present or future agents, successors, assigns, legal representatives, trustees, estates, heirs, executors and administrators), and whether or not they objected to the Settlement, ever had, now has, or hereafter can, will or may have, arising out of (i) advertising, marketing and conduct of whatever kind by the Babolat Releasees related to any and all professional athletes and their connection with, affiliation with, association with or endorsement of the Qualifying Racquets and any components thereof; (ii) the

use of the term "GT Technology" and "tungsten" in the Babolat Releasees' advertising, marketing materials, labeling, and any other communication or information of whatever kind related to the Qualifying Racquets, (iii) factual allegations or claims made in the Second Amended Complaint, and (iv) any violation or alleged violation of any federal or state law and any federal or state statute, including but not limited to California Business & Professions Code §§ 17200, et seq., 17500 et seq., and California Civil Code §1750, predicated on (i), (ii) or (iii) (the "Released Claims"). Each Settlement Class Member (including their past, present or future agents, legal representatives, trustees, parents, estates, heirs, executors and administrators) is hereby barred from hereafter asserting any claim, demand, action, suit or cause of action, whether class or individual, against the Babolat Releasees based, in whole or in part, upon any Released Claim. This release shall be without limitation, shall be construed broadly to fulfill its intent, and shall inure to the benefit of all Persons including, but not limited to, the Babolat Releasees.

Plaintiff Ahdoot and Plaintiff Clark each represents and warrants that he is the sole and exclusive owner of all claims that he personally is releasing under this Agreement, and each of Plaintiff Ahdoot and Plaintiff Clark further acknowledges that he has not assigned, pledged, or in any manner whatsoever sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action, and that each of Plaintiff Ahdoot and Plaintiff Clark is not aware of anyone other than himself claiming any interest, in whole or in part, in the Action or in any benefits, proceeds or values under the Action on his behalf.

Without in any way limiting its scope and except to the extent otherwise specified in this Agreement, this Release covers, by way of example and without limitation, any and all claims

for attorneys' fees, costs, expert fees, or consultant fees, interest, or litigation fees, costs or any other fees, costs and/or disbursements incurred by Class Counsel, or by Plaintiff Ahdoot or Plaintiff Clark, for which the Babolat Releasees may be liable.

The claims released herein expressly include those claims covered by any statute or common law that provides, in sum or substance, that a general release does not extend to claims which the party does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her, would have materially affected his or her settlement with any other party.  In particular, but without limitation, the Class Representatives and each Settlement Class Member (including any of their past, present or future agents, legal representatives, trustees, estates, heirs, executors and administrators) waive the provisions of California Civil Code § 1542 and do so understanding the significance of that waiver. California Civil Code § 1542 provides:

> **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

The Parties shall be deemed to have agreed that the release set forth herein will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims by and through this Settlement Agreement, regardless of whether such party knew or suspected a claim to exist which if known by such party, would have materially affected his settlement with Babolat VS North America, Inc. or the Babolat Releasees.

C.    <u>Third Party Beneficiaries</u>.

Those Persons released from claims in Section VII.B. above including, but not limited to, the Babolat Releasees who are not Parties to this Agreement, are released without regard to the absence of any consideration from them, and they are intended to be third party beneficiaries of

this Agreement, and it is acknowledged that the release of all of the Babolat Releasees is a material part of the consideration to Babolat VS North America, Inc. for its entering into this Settlement Agreement.  Such third party beneficiaries may seek enforcement of this Agreement in the same manner as the Parties including, but not limited to, asserting this Agreement as a complete bar and defense to any Released Claim and seeking specific performance of this Agreement.

        D.     <u>Assumption of Risk</u>.

In entering into this Settlement Agreement, each of the Parties assumes the risk of any mistake of fact or law.  If any of the Parties should later discover that any fact which the Party relied upon in entering into this Settlement Agreement is not true, or that the Party's understanding of the facts or law was incorrect, the Party shall not be entitled to modify, reform, or set aside the Settlement Agreement, in whole or in part, by reason thereof.  The Parties acknowledge that, at the time the Settlement Agreement was executed, there were unsettled issues of law, and the Parties agree to adhere to the terms of this Settlement Agreement regardless of developments in the law after execution.

**VIII**.  **<u>NON-MONETARY RELIEF</u>**

        A.     <u>Professional Endorsements</u>.

Babolat VS North America, Inc. agrees that its print and internet advertising in the United States which features a still image of a professional tennis player with a Babolat racquet will include a disclaimer that states, "Team Babolat Pro Players may play with a customized or different model than the equipment depicted" or words to like effect.  The Parties agree that Babolat VS North America, Inc. and any of the Babolat Releasees (including specifically but without limitation Babolat VS SA), may continue to have their professional endorsers play with

equipment that is cosmetically rendered to be consistent in appearance with the retail version of the model of equipment the professional endorses and that written statements in Babolat VS North America, Inc.'s and the Babolat Releasees advertising, marketing, and communications in the United States may refer to the equipment the professional endorses in words that suggest or state that the professional plays with the equipment regardless of whether the statements suggest that the professional plays with the retail version of the equipment.

        B.    <u>Tungsten</u>.

Babolat VS North America, Inc. has ceased, as of June 18, 2014, making reference to any of its racquets containing tungsten in its new advertising in the United States, including on its website.  No racquets shipped by Babolat after August 1, 2014, will be labeled as containing tungsten.

        C.    <u>GT Technology</u>.

The Parties agree that Babolat VS North America, Inc. and its parent, Babolat VS SA, may continue to use and reference "GT Technology" in their advertising, marketing, communications and labeling in the United States as long as tungsten is not referenced in connection therewith.

## IX.   <u>NO ADMISSION OF LIABILITY; RESERVATIONS</u>

Neither the Settlement Agreement nor any of the negotiations or proceedings related thereto constitutes an admission of wrongdoing, liability, or the merits of the claims in the Action by Babolat VS North America, Inc. or by any of the other Babolat Releasees.  Babolat VS North America, Inc. denies any wrongdoing of any kind related to the claims in the Action.  This Settlement Agreement shall not be offered, or received into evidence in any matter other than in

the Action to enforce or to finalize the terms of the Settlement Agreement and/or to seek the Preliminary Approval Order and the Final Approval Order and Judgment.

The Parties and their counsel agree to keep the contents of this Settlement Agreement confidential until the date on which Class Representatives move the District Court for entry of the Preliminary Approval Order and file the Settlement Agreement with the Court.

## X.   MISCELLANEOUS PROVISIONS

A.   No Assignment.

Each of the Parties represents, covenants, and warrants that he or it has not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber any portion of any liability, claim, demand, cause of action, or rights that he or it herein releases.

B.   Binding on Assigns.

This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, trustees, executors, successors, and assigns.

C.   Captions.

The captions used herein are for convenience and reference only and do not define, limit, extend or describe the scope of this Settlement Agreement or any provision hereof.

D.   Class Member Signatures.

Because the Settlement Class Members are so numerous, it is agreed that it is impractical to have each Settlement Class Member execute this Settlement Agreement.  The Publication Notice will advise all Settlement Class Members of the binding nature of the Releases and of the Settlement Agreement.  In the absence of a valid Request for Exclusion, the Publication Notice shall have the same force and effect as if each Settlement Class Member executed this Settlement Agreement.

E.    Construction of Settlement Agreement.

The Parties agree that this Settlement Agreement is the result of arms-length negotiations between the Parties and that it shall not be construed in favor of or against a Party based upon the extent to which the Party or his or its counsel participated in the drafting of it.

F.    Counterparts.

This Settlement Agreement may be executed by the Parties in one or more counterparts. A facsimile or pdf signature shall be deemed an original for all purposes.

G.    Governing Law.

Construction and interpretation of the Settlement Agreement shall be determined in accordance with the laws of the State of California, without regard to choice of law principles thereof.

H.    Entire Agreement.

This Settlement Agreement, including the exhibits referenced herein, contains the entire agreement of the Parties with respect to the subject matter contained herein.  There are no promises, representations, warranties, covenants, or undertakings governing the subject matter of this Settlement Agreement other than those expressly set forth herein.  This Settlement Agreement supersedes all prior agreements and understandings between the Parties with respect to the Settlement of this Action.  This Settlement Agreement may not be changed, altered or modified, except in writing signed by the Parties and approved by the District Court.

I.    Jurisdiction.

The District Court shall retain jurisdiction, after entry of the Final Approval Order and Judgment, with respect to the enforcement of the terms of the Settlement Agreement, and all Parties and Settlement Class Members submit to the exclusive jurisdiction of the District Court

with respect to the enforcement of the Settlement Agreement and any dispute with respect thereto.

J.      No Collateral Attack.

This Settlement Agreement shall not be subject to collateral attack by any Settlement Class Member at any time after the Final Effective Date of the Settlement.  Prohibited collateral attacks include, but are not limited to, claims that the Settlement Class Member's claim was improperly denied or calculated and/or the Settlement Class Member failed to receive timely or proper notice.

K.      Parties' Authority.

The signatories to this Settlement Agreement represent and warrant that they have full authority to enter into this Settlement Agreement and bind the Parties to the terms and conditions contained herein.

L.      Receipt of Advice of Counsel.

The Parties acknowledge, agree and warrant that they have read this Settlement Agreement, have received legal advice with respect to the advisability of entering into this Settlement Agreement, and fully understand its legal effect.

Without limiting the generality of the foregoing, each of Plaintiff Ahdoot and Plaintiff Clark represents and certifies that : (i) he has agreed to serve as Class Representative; (ii) he is willing, able and ready to perform all of the duties and obligations of Class Representative; (iii) he has read the operative complaint or has had the contents of such pleading described to him; (iv) he has read this Agreement or has received a detailed description of it from Class Counsel and he has agreed to its terms; (v) he has consulted with Class Counsel about the Action and this Agreement and the obligations imposed on the Class Representatives; (vi) he has authorized

Class Counsel to execute this Agreement on his behalf; and (vii) he shall remain and serve as Class Representative until the terms of this Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that he cannot represent the Class.

     M.    <u>Notices.</u>

     Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next day (excluding Saturdays, Sundays and legal holidays) express delivery service as follows:

1.     If to Babolat VS North America, then to :
Brent E. Johnson, Esq.
Holland & Hart LLP
222 South Main Street
Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5800
Fax: (801) 799-5700
Email: bjohnson@hollandhart.com

2.     If to Plaintiff Ahdoot or Plaintiff Clark, then to:
Amy T. Wootton, Esq.
Hamner Law Offices, APC
555 West 5th Street
Los Angeles CA 90013
Tel: (213) 533-4160
Fax: (213) 533-4167
Email: awootton@hamnerlaw.com

REMAINDER OF PAGE INTENTIONALLY BLANK
SIGNATURES ON FOLLOWING PAGE

Dated: _07 / 28 / 2014_____

Dated: _____ 07/25/2014

_____

Payam Ahdoot
For himself individually and on behalf of the
Settlement Class

_____

Jerome Pin, CEO and Authorized Signer
BABOLAT VS NORTH AMERICA, INC.

Dated: _____

_____

Brandon Clark
For himself individually and on behalf of the
Settlement Class

Dated: _____

Dated: _____ 07/25/2014

_____
Payam Ahdoot
For himself individually and on behalf of the
Settlement Class

Jerome Pin, CEO and Authorized Signer
BABOLAT VS NORTH AMERICA, INC.

Dated: 8/3/14

_____
Brandon Clark
For himself individually and on behalf of the
Settlement Class

32

APPROVED AS TO FORM:

HAMNER LAW OFFICES, APC

Dated: _____

_____
Amy T. Wootton
Class Counsel

LAW OFFICES OF CHRISTOPHER A.
OLSEN

Dated: _____

_____
Christopher A. Olsen
Class Counsel

WOOTTON LAW GROUP, LLP

Dated: _____

_____
Chad B. Wootton
Class Counsel


HOLLAND & HART LLP

Dated: _July 25, 2014_

_____
Brent E. Johnson
J. Marcus Painter
Attorney for Defendant, Babolat VS North
America, Inc.

6990325_2

APPROVED AS TO FORM:

HAMNER LAW OFFICES, APC

Dated: _8 - 8 - 2014_

_____
Amy T. Wootton
Class Counsel

LAW OFFICES OF CHRISTOPHER A. OLSEN

Dated: _____


_____
Christopher A. Olsen
Class Counsel

WOOTTON LAW GROUP, LLP

Dated: _August 8, 2014_

_____
Chad B. Wootton
Class Counsel


HOLLAND & HART LLP

Dated: _____


_____
Brent E. Johnson
Attorney for Defendant, Babolat VS North America, Inc.


6990325_1

33

APPROVED AS TO FORM:

HAMNER LAW OFFICES, APC                    HOLLAND & HART LLP

Dated: _____         Dated: _____


_____                _____
Amy T. Wootton                             Brent E. Johnson
Class Counsel                              Attorney for Defendant, Babolat VS North
                                           America, Inc.

LAW OFFICES OF CHRISTOPHER A.
OLSEN

Dated: 5/8/2014

_____
Christopher A. Olsen
Class Counsel

WOOTTON LAW GROUP, LLP

Dated: _____


_____
Chad B. Wootton
Class Counsel

6990325_1

33

# EXHIBIT A

P.O. BOX 1945
FARIBAULT, MN 55021-5873

## IMPORTANT LEGAL MATERIALS

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
* 0 1 2 3 4 5 6 7 8 9 *

FOR OFFICIAL USE ONLY

03

Page 1 of 2

# BABOLAT SETTLEMENT CLAIM FORM

### Must Be Postmarked No Later Than March 11, 2015

Babolat Settlement Administrator
c/o Rust Consulting, Inc.
P.O. Box 1945
Faribault, MN 55021-5873

**INSTRUCTIONS:**

You must submit this Claim Form if you want to receive a payment from the Babolat Settlement. More information is available at www.BabolatSettlement.com or by calling 1-888-538-5873. For your claim to be timely and valid you must complete, sign, and return this form, which must be submitted online or postmarked no later than **March 11, 2015**. Failure to submit your completed Claim Form by this deadline or to provide the information required below will result in the rejection of your claim. Print all information in blue or black ink.

**1.) CLAIMANT INFORMATION.**

Name: _____

Address: _____

Email (if you have one): _____

Telephone: ( ____ ____ ____ ) ____ ____ ____ - ____ ____ ____ ____

**2.) LIST BABOLAT RACQUET PURCHASES.**

List all Babolat racquet purchases you made from January 1, 2009 to November 11, 2014 and provide supporting documents. The value of your claim is based upon the type of proof of purchase you can provide to the Settlement Administrator. **Regardless of type of racquet or form of proof, you may not claim more than ten racquets in total.**

- If you can provide copies of your receipts for the racquet(s), you may receive up to $50 for each adult racquet and up to $25 for each junior racquet up to a maximum of ten racquets.

- If you have serial numbers for the racquet(s), you may receive up to $50 for each adult racquet up to a maximum of ten racquets. You must submit a photograph of each racquet with your completed Claim Form. The photograph(s) must show the racquet model and serial number. The serial number is two letters followed by six numbers printed on a label on the throat of the racquet (ex. XX123456). Junior racquets and some adult racquets have no serial number, so your cash payment will be reduced for those racquets unless you have a receipt for them.





- If you do not have receipts or serial numbers for the racquets, you may receive up to $20 for each adult racquet and up to $10 for each junior racquet up to a maximum of three racquets.

- **Failure to include receipts or serial numbers for claims of more than three racquets or the submission of false claims will result in your Claim Form being rejected in its entirety.**

The included racquets are:

| | | |
|---|---|---|
| Pure Drive | AeroPro Drive | Pure Storm |
| Pure Drive + | AeroPro Drive + | Pure Storm Limited |
| Pure Drive 107 | AeroPro Drive Junior | Pure Storm Limited + |
| Pure Drive Roddick | AeroPro Team | Pure Storm Tour |
| Pure Drive + Roddick | AeroPro Lite | Pure Storm Tour + |
| Pure Drive Roddick Junior | AeroPro Drive French Open | Pure Storm Team |
| Pure Drive Lite | AeroPro Drive Junior French Open | Pure Control |
| Pure Drive French Open | AeroPro Lite French Open | Pure Control Tour |
| Pure Drive Lite French Open | AeroPro Team Wimbledon | Pure Control Tour + |
| Pure Drive 260 French Open | Aero Storm | Pure Control 95 |
| Pure Drive Junior 26 French Open | Aero Storm Tour | Pure Control 95 + |
| Pure Drive Lite Pink | | |
| Pure Drive Wimbledon | | |
| Pure Drive Junior Wimbledon | | |
| Pure Drive Play | | |

| | Racquet model | Approx. date of purchase | Where purchased (State, City, Store or Website) | Receipt (Yes/No) | Serial N° (XX 123456) |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |
| 6 | | | | | |
| 7 | | | | | |
| 8 | | | | | |
| 9 | | | | | |
| 10 | | | | | |

**3.) SIGN AND DATE YOUR CLAIM FORM.**

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1746, that the above information is true and correct to the best of my knowledge and that I purchased for personal use and not for resale the Babolat Racquet(s) I have identified in this Claim Form between January 1, 2009 and November 11, 2014.

Signature: _____

Print Name: _____    Month/Day/Year: ____ ____ / ____ ____ / ____ ____ ____ ____

**4.) SUBMIT YOUR CLAIM FORM.**

Claim Forms may be submitted online at www.BabolatSettlement.com or by mail at: Babolat Settlement Administrator, c/o Rust Consulting, Inc., P.O. Box 1945, Faribault, MN 55021-5873.

QUESTIONS?  CALL 1-888-538-5790 OR VISIT WWW.BABOLATSETTLEMENT.COM

# EXHIBIT B

## [PROPOSED] FINAL APPROVAL ORDER AND JUDGMENT

WHEREAS, on [DATE], an Order Preliminarily Approving Settlement Stipulation and Agreement ("Preliminary Approval Order) was issued by the Court preliminarily approving the Settlement Stipulation and Agreement ("Settlement Agreement") and directing that notice be given to the Settlement Class pursuant to the terms of the Preliminary Approval Order and Settlement Agreement;

WHEREAS, pursuant to the terms of the Preliminary Approval Order and Settlement Agreement, the Settlement Class was notified of, *inter alia*:  (i) the terms of the Settlement Agreement; (ii) the right of and procedure for members of the Settlement Class to exclude themselves from the Settlement; (iii) the right of and procedure for Settlement Class Members to object to final approval of the Settlement and/or Class Counsel's Fee and Cost Application (including enhancement awards to Class Representatives); and (iv) the date, time and location of the Final Approval Hearing and that the date, time, and location of the Final Approval Hearing were subject to change by the Court without further notice to Settlement Class Members.

NOW, THEREFORE, the Court, having considered the presentations of Class Counsel and Babolat's Counsel, having reviewed the submissions presented with respect to the Settlement and the objections, if any, of Settlement Class Members, and having considered the requirements for class certification, it is hereby ORDERED, ADJUDGED AND DECREED THAT:

1.      The capitalized terms used in this Final Approval Order and Judgment shall have the same meaning as defined in the Settlement Agreement.

2.      The Court has jurisdiction over the subject matter of the Action and over all claims raised therein and all Parties thereto, including the Settlement Class.

3.      The Court has analyzed the elements for class certification and finds, solely for the purposes of considering final approval of the Settlement, that the requirements of Federal Rule of Civil Procedure 23 are satisfied, including requirements of an ascertainable Settlement Class, numerosity of the Settlement Class, common questions of law or fact, typicality of the Class Representatives' claims to the claims of the Settlement Class, the predominance of common issues of law and fact and superiority of a class action to resolve the claims in the Action compared to alternative means.  Accordingly, the Court hereby certifies the Settlement Class.

4.      The Settlement Class, which shall be bound by this Final Approval Order and Judgment, shall include all members of the Settlement Class who did not submit timely and valid Requests for Exclusion.

5.      For purposes of the Settlement and this Final Approval Order and Judgment, the Settlement Class shall consist of all Persons in the United States who purchased for personal use and not for resale the following Babolat tennis racquets from January 1, 2009 through November 11, 2014:  Pure Drive, Pure Drive +, Pure Drive 107, Pure Drive Roddick, Pure Drive + Roddick, Pure Drive Roddick Junior, Pure Drive Lite, Pure Drive French Open, Pure Drive Lite French Open, Pure Drive 260 French Open, Pure Drive Junior 26 French Open, Pure Drive Lite Pink, Pure Drive Wimbledon, Pure Drive Junior Wimbledon, Pure Drive Play, AeroPro Drive, AeroPro Drive +, AeroPro Drive Junior, AeroPro Team, AeroPro Lite, AeroPro Drive French Open, AeroPro Drive Junior French Open, AeroPro Lite French Open, AeroPro Team Wimbledon, Aero Storm, Aero Storm Tour, Pure Storm, Pure Storm Limited, Pure Storm Limited +, Pure Storm Tour, Pure Storm Tour +, Pure Storm Team, Pure Control, Pure Control Tour, Pure Control Tour +, Pure Control 95 and Pure Control 95 +.  Specifically excluded from

the Settlement Class are: (i) employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, or assignees of Babolat; (ii) distributors, dealers, and retailers of Babolat racquets if the racquets were purchased for resale and not for personal use; and (iii) judges assigned to this Action and any members of their immediate families.

6.     The Court finds that the provisions for notice to the Settlement Class set forth in Section IV of the Settlement Agreement and performed pursuant to the Preliminary Approval Order are the best notice practicable under the circumstances and constitute due and sufficient notice to the Settlement Class of the terms of the Settlement Agreement, Settlement Class members' right to exclude themselves from the Settlement Agreement so as not to be bound by its terms or to object to the Settlement Agreement and/or Class Counsel's Fee and Cost Application, and the Final Approval Hearing and fully comply with the Federal Rules of Civil Procedure, the United States Constitution,  federal due process, and any other applicable law.

7.     The Settlement, as set forth in the Settlement Agreement, is in all respects fair, reasonable, adequate and in the best interests of the Settlement Class, and, as such, it is approved.  The Parties shall effectuate the Settlement according to the terms of the Settlement Agreement.  The Settlement Agreement and every provision therein shall be deemed incorporated herein as if fully set forth and shall have the full force of an order of this Court.

8.     Unless otherwise directed by the Court, within twenty-one (21) days after the Final Effective Date, distribution of funds from the Net Settlement Fund to Settlement Class Members shall be completed.

9.     Upon the Final Effective Date, the Class Representatives and each and every Settlement Class Member (including any of their past, present or future agents, legal representatives, successors, assigns, trustees, estates, heirs, executors and administrators) shall

have, by operation of this Final Approval Order and Judgment, fully, finally, and forever released, relinquished and discharged each and all of the Babolat Releasees from any and all of the Class  Representatives' and each and every Settlement Class Member's (including any of their past, present or future agents, legal representatives, successors, assigns, trustees, estates, heirs, executors and administrators) respective claims, actions, demands, suits, and causes of action, whether class, individual or otherwise in nature, damages whenever incurred, liabilities of any nature whatsoever, including costs, expenses, penalties and attorneys' fees, known or unknown, suspected or unsuspected, direct or indirect, contingent or absolute, existing or potential, in contract or tort, in law or equity, that the Class Representatives and each and every Settlement Class Member (including any of their past, present or future agents, legal representatives, successors, assigns, trustees, estates, heirs, executors and administrators), and whether or not they objected to the Settlement, ever had, now has, or hereafter can, will or may have, arising out of (i) advertising, marketing and conduct of whatever kind by the Babolat Releasees related to any and all professional athletes and their connection with, affiliation with, association with or endorsement of the Qualifying Racquets and any components thereof; (ii) the use of the term "GT Technology" and "tungsten" in the Babolat Releasees' advertising, marketing materials, labeling, and any other communication or information of whatever kind related to the Qualifying Racquets, (iii) factual allegations or claims made in the Second Amended Complaint, and (iv) any violation or alleged violation of any federal or state law and any federal or state statute, including but not limited to California Business & Professions Code §§ 17200, et seq., 17500 et seq., and California Civil Code §1750, predicated on (i), (ii) or (iii) (the "Released Claims"). This release includes those claims covered by any statute or common law that provides, in sum or substance, that a general release does not extend to claims which the party does not know or

4

suspect to exist in his or her favor at the time of executing the release, which if known by him or her, would have materially affected his or her settlement with any other party, including, but not limited to, California Civil Code § 1542. The Babolat Releasees who are not Parties to the Settlement Agreement are third party beneficiaries of this Final Approval Order and Judgment and may seek enforcement of this Final Approval Order and Judgment and Settlement Agreement in the same manner as the Parties, and the release of the Babolat Releasees is supported by the adequate and appropriate consideration that defendant Babolat VS North America, Inc. would not have entered into this Settlement Agreement in the absence of such a release of the Babolat Releasees as well.

10. Settlement Class Members, including the Class Representatives, and their past, present or future agents, legal representatives, trustees, estates, heirs, executors and administrators are hereby permanently barred and enjoined from instituting, commencing or prosecuting, either directly or in any other capacity, any legal action of any kind before a court or other tribunal relating to the Released Claims.

11. This Final Approval Order and Judgment, the Settlement Agreement, and any and all acts, statements, documents or proceedings relating to the Settlement are not, and shall not be construed as, or used as admissions by or against Babolat and any of the Babolat Releasees of any fault, wrongdoing, or liability on its part, or of the validity of any claim or the existence or amount of any damages.

12. The payments ordered in this Final Approval Order and Judgment shall be made in the manner and at the times set forth in the Settlement Agreement.

13. Without affecting the finality of the Judgment hereby entered, the Court reserves jurisdiction over the implementation of the Settlement and the enforcement and administration of

the Settlement Agreement, including the releases contained herein and in the Settlement Agreement, and any matters related to or ancillary to the foregoing.

14.     The provisions of this Final Approval Order and Judgment constitute a full and complete adjudication of the matters considered and adjudged herein, and the Court determines that there is no just reason for delay in the entry of judgment.  The Consolidated Actions, therefore, are dismissed with prejudice and the Clerk is hereby directed to immediately enter this Final Judgment.

**IT IS SO ORDERED AND ADJUDGED.**

Dated:                                                    _____

Honorable Gary A. Feess

United States District Court Judge

Submitted by:

6983077_1

# EXHIBIT C

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAYAM AHDOOT, and BRANDON CLARK, on behalf of themselves and all others similarly situated, and the general public, <br><br> Plaintiff, <br><br> vs. <br><br> Babolat VS North America, Inc., a Colorado Corporation and DOES 1 through 10, inclusive, <br><br> Defendant | Case No.: CV13-02823 GAF (VBKx) Consolidated with CV13-7898 GAF (VBKx) <br><br> **[PROPOSED] ORDER PRELIMINARILY APPROVING SETTLEMENT STIPULATION AND AGREEMENT** |

WHEREAS, Plaintiffs Payam Ahdoot and Brandon Clark and Defendant

Babolat VS North America, Inc. have reached a proposed Settlement in the above

captioned matters as set forth in the Settlement Stipulation and Agreement

("Settlement Agreement") filed with this Court;

1

WHEREAS, Plaintiffs have filed a motion with this Court seeking preliminary approval of the proposed Settlement as set forth in the proposed Settlement Agreement;

WHEREAS, Plaintiffs have also filed a Stipulated Motion For Leave To File Second Amended Complaint;

NOW, THEREFORE, the Court, having reviewed and considered the Settlement Agreement, the exhibits thereto, and the Plaintiffs' motion for preliminary approval and supporting documents, and the Parties having consented to entry of this Order, IT IS HEREBY ORDERED:

1.      All terms in this Order shall have the same meaning as in the Settlement Agreement.

2.      The Court grants Plaintiffs' Stipulated Motion For Leave To File Second Amended Complaint.  Plaintiffs shall file the Second Amended Complaint on the date of this Order.

3.      Subject to further review by the Court at the Final Approval Hearing, the Court preliminarily approves the proposed Settlement as fair, reasonable, and adequate to the Settlement Class such that notice of the Settlement Agreement may be disseminated to the Settlement Class for consideration.

4.      For purposes of the Settlement only, the Court certifies the Settlement Class, which consists of:

All Persons who purchased or purchases any of the following racquets for personal use and not for re-sale from January 1, 2009 to November 11, 2014, or, if the actual publication date of the November/December issue of Tennis Magazine containing the Short Form Publication Notice is later, to the actual date of first publication:  Pure Drive, Pure Drive +, Pure Drive 107, Pure Drive Roddick, Pure Drive + Roddick, Pure Drive Roddick Junior, Pure Drive Lite, Pure Drive French Open, Pure Drive Lite French Open, Pure Drive 260 French Open, Pure Drive Junior 26 French Open, Pure Drive Lite Pink, Pure Drive Wimbledon, Pure Drive Junior Wimbledon, Pure Drive Play, AeroPro Drive, AeroPro Drive +, AeroPro Drive Junior, AeroPro Team, AeroPro Lite, AeroPro Drive French Open, AeroPro Drive Junior French Open, AeroPro Lite French Open, AeroPro Team Wimbledon, Aero Storm, Aero Storm Tour, Pure Storm, Pure Storm Limited, Pure Storm Limited +, Pure Storm Tour, Pure Storm Tour +, Pure Storm Team, Pure Control, Pure Control Tour, Pure Control Tour +, Pure Control 95 and Pure Control 95 +. Specifically excluded from the Settlement Class are: (i)employees, principals, officers, directors, agents, affiliated entities, legal representatives, successors, or assignees of Babolat; (ii) distributors, dealers, and retailers of Babolat racquets if the racquets were purchased for resale and not for personal use; and (iii) judges assigned to this Action and any members of their immediate families.

5.     The Court finds, for purpose of preliminarily approving the Settlement Agreement only and for no other purpose, that the requirements of Federal Rule of Civil Procedure 23 are satisfied, including the requirements of an ascertainable Settlement Class, numerosity of the Settlement Class, common questions of law or fact, typicality of the Class Representatives' claims to the claims of the Settlement Class, the predominance of common issues of law and fact and superiority of a class action to resolve the claims in the Action compared to alternative means.

6.     The Court appoints Payam Ahdoot and Brandon Clark as Class Representatives for the Settlement Class.  The Court appoints Hamner Law Offices, APC; the Olsen Law Offices, and Wootton Law Group, LLP as Class

Counsel for purposes of the Settlement.  The Court preliminarily finds that the Class Representatives and Class Counsel fairly and adequately represent the interests of the Settlement Class.

7.     A Final Approval Hearing shall be held before this Court on [DATE] at [TIME]  in Courtroom 740 of the Roybal Federal Courthouse at 255 East Temple Street, Los Angeles, California 90012-3332 to consider and address: (a) whether the proposed Settlement should be finally approved as fair, reasonable and adequate to the Settlement Class and whether a Final Approval Order and Judgment be entered by the Court; and (b) whether Class Counsel's Fee and Cost Application (including incentive awards to Class Representatives) should be granted, in whole or in part.  Consideration of final approval of the Settlement shall be made separately from consideration of Class Counsel's Fee and Cost Application and the written orders thereon will be separate from each other.

8.     With the exception of Plaintiffs filing the Second Amended Complaint and proceedings related to final approval of the Settlement and consideration of Class Counsel's Fee and Cost Application, members of the Settlement Class are hereby enjoined from commencing or continuing any action or proceeding in any court or other tribunal asserting any claims encompassed by the Settlement Agreement unless the member of the Settlement Class files a valid and timely Request for Exclusion.

4

9.    The Court approves the form and the content of the Short Form and Long Form Publication Notices, substantially in the forms attached as Exhibits D and E, respectively, to the Settlement Agreement.

a.    The Short Form Publication Notice shall be published in the November/December 2014 issue of Tennis Magazine.

b.    A Settlement website shall be established with the internet address www.Babolatsettlement.com.  The Settlement website shall be operational on or before the first day the Short Form Publication Notice appears in Tennis Magazine. The Settlement website shall include the Short Form Publication Notice, the Long Form Publication Notice, the Claim Form, the Settlement Agreement (without exhibits), the Second Amended Complaint, and the Preliminary Approval Order.

c.    A banner advertisement regarding the settlement shall be published on the United States version of Babolat.com and the Internet website Tennis.com contemporaneously with the Short Form Publication Notice's first appearance in Tennis Magazine that shall contain a link to the Settlement website.

d.    No later than ten (10) days before the Final Approval Hearing, Class Counsel shall file a declaration of the Settlement Administrator affirming compliance with the notice requirements in (a)-(c) above.

10.    The Court finds that the provisions for notice to the Settlement Class set forth in Section IV of the Settlement Agreement are the best notice practicable

5

under the circumstances and shall constitute due and sufficient notice to the Settlement Class of the terms of the Settlement Agreement and the Final Approval Hearing and fully comply with the Federal Rules of Civil Procedure, the United States Constitution and any other applicable law.

11.    The Court further finds that the notice to the Settlement Class set forth in Section IV of the Settlement Agreement will adequately inform the Settlement Class of their right to exclude themselves from the Settlement Agreement so as not to be bound by its terms or to object to the Settlement Agreement and/or Class Counsel's Fee and Cost Application.

12.    Any member of the Settlement Class who wants to be excluded from the Settlement Class so that he or she is not bound by the Settlement Agreement must submit a Request for Exclusion.  To be valid, a Request for Exclusion must: (i) be submitted by a member of the Settlement Class; (ii) be submitted to the Settlement Administrator by U.S. mail and postmarked by a date not later than twenty-one (21) days before the Final Approval Hearing; (iii) contain the Person's name, address and telephone number; and (iv) otherwise comply with the instructions set forth in the Long Form Publication Notice.  The Request for Exclusion must also identify the Qualifying Racquet(s) that the Person purchased, the approximate date(s) on which the Qualifying Racquets were purchased, and where the Qualifying Racquets were purchased.  The Request for Exclusion must

6

include the following statement: "I want to be excluded from the proposed Class Action Settlement in the Babolat lawsuit" and be signed by the Person submitting the Request for Exclusion.  No individual may request that other persons be excluded from the Settlement Class.

13.     Any member of the Settlement Class who submits a valid and timely Request for Exclusion shall not be entitled to receive any benefits under the Settlement Agreement, shall not be bound by the Settlement Agreement, including the release contained therein, and shall not be entitled to object to the Settlement and appear at the Final Approval Hearing.

14.     Not later than ten (10) days before the Final Approval Hearing, Class Counsel shall file a report from the Settlement Administrator stating the total number of Persons who have submitted timely and valid Requests for Exclusion from the Settlement Class and the names of such Persons.

15.     Any Settlement Class Member wishing to object to or oppose the final approval of the Settlement and/or Class Counsel's Fee and Cost Application shall file a written objection (with a statement of reasons) with the Court as prescribed in the Settlement Agreement and serve it on Babolat's Counsel and Class Counsel at least twenty-one (21) days before the Final Approval Hearing.  Any Settlement Class Member who files a timely written objection must appear, personally or through personal counsel, at the Final Approval Hearing and be prepared to make

7

argument in order to have the objection heard and considered by the Court. Any Settlement Class Member who fails to file a timely written objection and to appear at the Final Approval Hearing shall be foreclosed from making any objection to final approval of the Settlement Agreement and/or Class Counsel's Fee and Cost Application and shall have no right to file an appeal relating to the approval of the Settlement Agreement and any order by the Court relating to Class Counsel's Fee and Cost Application.

16.    Service of objections to final approval of the Settlement Agreement and/or the Class Counsel's Fee and Cost Application, as well as any other documents required to be served on counsel under the terms of the Settlement Agreement, shall be made as follows:  For Class Counsel, to Amy T. Wootton, HAMNER LAW OFFICES, APC, 555 West 5th Street, Los Angeles, CA 90013; For Babolat's Counsel, to Brent E. Johnson, Holland & Hart LLP, 222 South Main Street, Suite 2200, Salt Lake City, UT 84101.

17.    Class Representatives will file with the District Court their brief in support of final Settlement approval, in support of final certification of the Settlement Class, and in response to any objections at least seven (7) days before the Final Approval Hearing.

18.    If the proposed Settlement is not finally approved by the Court, or, in the event that the Settlement Agreement becomes null and void pursuant to its

8

terms, this Order and all orders entered in relation to the Settlement shall become null and void, shall have no force or effect, and shall not be used or referred to for any purposes whatsoever it this Action or in any other case or controversy.  In such event, the Settlement Agreement and all negotiations and proceedings related to it shall be deemed to be without prejudice to the rights of the Parties.  The Parties shall be restored to their respective positions as of the moment immediately preceding the execution of the Settlement Agreement.

19.    The Court may extend any of the deadlines set forth in this Order without further notice to Settlement Class Members.  The Final Approval Hearing may be continued by the Court without notice to the Settlement Class.


IT IS SO ORDERED.


Dated: _____          _____
                        Honorable Gary A. Feess
                        United States District Court Judge

# EXHIBIT D

# If You Purchased Certain Babolat Tennis Racquets

## *You Could Get a Payment From a Class Action Settlement*

### Includes certain Pure Drive, AeroPro, Aero Storm, Pure Storm, and Pure Control racquets

A Settlement has been proposed in two lawsuits against Babolat VS North America, Inc. ("Babolat") that allege Babolat: 1) falsely advertised certain tennis racquets as the same as those being used by professional tennis players and 2) falsely advertised and labeled its GT Technology racquets as containing tungsten.  Babolat denies it did anything wrong or unlawful and denies all of the claims in the lawsuits.  The Court did not decide which side was right.  Instead, the parties decided to settle.

### Who Is Included?

Generally, you are included if, from January 1, 2009 through November 11, 2014, you bought an included racquet for personal use that was advertised with the endorsement of a professional tennis player or was advertised and labeled as containing GT Technology that included tungsten in the racquet.  A full list of included racquets is available at the website located at www.BabolatSettlement.com or by calling 1-888-538-5790.

### What Can You Get?

Babolat will pay $4.5 million to settle the lawsuit.  All costs to administer the Settlement, notify people about the Settlement, and the attorney's fees and costs and incentive awards to Class Representatives will be paid out of this Settlement Fund.  Class Members who submit valid claims with receipts or photo proof of racquet model(s) and serial number(s) can get $50 for each adult racquet and $25 for each junior racquet (up to 10 racquets).  Junior racquets and some adult racquets do not have serial numbers.  Valid claims without receipts or photo proof can get $20 for each adult racquet and $10 for each junior racquet (up to three racquets).  Payments will be reduced proportionally if the total amount of claims submitted is greater than the money available to ensure all valid claims receive a payment.  If money is left after all fees, costs, and claims have been paid, it will be donated to charities approved by the Court.  Babolat has also agreed to change its advertising practices.

### How to Make a Claim for Payment.

You must submit a Claim Form by mail or online by **March 11, 2015** to get a payment from the Settlement.  The Claim Form is available at www.BabolatSettlement.com or by calling 1-888-538-5790.

### Your Other Rights.

If you do nothing, your rights will be affected.  If you do not want to be legally bound by the Settlement, you must exclude yourself from the Class by **Month 00, 2014** or you will not be able to sue Babolat regarding the claims in this case.  If you exclude yourself, you cannot get money from this Settlement.  If you stay in the Class, you may object to the Settlement by **Month 00, 2014**, but will be bound by the terms of the Settlement if approved by the Court.

The Court will hold a hearing on **Month 00, 2014** to consider whether to approve the Settlement and a request for attorneys' fees up to $1,125,000 plus $160,000 for costs and incentive awards.  You can appear at the hearing, but you don't have to.  You can hire your own attorney, at your own expense, to appear or speak for you at the hearing.

---

### For complete information or to file a claim:
### Visit: www.BabolatSettlement.com
### Call: 1-888-538-5790

# EXHIBIT E

UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

# If You Purchased Certain Babolat Tennis Racquets

## You Could Get a Payment From a Class Action Settlement

*A federal court authorized this notice.  This is not a lawyer solicitation.*

- There is a proposed settlement of two lawsuits against Babolat VS North America, Inc. ("Babolat") claiming that Babolat: 1) falsely advertised some of its tennis racquets as the same as those used by professional tennis players, and 2) falsely advertised and labeled its tennis racquets with GT Technology as containing tungsten.
- The settlement includes certain Pure Drive, AeroPro, Aero Storm, Pure Storm, and Pure Control racquets.  Generally, you are included if, from January 1, 2009 through November 11, 2014, you bought an included racquet that was advertised with the endorsement of a professional tennis player or was advertised and labeled as containing GT Technology that included tungsten in the racquet.  See Question 5 for a full list of included racquets.
- The settlement will pay Class Members up to $50 per racquet depending on type and proof of purchase (*see* Question 8).

*Your legal rights are affected whether you act or do not act.  Read this notice carefully.*

| YOUR LEGAL RIGHTS IN THIS SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM FORM BY MARCH 11, 2015** | This is the only way to get a payment. |
| **EXCLUDE YOURSELF BY [DATE]** | Receive no payment from this settlement.  This is the only option that allows you to be part of any other lawsuit against Babolat or any related parties regarding the claims in the Action (*see* Question 13). |
| **OBJECT TO THE SETTLEMENT IN WRITING BY [DATE] AND COME TO THE FINAL APPROVAL HEARING ON [DATE]** | Write to the Court about why you do not like the proposed settlement and why you do not think the Court should approve it.  If you object, you or your personal attorney must also come to the Final Approval Hearing and be prepared to state the reasons for your objection (*see* Question 18). |
| **DO NOTHING** | Receive no payment and give up your right to sue Babolat or any related parties based on any of the facts and claims in the Action. |

- Your rights and options – **and the deadlines to exercise them** – are explained in this Notice.

- The Court in this case still has to decide whether to approve the proposed Settlement.  Payments will be made only if the Court approves the proposed Settlement and after any appeals are over.  This may take a year or longer.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

## What This Notice Contains

**BASIC INFORMATION** ............................................................................................ 3
    1.      What is this notice for?
    2.      What is the Action about?
    3.      Why is this a class action?
    4.      Why is there a proposed settlement?

**WHO IS PART OF THE SETTLEMENT?** .......................................................... 4
    5.      Am I part of this settlement?
    6.      What do I do if I'm not sure I'm a Settlement Class Member?

**WHAT YOU MAY RECEIVE AS A SETTLEMENT CLASS MEMBER** ........................... 5
    7.      What does the proposed settlement provide?
    8.      How much will my payment be?
    9.      Do I have to do anything now?

**HOW TO SUBMIT A CLAIM FORM** ................................................................. 7
    10.    How do I request a payment?
    11.    When will I receive a payment?
    12.    What do I give up if I participate in the settlement?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...................................... 8
    13.    How do I exclude myself from the settlement?
    14.    If I do not exclude myself from the Settlement Class, can I sue Babolat for the same thing later?
    15.    If I exclude myself from the Settlement Class, can I receive money under this settlement?

**THE LAWYERS WHO REPRESENT YOU** ...................................................... 9
    16.    Do I have a lawyer in this case?
    17.    How will Class Counsel and the Class Representatives be paid?

**OBJECTING TO THE PROPOSED SETTLEMENT** ......................................... 10
    18.    If I do not like the proposed settlement, how can I tell the Court?
    19.    What's the difference between filing an objection and excluding myself from the settlement?

**THE FINAL APPROVAL HEARING** ................................................................. 11
    20.    When and where will the Court decide whether it will approve the settlement?
    21.    Do I have to come to the Final Approval Hearing?

**IF YOU DO NOTHING** ..................................................................................... 11
    22.    What happens if I do not do anything?

**MORE INFORMATION** ................................................................................... 12
    23.    Can I get more information about the settlement?

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

## Basic Information

| 1. | What is this Notice for? |
|---|---|

This Notice is being given because of a Court order dated [**DATE**].  This Notice describes a proposed settlement of two lawsuits against Babolat that were joined together, *Ahdoot v. Babolat VS North America, Inc.*, CV13-02823 GAF (VBKx) and *Clark v. Babolat VS North America, Inc.*, CV13-7898 GAF (VBKx).  Together, these lawsuits are referred to as the "Action."

This Notice provides a summary of the proposed settlement.  It also explains the Action, your potential legal rights under the proposed settlement, what benefits may be available to you under the proposed settlement, and how to get them.  **If you are in the Settlement Class, your legal rights will be affected whether or not you act.  Please read this Notice carefully.**

| 2. | What is the Action about? |
|---|---|

The Action claims that Babolat made false claims in its advertising on the internet, in magazines and other publications, and on television.  These claims said that tennis racquets available for sale to the public in the United States were the same as those used by tennis professionals who endorse Babolat racquets when the professionals' racquets are allegedly different from the retail versions available in the United States.  The Action also claims that Babolat falsely advertised and labeled its racquets with GT Technology as containing tungsten when the racquets allegedly did not contain tungsten.  Babolat denies any wrongdoing or liability and has defended itself throughout the Action.

| 3. | Why is this a class action? |
|---|---|

In a class action lawsuit, one or more people who are called "Class Representatives" (in this case Payam Ahdoot and Brandon Clark) sue on behalf of a group of people who have similar claims.  The people with similar claims are called "Class Members."  In a class action, one court resolves the issues for all Class Members, except for those people who exclude themselves from the class.  In this Action, United States District Court Judge Gary A. Feess is presiding.

| 4. | Why is there a proposed settlement? |
|---|---|

The Court has not decided which side is right.  Instead, both sides agreed to a proposed settlement.  This avoids the costs of trial, and the people who were allegedly affected will get compensation.  The Class Representatives and their attorneys believe that the proposed settlement is fair for the Class Members.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

3

# WHO IS PART OF THE SETTLEMENT?

| 5. | Am I part of this settlement? |
|---|---|

You are a Settlement Class Member if you purchased for personal use (not for resale) any of the included Babolat tennis racquets from January 1, 2009 through November 11, 2014.   The included racquets are:

| | | |
|---|---|---|
| Pure Drive | AeroPro Drive | Pure Storm |
| Pure Drive + | AeroPro Drive + | Pure Storm Limited |
| Pure Drive 107 | AeroPro Drive Junior | Pure Storm Limited + |
| Pure Drive Roddick | AeroPro Team | Pure Storm Tour |
| Pure Drive + Roddick | AeroPro Lite | Pure Storm Tour + |
| Pure Drive Roddick Junior | AeroPro Drive French Open | Pure Storm Team |
| Pure Drive Lite | AeroPro Drive Junior French | |
| Pure Drive French Open | Open | Pure Control |
| Pure Drive Lite French Open | AeroPro Lite French Open | Pure Control Tour |
| Pure Drive 260 French Open | AeroPro Team Wimbledon | Pure Control Tour + |
| Pure Drive Junior 26 French | | Pure Control 95 |
| Open | Aero Storm | Pure Control 95+ |
| Pure Drive Lite Pink | Aero Storm Tour | |
| Pure Drive Wimbledon | | |
| Pure Drive Junior Wimbledon | | |
| Pure Drive Play | | |

You are not included if you are:

- An employee, principal, officer, director, agent, affiliated entity, legal representative, successor, or assignee of Babolat;

- A distributor, dealer, or retailer of Babolat racquets if the racquets you purchased were for resale and not for personal use; or

- A judge assigned in this Action or a member of an assigned judge's immediate family.

If you file a timely and valid Request for Exclusion, you will also not be a Settlement Class Member.

| 6. | What do I do if I'm not sure if I'm a Settlement Class Member? |
|---|---|

If you are unsure whether you are a Settlement Class Member, you can visit www.Babolatsettlement.com.   You can also call 1-888-538-5790 for pre-recorded messages. You may also contact Class Counsel in this case (*see* Question 15).

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

4

## WHAT YOU MAY RECEIVE AS A SETTLEMENT CLASS MEMBER

| **7.**   **What does the proposed settlement provide?** |
|---|

If the proposed settlement is finally approved by the Court, a settlement fund of $4,500,000 will be established. The settlement fund will first be used to pay any and all court-ordered attorneys' fees and costs of the Class Representatives' attorneys who are referred to as "Class Counsel," incentive awards paid to the two Class Representatives, and the fees and costs to administer this settlement; and then to pay Settlement Class Members who submit valid claims.  If the total amount of claims submitted is greater than the money remaining in the settlement fund after fees, costs, and awards are paid, the payment to each Settlement Class Member will be equally and proportionately reduced based on the number of racquets the Settlement Class Member purchased and the available funds to ensure that every valid claim receives a payment.

Any money remaining in the settlement fund after all claims are paid will be donated to charities approved by the Court as follows:

- 50% to St. Jude's Children's Research Hospital, a pediatric treatment and research facility dedicated to finding cures for children with cancer and other catastrophic diseases through research and treatment; and

- 50% to USTA Serves, the National Charitable Foundation of the United States Tennis Association, Inc. dedicated to improving the quality of life among youth and people with disabilities in the United States by, among other things, supporting organizations that use tennis as a vehicle to help at-risk children finish high school and qualify for college scholarships.

Under the Settlement Agreement, Babolat may continue to have Babolat's professional tennis player endorsers play with equipment that is the same in appearance as the retail versions of the models and refer to the models of equipment the professionals endorse.  However, Babolat has agreed to modify all of its advertising in the United States that contains still images of professional tennis players with Babolat racquets to include a disclaimer that states, "Team Babolat Pro Players may play with a customized or different model than the equipment depicted" or similar words.  Babolat has also stopped making reference to any of its racquets containing tungsten in its advertising in the United States, including on its website.  The Settlement Agreement permits Babolat to continue to use GT Technology in its advertising, marketing, communications and labeling in the United States as long as tungsten is not referenced in connection with it.

| **8.**   **How much will my payment be?** |
|---|

The value of your claim is based upon the type of proof of purchase you can provide to the Settlement Administrator as follows:

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

5

| TYPE OF RACQUET | PAYMENT AMOUNT | MAXIMUM NUMBER ALLOWED |
|---|---|---|
| Adult | Up to $50 per racquet with receipt or photo of serial number | 10 racquets* |
| | Up to $20 per racquet with no receipt or serial number | 3 racquets* |
| Junior | Up to $25 per racquet with receipt | 10 racquets* |
| | Up to $10 per racquet with no receipt | 3 racquets* |

**\*Regardless of type of racquet or form of proof, you may not claim more than ten racquets in total.**

You must provide the following information for each included Babolat racquet you purchased from January 1, 2009 to November 11, 2014.

- If you can provide copies of your receipts for the racquet(s), you may receive up to $50 for each adult racquet and up to $25 for each junior racquet up to a maximum of ten racquets.

- If you do not have receipts for the racquets but you have serial numbers for the racquets, you may receive up to $50 for each adult racquet up to a maximum of ten racquets. You must submit a photograph of each racquet with your completed Claim Form. The photograph(s) must show the racquet model and serial number. The serial number is two letters followed by six numbers printed on a label on the throat of the racquet (ex. XX123456). Junior racquets and some adult racquets have no serial number, so your cash payment will be reduced for those racquets unless you have a receipt for them.

- If you do not have receipts or serial numbers for the racquets, you may receive up to $20 for each adult racquet and up to $10 for each junior racquet up to maximum of three racquets.

**Please note that only the racquets listed in the answer to Question 5 are eligible for a payment.**

| 9. | Do I have to do anything now? |
|---|---|

If you are a Settlement Class Member, you have to decide whether to stay in the Settlement Class or ask to be excluded (*see* Question 13). If you are a Settlement Class Member and you wish to receive a payment, you must complete and submit a signed Claim Form on or before March 11, 2015 (*see* Question 10).

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

## HOW TO SUBMIT A CLAIM FORM

| 10. How do I request a payment? |
|---|

To request a payment, you must submit a completed Claim Form and any necessary documentation to the Settlement Administrator by mail or online by **March 11, 2015**.

The Settlement Administrator will determine the validity of all Claim Forms. Submission of multiple Claim Forms from the same household will be subject to audit by the Settlement Administrator for validity. Failure to provide all information requested in the Claim Form will result in rejection of the Claim Form.

The Claim Form is attached to this Notice and is also available for download at the settlement website at www.BabolatSettlement.com. You can also request that a Claim Form be mailed to you by calling the Settlement Administrator at 1-888-538-5790, following the recorded prompts, and leaving a message.

The completed and signed Claim Form must be submitted online at www.BabolatSettlement.com or sent via U.S. Mail to the Settlement Administrator at Babolat Settlement Claim Administrator, c/o Rust Consulting, Inc., P.O. Box 1945, Faribault, MN 55021-5873. If you choose to submit your claim online, your photo(s) must be in one of the following formats: GIF, JPG, JPEG, TIF, TIFF, or PDF.

| 11. When will I receive a payment? |
|---|

The Court will hold a Final Approval Hearing on **[DATE]** at **[TIME]**. At the Final Approval Hearing, the Court will decide whether to finally approve all the terms of the settlement. If the Court approves the settlement, there may be appeals or other challenges. Payment depends on the Court's final approval of the proposed settlement. If and when the Court approves the proposed settlement and all appeals and other challenges are resolved in favor of the proposed settlement, the Settlement Administrator will mail checks to Settlement Class Members who submitted valid and timely Claim Forms. The entire process may take more than one year.

| 12. What do I give up if I participate in the settlement? |
|---|

If you meet the requirements of being a Class Member, you will be a Settlement Class Member unless you exclude yourself. If you are a Settlement Class Member and do not exclude yourself, you cannot sue, continue to sue, or be part of any lawsuit or other legal proceeding against Babolat or any related parties ("Babolat Releasees" as defined in Section I.B. of the Settlement Agreement) that involves the claims and issues in this Action. It also means that all of the Court's orders apply to you and you are bound by them. If you sign the Claim Form, you agree to "release" claims against Babolat and all related parties as defined in Section VII.B. of the Settlement Agreement available at www.BabolatSettlement.com.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

7

## EXCLUDING YOURSELF FROM THE SETTLEMENT

| | |
|---|---|
| **13.** | **How do I exclude myself from the settlement?** |

If you wish to be excluded from the Settlement Class, you must mail a letter so that it is postmarked no later than **[INSERT DATE]** to: Babolat Settlement Administrator, c/o Rust Consulting, Inc., P.O. Box 1945, Faribault, MN 55021-5873.

The letter must include:

- Your full name, current mailing address, and phone number;

- The racquet(s) that you purchased, the approximate date(s) on which you purchased the racquet(s), and where you purchased the racquet(s);

- The statement:  "I want to be excluded from the proposed Class Action Settlement in the Babolat lawsuit"; and

- Your signature.

The request for exclusion must be submitted in your own name and signed by you personally. No individual may request that other persons be excluded from the Settlement Class.

Do not send a letter requesting exclusion if you wish to be a Settlement Class Member or file a Claim Form for a payment under the settlement.  If you exclude yourself from the Settlement Class, you cannot object to the settlement as it no longer applies to you.  You will keep your right to pursue any claims you may have against Babolat or any related parties (as defined in the Settlement Agreement) at your own expense.  Class Counsel will not represent you as to any claims against Babolat or any related parties.

| | |
|---|---|
| **14.** | **If I do not exclude myself from the Settlement Class, can I sue Babolat for the same thing later?** |

No.  If you do not exclude yourself, you give up the right to sue Babolat and any related parties for the claims covered by this case.  If you have a current lawsuit or other proceeding against Babolat or any related parties, consult your lawyer in that lawsuit or proceeding immediately. You must exclude yourself from the Settlement Class to continue any lawsuit you may have regarding the claims covered by this case.

| | |
|---|---|
| **15.** | **If I exclude myself from the Settlement Class, can I receive money under this settlement?** |

No.  If you exclude yourself from the Settlement Class, do not send a Claim Form asking for money.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

8

## THE LAWYERS WHO REPRESENT YOU

| **16.** | **Do I have a lawyer in this case?** |
|---|---|

The Court has appointed the following attorneys to represent you and all other Settlement Class Members.  They are referred to as "Class Counsel."

| | |
|---|---|
| Christopher J. Hamner, Esq.<br>Amy T. Wootton, Esq.<br>**HAMNER LAW OFFICES, APC**<br>555 West 5th Street<br>Los Angeles, CA 90013<br>(213) 533-4160 | Christopher A. Olsen<br>**OLSEN LAW OFFICES**<br>1010 2nd Avenue #1835<br>San Diego, CA 92101<br>(619) 550-9352 |
| Chad B. Wootton<br>**WOOTTON LAW GROUP, LLP**<br>119 ½ N. Larchmont Blvd., Suite 2<br>Los Angeles, CA 90004<br>(323) 460-2100 | |

Neither Class Counsel, Babolat's lawyer, or the Class Action Settlement Administrator may advise you on the tax consequences of participating or not participating in the settlement.

| **17.** | **How will Class Counsel and the Class Representatives be paid?** |
|---|---|

Class Counsel has not been paid or received anything for their work in the Class Action or reimbursed for the costs they have incurred.  As part of the settlement, Class Counsel will ask the Court for an award of attorneys' fees and reimbursement for their costs in pursuing the Action. Babolat has agreed that it will not oppose a request by Class Counsel for a an award of attorneys' fee of 25% of the $4,500,000 settlement fund as well as Class Counsel's actual costs, which are estimated to be between $100,000 and $150,000.  Babolat has also agreed that it will not oppose an incentive award to the two Class Representatives of up to $5,000 each for their work on behalf of the Settlement Class.

Any amounts awarded as attorneys' fees and costs as well as incentive fees to the two Class Representatives will be deducted from the settlement fund before payments are made to Settlement Class Members.  Class Counsel's request for attorneys' fees and costs, as well as incentive awards to the Class Representatives will be filed with the Court no later than **[DATE]** and may be reviewed by any interested parties.  The request will also be posted on the settlement website, www.BabolatSettlement.com.

It is up to the Court to determine the reasonableness of Class Counsel's request for attorneys' fees and costs as well as the Class Representatives' incentive fees at the Final Approval Hearing.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

9

## OBJECTING TO THE PROPOSED SETTLEMENT

| **18.    If I do not like the proposed settlement, how can I tell the Court?** |
| --- |

If you are a Settlement Class Member and do not like the settlement and believe that the Court should not approve it, you may file an objection.  Filing an objection means that you send the Court a letter that explains what you do not like about the settlement.  You can only file an objection if you remain in the Settlement Class – in other words, you cannot exclude yourself from the settlement and also file an objection to it.

Your objection must include:
- Your complete name, current home address, telephone number, and email address (if you have one);
- The name, business address, telephone number and email address of your lawyer (if you are represented by a personal lawyer for the objection);
- A copy of the receipt(s) for the racquet(s) you purchased, or, if no receipt(s) are available, either:
  - o An identification of the serial number(s) for the racquet(s) (*see* Question 8) or
  - o A written statement that you are in the Settlement Class, including an identification of the model(s) of Babolat racquet(s) you purchased, the approximate date(s) on which you purchased the racquet(s), and where you purchased them under penalty of perjury pursuant to 28 U.S.C. § 1746(3); and
- The reason for your objection and any supporting papers or law you want the Court to consider.  A statement that "I object" is insufficient.

You must also mail your objection by U.S. mail postmarked no later than **[DATE]** to the following addresses:

| COURT | CLASS COUNSEL | BABOLAT'S LAWYER |
| --- | --- | --- |
| Office of the Clerk United States District Court Central District of California, Western Division Clerk's Office 312 N. Spring Street Los Angeles, CA 00012-4701 Attention:    Babolat   Class Action Settlement | Amy T. Wootton, Esq. **HAMNER LAW OFFICES, APC** 555 West 5th Street Los Angeles, CA 90013 | Brent E. Johnson **HOLLAND & HART LLP** 222 South Main Street Suite 2200 Salt Lake City, Utah 84101 |

You or your personal attorney must also attend the Final Approval Hearing on **[DATE]** and **[TIME]** at the address in Question 20 and be prepared to state your objection orally.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

10

| 19. | What's the difference between filing an objection and excluding myself from the settlement? |
| --- | --- |

Objecting to the proposed settlement is telling the Court that you do not like the proposed settlement or some part of it.  You can only object if you stay in the Settlement Class -- in other words, you do not exclude yourself.  Excluding yourself from the Settlement Class means that you do not want to participate in the settlement.  If you exclude yourself from the Settlement Class, you have no reason to object because the settlement does not apply to you.

## THE FINAL APPROVAL HEARING

| 20. | When and where will the Court decide whether it will approve the settlement? |
| --- | --- |

The Court will hold a "Final Approval Hearing" on **[DATE]** at **[TIME]** at the United States Courthouse for the Central District of California, located at 255 East Temple Street, Los Angeles, California 90012-3332 in Courtroom 740 on the 7th Floor before the Honorable Gary A. Feess (or at a different date and time that the Court may, without further notice, reschedule the hearing).  The purpose of the Final Approval Hearing is for the Court to decide:  (i) whether the proposed settlement is fair, adequate and proper; (ii) whether to award attorneys' fees and costs to Class Counsel and, if so, in what amount; (iii) whether to award the two Class Representatives incentive fees and, if so, in what amount; and (iv) whether to enter final judgment approving the Settlement Agreement and dismissing the lawsuits.  If there are objections, the Court will consider them.  After the hearing is over, the Court will make its final decisions on these issues.  There is no deadline for the Court's decisions.

| 21. | Do I have to come to the Final Approval Hearing? |
| --- | --- |

Only if you have filed a written objection to the settlement and want your objection considered by the Court.  In that case, you or your personal attorney must attend the Final Approval Hearing and be prepared to discuss your objection with the Court.  If you have not made an objection, you are not required to attend the Final Approval Hearing.  Class Counsel will attend the Final Approval Hearing and answer any questions or concerns that the Court may have.  You are welcome to attend the Final Approval Hearing, however, but, if you do not attend, it will not affect your eligibility for a payment if you have submitted a timely and valid Claim Form.

## IF YOU DO NOTHING

| 22. | What happens if I do not do anything? |
| --- | --- |

If you do nothing, you will get no money from this settlement.  And, unless you exclude yourself, you will not be able to start, continue, or participate in any other lawsuit or legal proceeding against Babolat and the related parties about the facts and legal issues in this Action, ever again.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

## MORE INFORMATION

| 23. | Can I get more information about the settlement? |
|-----|---------------------------------------------------|

Yes.   You can call 1-888-538-5790 toll free for pre-recorded messages, write to Babolat Settlement Administrator, c/o Rust Consulting, Inc., P.O. Box 1945, Faribault, MN 55021-5873, or visit the settlement website at www.BabolatSettlement.com, where you will find answers to frequently asked questions about the settlement, the Notices and Claim Form, the Settlement Agreement and other important court documents, and other information to help you determine whether you are a Settlement Class Member and whether you are eligible for a payment.

**Questions?  Visit www.BabolatSettlement.com or call 1-888-538-5790.**

12

# EXHIBIT F

1  Christopher J. Hamner, Esq.  (SBN 197117)
2  Amy T. Wootton, Esq.  (SBN 188856)
   **HAMNER LAW OFFICES, APC**
3  555 W. 5th Street, 31st Floor
   Los Angeles, California 90013
4  Telephone:  (213) 533-4160
5  Facsimile:  (213) 533-4167
   chamner@hamnerlaw.com
6  awootton@hamnerlaw.com

7
   [Additional attorneys listed on following page]
8
9  Attorneys for Plaintiffs PAYAM AHDOOT AND BRANDON CLARK, on behalf
   of themselves and all others similarly situated

10
                **UNITED STATES DISTRICT COURT**
11              **CENTRAL DISTRICT OF CALIFORNIA**

12

13 | PAYAM AHDOOT, and BRANDON | Case No.  CV13-02823 GAF (VBKx)
14 | CLARK, on behalf of themselves and | Consolidated with CV13-7898 GAF
      all others similarly situated, and the | (VBKx)
15    general public,

16                                              **[PROPOSED] SECOND**
                  Plaintiffs,                   **AMENDED CLASS ACTION**
17                                              **COMPLAINT FOR:**

18 v.
                                                **1. Violation of the Unfair**
19                                                 **Competition Law, Business and**
   Babolat VS North America, Inc., a             **Professional Code § 17200 et seq.;**
20 Colorado Corporation and DOES 1             **2. Violations of Consumer Legal**
   through 10, inclusive,                          **Remedies Act, Civil Code §1750 et**
21                                                 **seq.;**
22                Defendants.                   **3. Breach of Express Warrant;**
                                                **4. Violation of False Advertising,**
23                                                 **California Business and**
                                                   **Professions Code §§ 17500 et seq.;**
24
                                                **5. Fraud; and**
25                                              **6. Negligent Misrepresentation**

26
27                                              **DEMAND FOR JURY TRIAL**

CLASS ACTION SECOND AMENDED COMPLAINT                                    0

Christopher A. Olsen, Esq. (SBN 236928)
**OLSEN LAW OFFICES, APC**
1010 Second Avenue, Suite 1835
San Diego, California 92101
Telephone: (619) 550-9352
Facsimile: (619) 923-2747
caolsen@caolsenlawoffices.com

Chad B. Wootton, Esq. (SBN 151188)
**WOOTTON LAW GROUP, LLP**
119½ N. Larchmont Blvd., Suite 2
Los Angeles, California 90004
Telephone: (323) 460-2100
Facsimile: (323-460-2112
chadwootton@woottonlawgroup.com

Attorneys for Plaintiffs PAYAM AHDOOT AND BRANDON CLARK, on behalf of themselves and all others similarly situated

Plaintiffs, PAYAM AHDOOT and BRANDON CLARK ("Plaintiffs") bring this action on behalf of themselves and all others similarly situated against defendant Babolat VS North America, Inc., a Colorado Corporation ("Babolat" or "Defendants") and Does 1 through 10 and states:

## **JURISDICTION AND VENUE**

1.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2).  The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which some of the members of the class of plaintiffs are citizens of states different from Defendants.  Further, greater than two-thirds of the class members reside in states other than the state in which defendant is a citizen.

2.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that many of the acts and transactions giving rise to this action occurred in this district and because Defendants:

> (a)  are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of their products in this district;

> (b)  do substantial business in this district; and

> (c)  are subject to personal jurisdiction in this district.

Babolat is headquartered in Louisville, Colorado, and distributes and sells to many

different retailers in California, including but not limited to, Westwood Sporting Goods, located at 1065 Gayley Avenue, Westwood, CA 90024; Merchant Of Tennis, located at 1118 S. La Cienega Blvd, Los Angeles, CA 90035; Tennis Warehouse, located at 747 Buckley Road, San Luis Obispo, CA 93401; Dick's Sporting Goods, Big 5 and Sport Chalet.

Plaintiffs have filed an affidavit of proper venue pursuant to Section 1780(d) which states facts showing that the instant action has been commenced in a county which is a proper place for the trial of the action.

## SUMMARY OF THE CASE

3.  Babolat is a maker and worldwide seller of tennis racquets founded in 1875 in Lyon, France.  Babolat manufactures, markets, and promotes its tennis racquets, and various other sporting items.  In 2000, Babolat established its U.S. headquarters in Louisville, Colorado.  The company's biggest selling lines of racquets are the Pure Drive line, endorsed by Andy Roddick ("Roddick"), and the AeroPro line, endorsed by Rafael Nadal ("Nadal").

4.  Babolat markets and sells its racquets in the U.S. through authorized dealers throughout the country and over the internet.  In its advertisements, Babolat claims its sponsored players use these racquets on the professional tennis tour.  In many cases, this is not true.  The racquets which many of the Babolat-sponsored pros actually use are much different than and not available to the public.  Prior to

major professional tennis tournaments, Babolat paints and otherwise modifies these pros' customized racquets so that they appear to be identical to the ones sold in stores and on the internet.  Members of the public are led to believe they are buying the same racquets used by their favorite tennis pros, when in fact there are significant differences between the racquets used by the pros and those sold to the public.

5.     Babolat's long-term and pervasive advertising campaign (for more than four years) contains false and misleading statements designed to deceive consumers about the racquets it sells.  The long-term and pervasive advertising campaign also deceives the public without the use of any "statements" at all.  For example, consumers are led to believe, simply by viewing players sponsored by Babolat (and their racquets) in matches, and/or by viewing images of these players and their racquets in magazines, other publications, the internet and television, that the players are using the same racquets which are available for sale to the public, when in fact, they are not.  Babolat's advertising campaign is so pervasive, widespread and convincing that the news media (newspapers, magazines, television networks, and internet websites) perpetuate the myth that these sponsored players are actually using the racquets they appear to be using.  In fact, the racquets used by the players sponsored by Babolat are painted and otherwise altered to make them *appear* to be the same ones available for sale to the public,

but are significantly different than such racquets.

6.     By way of example, Nadal, one of the best tennis players of all time (who has thirteen "Grand Slam" tennis titles to his credit as of the date this pleading is filed, tied for third all time), endorses the Babolat AeroPro line of tennis racquets.  Nadal has endorsed the Babolat AeroPro tennis racquets for at least the last four years.

7.     Babolat has represented over the past four years on its website, in its marketing materials to its retailers and in print advertisements that Nadal uses the AeroPro Drive on the professional tour.  Babolat retailers sold and currently sell the AeroPro Drive in the U.S for approximately $199.  The AeroPro line of racquets is colored with a distinctive yellow and black striping and incorporates the "cortex system."  This "cortex system" was introduced by Babolat in or around 2007.  The cortex system is claimed by Babolat to reduce vibrations and improve the player's comfort and feel of contact with the ball.

8.     Babolat has consistently claimed, and otherwise deceived the public into believing, over at least the last four years, that Nadal's racquet  uses the "cortex system."  However, when Babolat introduced the "cortex system" and began claiming that this was the new technology being used by Nadal, Nadal elected to keep using an older model of Babolat racquet which did not, in fact, use the "cortex system."  Consumers were led to believe that if they wanted to play

with the same racquet used by Nadal, they should buy the new "cortex system" racquet used by Nadal, when in fact, Nadal himself did not use that racquet (and does not, to this day, use a racquet with the cortex system).

9.    Upon information and belief, Nadal's racquet was and is painted or otherwise customized to appear as though his racquet incorporates the cortex system and is otherwise the same racquet made available to the public.  However, the racquet Nadal has used on the pro tour for many years is instead a customized racquet made with different material(s), with different stiffness, different balance points, and no cortex system.  Nadal's actual racquet is not available for sale to the public.  Nadal's actual racquet has not been available for sale to the public for at least the last four years.  Babolat has made and currently makes many of these custom racquets for Nadal each season, which are made to appear like the newest Babolot AeroPro Drive racquet available to the public.

10.    Similar patterns of deception are engaged in by Babolat with respect to the models of racquets purportedly used by other professional players Babolat sponsors, including, but not limited to, Roddick.

11.    Beginning in 2009, Babolat began advertising on its website, the internet, magazines and on television that certain of its racquets contained "GT Technology," which Babolat represented to be a graphite/tungsten hybrid material that combined a carbon fiber sheet with tungsten filaments.  Tungsten fibers were

represented by Babolat to be throughout the entire racquet with the percentage of tungsten optimized at key sections of the frame to stabilize the racquet for optimal control and feel.  Babolat further represented that the tungsten component in the racquets increased stability and provided 10% more energy recovery for added power.

12.    Babolat labels its racquets with GT Technology with a sticker in the racquets' heads that reads, "GT TECHNOLOGY Graphite/Tungsten."  Moreover the facecard attached to the racquets states, "GT INNOVATIVE TECHNOLOGY COMBINES CROSSED LAYERS OF GRAPHITE AND THIN THREADS OF TUNGSTEN INTEGRATED INTO THE RACQUET'S LAYUP" or words to like effect.

13.    In reality, Babolat never included tungsten in any of its racquets. Rather, GT Technology was a change in the orientation of the individual layers of the carbon fiber sheets in the racquets, known as the "layup," but the GT Technology layup change did not include the addition of tungsten filaments.

14.    Babolat's racquets advertised and labeled as containing tungsten, but which do not contain tungsten, are:  Pure Drive, Pure Drive +, Pure Drive 107, Pure Drive Roddick, Pure Drive + Roddick, Pure Drive Roddick Junior, Pure Drive Lite, Pure Drive French Open, Pure Drive Lite French Open, Pure Drive 260 French Open, Pure Drive Junior 26 French Open, Pure Drive Lite Pink, Pure Drive

Wimbledon, Pure Drive Junior Wimbledon, Pure Drive Play, AeroPro Drive, AeroPro Drive +, AeroPro Drive Junior, AeroPro Team, AeroPro Lite, AeroPro Drive French Open, AeroPro Drive Junior French Open, AeroPro Lite French Open, AeroPro Team Wimbledon, Aero Storm, Aero Storm Tour, Pure Storm, Pure Storm Limited, Pure Storm Limited +, Pure Storm Tour, Pure Storm Tour +, Pure Storm Team, Pure Control, Pure Control Tour, Pure Control Tour +, Pure Control 95 and Pure Control 95 +.

15.     Hence, Plaintiffs, on behalf of themselves and the proposed class, allege that for at least the last four (4) years, Babolat has misrepresented to consumers that the Babolat racquets used on the professional tennis tour by its sponsored players are the same as the racquets that are made available to the public and that Babolat has misrepresented to consumers and mislabeled  the racquets referenced in paragraph 14 above as containing tungsten.  In reality, Babolat deceptively alters the actual racquets used by its pros so that they look like the racquets Babolat sells to U.S. customers and, contrary to Babolat's advertisements and labeling, none of its racquets contain tungsten.  Plaintiffs, on behalf of themselves and the proposed class, seek damages and restitution for false advertising, unfair business practices, fraud, breach of warranty and negligent misrepresentation, as plead herein.

# ALLEGATIONS

## A.    Babolat-Sponsored Players

16.    On its website and through its advertising and marketing materials, Babolat has consistently claimed over at least the last four years that certain professional tennis players, including Nadal and Roddick, use the Babolat racquets which are sold to the public, on the professional tour.  This is not true.  Many Babolat-sponsored players do not use the Babolat racquets which they endorse and supposedly play with on tour.  These players in fact used and continue to use customized racquets, made with different materials, different stiffness and different balance points which Babolat paints, modifies, customizes and otherwise alters to look like the Babolat racquets actually sold to consumers in the U.S.  The sponsored player is then seen in major tennis tournaments like Wimbledon and the U.S. Open using the racquet which Babolat represents to its customers is the same racquet that (1) the particular pro uses on tour, and (2) is available for purchase by the general public.  Further, as Babolat's sponsored players generally do not keep switching racquets every two or three years, whereas it is in Babolat's interest to make the public *believe* its sponsored players are using "new and improved" or "different" racquets (to encourage consumers to buy new models and increase sales) every two or three years, sometimes with "new technology," there is a monumental gap between what is represented to the public and reality.

CLASS ACTION SECOND AMENDED COMPLAINT                                                      9

17.    Plaintiff alleges, on information and belief, and after significant investigation, that many of these professional tennis players never used the Babolat racquet they sponsor and *appear* to be using in professional tournaments.  Instead, on information and belief, many of these players regularly, if not always, use a different racquet, which is customized, painted, modified and otherwise disguised to look like the particular model of Babolat racquet that the player sponsors and purportedly uses.

**B.    GT Technology/Tungsten**

18.    Beginning in 2009, on its website and through its advertising and marketing materials, as well as by labeling on its racquets and the facecards attached thereto, Babolat has consistently represented that its racquets identified in Paragraph 14 above contain tungsten.  This is not true.  Babolat's GT Technology Racquets have a different and stiffer layup than previous Babolat racquets but contain no tungsten.

**C.    Babolat Advertisements and Statements**

1.    Babolat Sponsored Players

a.    *Advertising*

19.    Babolat markets and advertises its racquets in all media, including the internet at babolat.com and has done so for at least the last four years.  This website has, and at all relevant times had, a U.S version the customer can select,

which directs customers to Babolat "Dealers" throughout the U.S.  The website

also has, and at all relevant times had a section where it promotes a roster of the

professional tennis players who endorse Babolat racquets.   Viewers of the website,

over the past four years, can choose to view a player profile page for each Babolat-

sponsored player.  The player profile for each such player lists the racquet that

player purportedly uses with a picture of the particular racquet at the bottom of the

page.

20.    For example, on the babolat.com player profile page for Nadal, the

AeroPro Drive  and/or AeroPro Drive GT racquet has been identified as his racquet

over the last four years.  The bottom of Nadal's profile page has displayed, over

the past four years, a picture of a black and yellow striped AeroPro Drive racquet

which looks like the racquet used by Nadal on the tour.  At all times relevant

hereto, clicking on this picture has opened a page which markets the Babolat

AeroPro Drive line of racquets.  Babolat at all relevant times falsely advertised, on

its website, that Nadal used the then-current version of the AeroPro Drive which

was available for sale to the public.  The website  currently  reads as follows:

**"Nadal's racquet of choice.**

 The Aeropro Drive 2013 is a great fit for a very wide array of players. This

new version will be equipped with the new Cortex Active Technology at the

top of the handle to provide an even better solid feel thanks to Cortex

material and a new handle construction.  The Aero shaft is designed for faster swing speeds. The result is more power and spin."  (Emphasis in bold added.)

Similar representations on babolat.com were made with respect to Andy Roddick and his use of the Pure Drive Roddick racquet, including, "ANDY RODDICK'S OFFICIAL RACQUET."

21.     Plaintiffs, and the others Plaintiffs seek to represent, viewed, among other Babolat advertisements, the Babolat website prior to purchasing their Babolat racquets, and relied upon Babolat's representations therein in deciding to purchase their racquets.  At the time Plaintiffs and the other putative class members viewed Babolat's website and other advertisements, similar representations were made regarding Babolat-sponsored players' purported use of the then-current Babolat racquets.

22.     Plaintiffs were also led to believe that the Babolat racquets they purchased were the ones used by the Babolat-sponsored professionals based on:

- •     Babolat sponsored marketing materials shown on authorized online retailer http://www.tennis-warehouse.com;

- •     Tennis Channel television commercials showing Babolat-sponsored players holding and playing with what looked to be the then-current version of the racquets they endorse;

CLASS ACTION SECOND AMENDED COMPLAINT                                                                12

- • Plaintiffs' viewing of live tennis matches, and highlights from tennis matches, on the Tennis Channel, ESPN, and other networks, in which Babolat-sponsored players appeared to be using the same racquet made available to the public;

- • Advertisements for Babolat racquets in Tennis Magazine, in which Babolat-sponsored players were shown holding what appeared to be the then current version of the Babolat racquet they endorse.

23.  Babolat now and at all relevant times also markets, advertises and sells its tennis racquets in the U.S through Babolat authorized dealers, such as Westwood Sporting Goods, Tennis Warehouse, Tennis Express and Tennis Experts.  Each of these Babolat dealers has a significant web presence and sells thousands of Babolat racquets each year over the internet to U.S. consumers.

24.  Tennis Warehouse states, and all times relevant hereto has stated, on its website that the Babolat AeroPro Drive (or the then-current model being marketed by Babolat as Nadal's racquet) is "Rafael Nadal's racquet of choice." Tennis Warehouse states, and at all relevant times has stated, on its website the Babolat Pure Drive Roddick GT Plus (or the then-current model being marketed by Babolat as Roddick's racquet) is "Andy Roddick's signature racquet."  Babolat knows that the racquets marketed and sold through these dealers have little in common with the racquets players like Nadal and Roddick actually use in pro

CLASS ACTION SECOND AMENDED COMPLAINT                                    13

tournaments.  The principal similarity between the racquets used by the sponsored players and those sold to the public is their appearance, because the customized racquets have deceptively been made to look like the racquets sold to the public.

25.    Additionally, the advertising campaign for, at least the past four years, contained misrepresentations regarding the sponsored players' racquets and how the players purportedly use the "newest" or "improved" version of the racquet each time a "technological advance" or other change is made, when in fact the players rarely, if ever, change the version of the racquet they use.  One of the internet ads in question, which is similar to those in the prior years (updated to reflect the "newest" version) and supports the existence of Babolat's long-term false and misleading advertising campaign, currently states:

> **Babolat AeroPro Drive 2013**
>
> *New* **Rafael Nadal's racquet of choice**, the AeroPro Drive offers a truly exceptional blend of maneuverability, stability and all-around playability. Strung weight: 11.3 oz. Headsize: 100 sq. in. Standard length. This racquet is available for pre-sale. Due in stock 12/12**.**
>
> (Emphasis included.)

Other ads include the following:

> **"The already impressive Pure Drive Roddick GT gets updated with Cortex Active Technology…"** (Tennisexpress.com)

and

**"The all-new Babolat Pure Drive Roddick Plus has been updated with Active Cortex technology.  A new construction featuring a Cortex Damping System interface highlights this year's newest Babolate models..."** (Tennisexpress.com).

26.     Tennis Express also claimed and continues to claim on its website, that the Babolat AeroPro Drive (GT) is "Rafael Nadal's racquet of choice."

27.     Tennis Experts carried on Babolat's false and misleading advertising campaign for at least the last 4 years (updated to reflect the "newest" version). Next to a yellow and black striped (2013) AeroPro Drive Babolat racquet, Tennis Experts continues to falsely represent as follows:

> **Babolat AeroPro Drive Plus GT 2013**
> The **Babolat AeroPro Drive Plus GT** is the extended version of **Rafael Nadal's racquet of choice**. This is an exceptionally aerodynamic racquet, allowing for tremendous swing speed, awesome power and great access to spin.   (Emphasis included.)

The advertisements were virtually the same in substance but updated to reflect the "newest" version for at least the last four years, and reflect the existence of Babolat's long-term, ongoing false and misleading advertising campaign. Representations regarding Roddick's use of the Pure Drive Roddick racquet were similarly featured.

28.     Tennis Warehouse's website provided and continues to provide a

reviews page, which is similar to those over the last 4 years and demonstrates the existence of Babolat's long-term false and misleading advertising campaign.  The advertisements, which generally change to include recent accomplishments and the most current version of the racquet and are accessed by clicking on the image of Nadal stated:

> The latest version of the AeroPro Drive, our most popular racquet, swings a little faster than its predecessor. This makes it even more dangerous in the hands of aggressive baseliners. The fast feel conjures up images of Rafael Nadal who has played with this racquet through multiple generations….

29.    Plaintiffs allege on information and belief, and after substantial pre-filing investigation, that these and other Babolat Dealers and retailers are simply repeating marketing materials these racquet sellers received from Babolat, which are false and misleading.

30.    Plaintiffs relied on Babolat's false advertising campaign as detailed above.  Specifically, Plaintiffs relied on (a) Babolat-sponsored marketing materials shown on Babolat's website and other authorized online retailer sites, including but not limited to http://www.tennis-warehouse.com; (b) Babolat's television commercials on the Tennis Channel showing Babolat-sponsored players holding and playing with what appeared to be the then current versions of Babolat racquets;

(c) Tennis Channel, ESPN and other networks showing live matches and/or highlights with Babolat-sponsored players who were seen playing with what appeared to be the identical racquets available to the public for sale, (d) Babolat's advertisements in Tennis Magazine showing Babolat-sponsored players holding and playing with the racquets which were available for sale to the public, (e) the advertisements and images contained in Tennis Magazine, including but not limited to the February 2010 issue; and (f) images from a variety of other sources showing Babolat-sponsored players with what appeared to be the racquets sold to consumers, all of which formed part of Babolat's pervasive and all-encompassing advertising campaign pertaining to Babolat racquets.  The representations, images and/or warranties contained and displayed within the advertisements, television broadcasts, magazine pictures and other identified sources led (a) Plaintiff Payam Ahdoot to believe he was purchasing the same AeroPro racquet used by Nadal on or about January 15, 2011, when he purchased the racquet (and strings) from Westwood Sporting Goods (for $204.98 plus tax of $17.94) for a total of $222.92, (b) Plaintiff Brandon Clark to believe he was purchasing the same Pure Drive Roddick racquet used by Andy Roddick when he purchased two Pure Drive Roddick racquets (as a package with other items) directly from Babolat in April of 2012 for between $250 and $300, and (c) Plaintiff Brandon Clark to believe he was purchasing the same AeroPro racquet used by Nadal when he purchased two

AeroPro racquets directly from Babolat in May 2010 for $254.

          b.     *Babolat Alters Its Players' Actual Racquets to Look Like the Ones It Sells To the Public.*

31.     Plaintiffs allege on information and belief, and after significant pre-filing investigation, that the aforementioned false advertising is part of a policy and practice by Babolat.  Nadal does not use and has not used for at least the last 4 years the current version of the AeroPro Drive racquet and Roddick did not use for at least the last 4 years the current version of the Pure Drive Roddick .  They instead used and Nadal continues to use customized racquets produced by Babolat which are and were customized, altered, modified and/or painted over before televised matches to look like the latest versions of the Babolat racquets.

32.     Plaintiffs allege on information and belief that Babolat does this knowingly, or negligently at a minimum, and has been doing this for at least the last 4 years, to deceive consumers into thinking they are purchasing the same tennis racquets Nadal and others use on the professional tour.  Babolat also benefits by leading the public to believe that Babolat-sponsored players change their racquets periodically, by using supposedly "new and improved" versions of Babolat racquets with new technology; this is intended to coerce consumers into thinking that they, too, would benefit by purchasing the latest version of the

racquet supposedly being used by the Babolat-sponsored players.  In fact, the Babolat-sponsored players do not change their racquets with the frequency Babolat leads the public to believe.

33.    Plaintiffs allege that they and the proposed class have been damaged by the aforementioned deceptive marketing practices and long-term advertising campaign by Babolat by purchasing the "new" racquets believed to be used by Babolat-sponsored players.

2.    <u>GT Technology/Tungsten</u>

34.    Commencing in 2009, Babolat began advertising on its website, the internet, magazines and on television, through words and images, that its racquets identified in Paragraph 14 above contain a graphite/tungsten hybrid material that combined a carbon fiber sheet with tungsten filaments.  The tungsten filaments were represented by Babolat to be throughout the entire racquet with the percentage of tungsten optimized at key sections of the frame to stabilize the racquet for optimal control and feel.  Babolat further represented that the tungsten component in the GT Technology Racquets increased stability and provided 10% more energy recovery for added power.

35.    Babolat labels these racquets with a sticker in the racquets' heads that read, "GT TECHNOLOGY Graphite/Tungsten."  Moreover the facecards attached to the racquets state, "GT INNOVATIVE TECHNOLOGY COMBINES

CROSSED LAYERS OF GRAPHITE AND THIN THREADS OF TUNGSTEN INTEGRATED INTO THE RACQUET'S LAYUP" or words to like effect.

36.     On information and belief, Babolat authorized dealers, based upon information obtained from Babolat and/or following advertising by Babolat, made similar representations and continue to make representations regarding the inclusion of tungsten in Babolat's racquets referenced in Paragraph 14 above.

37.     For example, Tennis Express's website stated that "Babolat's GT (Graphite Tungsten) is a hybrid material, combining a braided carbon fiber cloth with tungsten filaments throughout the entire racquet. The tungsten percentage is optimized at key sections of the frame to stabilize the racquet for optimal control and feel. The increased stability also provides a 10% more energy recovery for added power."

38.     Tennis Warehouse's website stated that GT Technology consists of "Hybrid material, combing braided carbon fibers and tungsten filaments, throughout the entire racquet.  Improves racquet performance, based on the concentration of Tungsten fibers at various strategic parts of the frame.  Main Benefit: Control and feel. Value-added aspects of GT technology: A greater concentration of Tungsten in the core of the racquet. 10% additional energy recovery for even more power."

39.     In reality, Babolat never included tungsten in any of its racquets.

Rather, GT Technology was a change in the orientation of the individual layers of the carbon fiber sheets in the racquets, known as the "layup," but the GT Technology layup change did not include the addition of tungsten.

### D. Reliance by and Harm to the Class.

40.     Plaintiffs allege on information and belief that Babolat has engaged in this unfair advertising conduct and long-term false and misleading advertising campaign for at least the last 4 years.

41.     U.S. consumers who purchased the racquets in question have reasonably relied on the representations and misleading images with which consumers are bombarded.  These misleading statements and images have led the consumers to be believe that the Babolat-sponsored players, such as Nadal, are in fact using the models that Babolat leads the public to believe the players actually use on tour and that the racquets they purchased identified in Paragraph 14 above contain tungsten.

### PARTIES

42.     At all times relevant to this matter, plaintiffs Payam Ahdoot and Brandon Clark resided in this district.  During the class period, Plaintiffs were exposed to and saw the advertisements and images described above.  As a result of Babolat's deception of the public, Plaintiffs suffered injury in fact and lost money by purchasing racquets they otherwise would not have purchased.

43.     Babolat is a Colorado corporation headquartered in Louisville, Colorado and does business in the State of California.  Babolat has dealers that it distributes to in Northern and Southern California, including but not limited to, Westwood Sporting Goods, located at 1065 Gayley Avenue, Westwood, CA 90024; Merchant Of Tennis, located at 1118 S. La Cienega Blvd, Los Angeles, CA 90035; and Tennis Warehouse, located at 747 Buckley Road, San Luis Obispo, CA 93401.  From its headquarters and throughout California, Babolat perpetuated its false and deceptive advertising campaign at issue, and promotes, markets, and distributes its racquets to hundreds of thousands of consumers throughout the United States.

44.     The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to Plaintiffs, who therefore sue Defendants by such fictitious names.  Plaintiffs are informed and believe, and based thereon allege, that each of the defendants designated herein as a DOE is legally responsible in some manner for the unlawful acts referred to herein.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the defendants designated hereinafter as DOES when such identities become known.

45.     At all times mentioned herein, each of said Defendants participated in the doing of the acts alleged to have been done by the named Defendants; and

furthermore, the Defendants, and each of them, were the agents, servants, and employees of each and every one of the other Defendants, as well as the agents of all Defendants, and at all times mentioned herein, were acting within the course and scope of said agency and employment.

46.    At all times mentioned herein, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of said joint venture, partnership and common enterprise.

47.    At all times herein mentioned, the acts and omissions of various Defendants, and each of them, occurred with and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries and damages alleged herein.

48.    At all times mentioned herein, Defendants, and each of them, approved of, condoned and/or otherwise ratified each and every one of the acts or omissions complained of herein.  At all times herein mentioned, Defendants, and each of them, aided and abetted the acts and omissions of each and every one of the other Defendants, thereby proximately causing the damages as alleged.

## CLASS DEFINITION AND ALLEGATIONS

49.    Plaintiffs bring this action on behalf of themselves and members of a Class of similarly situated consumers defined as:  All persons or entities in the

United States who purchased, from January 1, 2009 to the present, a Babolat tennis racquet purportedly (but not actually) used by a Babolat-sponsored tennis professional and/or advertised and labeled as containing tungsten.

50. ***Numerosity.*** The members of the Class are so numerous that their individual joinder is impracticable.  Plaintiffs are informed and believe, and on that basis allege, that the proposed Class contains thousands of members.

51. ***Existence and Predominance of Common Questions of Law and Fact.***  Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting only individual Class members. These common legal and factual questions include, but are not limited to, the following:

(a)  whether Defendants had adequate substantiation for their claims prior to making them;

(b)  whether the advertising and labeling claims made by Defendants are true, or are false and/or misleading, or reasonably likely to deceive;

(c)  whether Defendants' alleged conduct violates public policy;

(d)  whether the alleged conduct constitutes violations of the laws asserted;

(e)  whether Defendants engaged in false or misleading advertising;

(f)  whether Plaintiffs and Class Members have sustained monetary loss and the proper measure of that loss;

(g)     whether Plaintiffs and Class Members are entitled to an award of punitive damages;

(h)     whether Plaintiffs and Class Members are entitled to declaratory and injunctive relief; and

(i)     whether Plaintiffs and Class Members are entitled to restitution.

52.     ***Typicality.***  Plaintiffs' claims are typical of the claims of the members of the Class in that the Defendants were unjustly enriched as a result of Plaintiffs' and the Class' respective purchases of the tennis racquets.

53.     ***Adequacy of Representation.***  Plaintiffs will fairly and adequately protect the interests of the members of the Class.  Plaintiffs have retained counsel experienced and highly successful in complex consumer class action litigation.  Plaintiffs have no adverse or antagonistic interests to those of the Class.

54.     ***Superiority.***  A class action is superior to all other available means for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against the defendant.  It would thus be virtually impossible for the Class, on an individual basis, to obtain effective redress for the wrongs done to them.  Furthermore, even if Class Members could afford such individualized litigation, the court system could not.  Individualized litigation would create the

danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

55.     Unless a Class is certified, Defendants will retain monies received as a result of its conduct that was taken from Plaintiffs and Class members. Unless a Class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled.

## FIRST CLAIM FOR RELIEF
### Violation of Business & Professions Code Section 17200, *et seq.*

56.     Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1 through 55 above as though fully set forth herein.

57.     Plaintiffs bring this claim individually and on behalf of the Class.

58.     The Unfair Competition Law, Business & Professions Code §17200, et seq. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising.  In the course of conducting

business, Defendants committed unlawful business practices by, *inter alia*, making the representations (which also constitutes advertising within the meaning of §17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code §§17200, et seq., 17500, et seq., California Health & Safety Code §110390 et seq., 21 U.S.C. §301, et seq., and the common law.

59.    As alleged herein, Defendants' misrepresentations, mislabeling, and omissions of material facts, constitute "unfair" business acts and practices within the meaning of  Business & Professions Code §§17200, et seq., in that Defendants' conduct was injurious to consumers, offended public policy, and were unethical and unscrupulous.

60.    Plaintiffs also assert a violation of public policy by Defendants' withholding of material facts from consumers.  Defendants' violation of California's consumer protection and unfair competition laws in California resulted in harm to consumers including Plaintiffs and the Class.

61.     Plaintiffs Payam Ahdoot and Brandon Clark have suffered injury in fact and lost money as a result of Defendants' conduct because they purchased Defendant's AeroPro tennis racquets and Pure Drive Roddick racquets, respectively,  believing them to be the same racquets used by Nadal and Roddick and believing them to contain tungsten in reliance upon Defendants' false

advertising claims and labeling, in the form of images and statements, contained in magazines and other printed materials, on television, on the internet and on the racquets themselves.  The racquets that Plaintiffs purchased are not the same racquet Nadal and Roddick played with nor do they contain tungsten despite Defendants' claims.

62.     Plaintiffs and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.

63.     The actions of Defendants constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendants engage in false advertising, misrepresent and omit material facts regarding the tennis racquets offered for sale to the public, and thereby offend an established public policy, and engage in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

64.     As stated in this complaint, Plaintiffs allege violations of consumer protection, unfair competition and truth in advertising laws, resulting in harm to consumers.  Defendants' acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  This conduct violates the unfair prong of Business & Professions Code § 17200, et seq.

65.     There were reasonably available alternatives to further Defendants'

CLASS ACTION SECOND AMENDED COMPLAINT                                                    28

legitimate business interests, other than the unlawful and fraudulent conduct described herein.

66.    Business & Professions Code §17200, et seq., also prohibits any "fraudulent business act or practice" which is alleged herein.

67.    Defendants' actions, claims, nondisclosures, and misleading statements, as alleged in this Complaint, were false, misleading and likely to deceive the consuming public within the meaning of Business & Professions Code §17200, et seq.

68.    Plaintiffs and other members of the Class have in fact been deceived as a result of their reliance on Defendants' representations and omissions.  This reliance has caused harm to Plaintiffs and other members of the Class. Plaintiffs and other Class members have suffered injury in fact and lost money as a result of these unlawful, unfair, and fraudulent practices.

69.    As a result of its deception, Defendants have been able to reap unjust revenue and profit.

70.    Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate.

71.    Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, seek restitution and disgorgement of all money obtained from Plaintiffs and the members of the Class collected as a result of unfair competition,

an injunction prohibiting Defendants from continuing such practices, corrective advertising and all other relief this Court deems appropriate, consistent with Business & Professions Code §17203.

## SECOND CLAIM FOR RELIEF
### Violations of the Consumers Legal Remedies Act - Civil Code §1750 *et* seq.

72. Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1 through 71 above as though fully set forth herein.

73. Plaintiffs bring this claim individually and on behalf of the Class.

74. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §1750, *et seq.* (the "Act"). Plaintiffs and members of the Class are consumers as defined by California Civil Code §1761(d). Defendants' tennis racquets described herein are goods within the meaning of California Civil Code §1761(a).

75. Defendants, Babolat, and each of them, violated and continue to violate the Act by engaging in the following practices proscribed by California Civil Code §1770(a) in transactions with Plaintiffs and the Class which were intended to result in, and did result in, the sale of the above-referenced tennis racquets:

(a) The following unfair methods of competition and unfair or

deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful:

(1) Passing off goods or services as those of another.

\*   \*   \*

(3) Misrepresenting the affiliation, connection, or association with, or certification by, another.

\*   \*   \*

(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

\*   \*   \*

(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

\*   \*   \*

(9) Advertising goods or services with intent not to sell them as advertised.

76.     Defendants, and each of them, violated the Act by representing and

advertising that their racquets offered for sale to the public, were the same as the racquets used in professional competition by, *inter alia*, Nadal and Roddick and that those racquets identified in Paragraph 14 above contained tungsten when Defendants knew, or should have known, that the representations, labeling and advertisements were unsubstantiated, untrue, false and misleading.  Defendants, and each of them, concealed the truth about the racquets sold to the public.  By doing so, Defendants, and each of them, encouraged consumers to purchase the racquets because they believed they were the same as those used by the Babolat-sponsored tennis pros and because they contained tungsten .

77.     Pursuant to California Civil Code §1782(d), Plaintiffs and the Class seek a Court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

78.     Pursuant to section 1782 of the Act,  Plaintiffs notified Defendant in writing of the particular violations of the Consumer Legal Remedies Action ("CLRA") set forth in §1770 related to the representations that Babolat-sponsored players used the same racquets available to the public and demanded that Defendant rectify the problems associated with those representations and give notice to all affected consumers of its intent to so act.  The CLRA letters were mailed as directed by Civil Code §1782.

79.     Defendants failed to rectify or agree to rectify the problems

associated with the actions detailed above related to the endorsement of Babolat-sponsored players and give notice to all affected consumers within 30 days of the date of written notice pursuant to §1782 of the Act.  Therefore, Plaintiffs further seek claims for actual, punitive and statutory damages, as appropriate.

80.     Defendants' conduct is malicious, fraudulent, willful and wanton, and Defendants intentionally misled and withheld material information from consumers in order to increase the sale of the racquets.  Plaintiffs and the class members would not have purchased the racquets had it not been for Defendants' misrepresentations and concealment of material misrepresentations and omissions.

81.     Concurrent with the filing of the complaints in this action, Plaintiffs filed an Affidavit of Venue in accordance with Civil Code section 1780(d).

### THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

82.     Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1 through 81 above as though fully set forth herein.

83.      Plaintiffs bring this claim individually and on behalf of the Class.

84.     Plaintiffs, and each member of the Class, formed a contract with Defendants at the time Plaintiffs and the other members of the Class purchased Defendants' tennis racquets based on the representations and warranties made by

Defendants.  These representation and warranties included representations that Babolat-sponsored professionals, including but not limited to Nadal and Roddick, used the same tennis racquet(s) offered for sale to the public, when in fact such racquets were not available to the public and that the racquets identified in Paragraph 14 above contained tungsten when they did not.  The terms of that contract included the promises and affirmations of fact made by Babolat in their advertisements, labeling and through their long-term marketing campaign, as described above.  This advertising and labeling included express warranties, which became part of the basis of the bargain, and was part of a standardized contract between Plaintiffs and the members of the Class, on the one hand, and Defendants on the other.  Babolat, through its long-term marketing and advertising campaign represented that those who purchased the Babolat endorsed racquets would be purchasing the *same* racquet – *same* model, *same* materials, *same* stiffness, *same* balance points and other characteristics- as used by Babolat sponsored players, including Roddick and Nadal and that the racquets identified in Paragraph 14 above contained tungsten.  In reliance on these claims and images, Plaintiffs purchased their racquets as set forth above.

85.    All conditions precedent to Defendants' liability under this contract have been performed by Plaintiffs and the Class.

86.    Defendants, and each of them, breached the terms of their contracts,

including the express warranties with Plaintiff and the Class by not providing its consumers with the tennis racquets they believed they were purchasing, as described above.

87.    As a result of Defendants' breach, Plaintiffs and the Class have been damaged in the amount of the purchase price of the tennis racquets they purchased, and/or the difference between the value of the racquet as warranted and the value of the racquet purchased.

## FOURTH CLAIM FOR RELIEF

### VIOLATION OF FALSE ADVERTISING LAW
### (California Business & Professions Code §§ 17500 *et seq.*)

88.    Plaintiffs incorporate by reference and re-allege each and every allegation contained in paragraphs 1 through 87 above as though fully set forth herein.

89.    California *Business and Professions* Code section 17500 prohibits "unfair, deceptive, untrue or misleading advertising."

90.    Defendant violated California Business and Professions Code section 17500 by, *inter alia*, misleadingly advertising that Babolat-sponsored tennis professionals, including but not limited to Nadal and Roddick, used the tennis racquet(s) offered for sale to the public and that the racquets identified in Paragraph 14 above contain tungsten, when, in fact, the Babolat-sponsored tennis

players' racquets were not available to the public and the racquets identified in Paragraph 14 above do not contain tungsten; and concealing material information about the tennis racquets available for sale to the public, specifically that such racquets are not the same as those used by the Babolat-sponsored tennis professionals, that the tennis professionals use customized racquets that are not available for sale by Babolat to the public, that Babolat encourages, allows, promotes, facilitates and/or actually performs the disguising of the tennis professionals' racquets to appear as though they are the same as those available to consumers for purchase, and that the racquets identified in Paragraph 14 above do not contain tungsten.

91.     Defendant's deceptive practices were specifically designed to induce Plaintiffs and members of the Class to purchase the Babolat racquets over those of its competitors.  Defendant's deceptive practices were carried out in a long-term advertising campaign in advertisements and promotions in print, on television, on Defendant's website, in other broad-based media, and in its labeling of the racquets in order to induce Plaintiffs and members of the Class to purchase Babolat tennis racquets.

92.     Plaintiffs and members of the Class would not have purchased the tennis racquets had it not been for Defendant's misrepresentations and concealment of material facts.  Plaintiffs and members of the Class were denied the

benefit of the bargain when they decided to purchase these Babolat tennis racquets over other racquets, which are often less expensive.  Had Plaintiffs and members of the Class been aware of Babolat's false and misleading advertising tactics, they would not have purchased those tennis racquets, would have paid less than what they paid for the racquets, or would not have purchased any Babolat racquets at all.

93.     The content of the advertisements and labeling, as alleged herein, were of a nature likely to deceive a reasonable consumer.  Furthermore, because Babolat engaged in a long-term advertising campaign, spanning over many years, to which the consumers, including Plaintiffs, were exposed, Plaintiffs need not present each and every advertisement upon which they relied.  *In re Tobacco II Cases* (2009) 46 Cal.4[th] 298, 328 ("where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.")

94.     Defendant knew, or in the exercise of reasonable care, should have known, that the representations were untrue or misleading and likely to deceive reasonable consumers.

95.     Defendant's misrepresentations and omissions alleged herein are objectively material to the reasonable consumer, and reliance upon such misrepresentations and omissions also established causation between Defendant's

conduct and Plaintiffs' and the members of the Class' injuries.

96.     Unless restrained by this Court, Defendant will continue to engage in misleading advertising, as alleged above, in violation of California Business and Professions Code section 17500.

97.     As a result of the foregoing, Plaintiffs and members of the Class have been injured in fact and lost money or property, and they are entitled to restitution and injunctive relief.

## FIFTH CLAIM FOR RELIEF

## FRAUD

98.     Plaintiffs incorporate by reference and reallege each and every allegation contained in paragraphs 1 through 97 above as though fully set forth herein.

99.     Plaintiffs bring this cause of action on behalf of themselves and the members of the Class.

100.    Defendant represented and advertised its tennis racquets, as discussed above, with false and materially misleading claims, including the claim that the Babolat-sponsored tennis players, such as Nadal and Roddick, used the same racquets available for sale to the public and that the racquets identified in Paragraph 14 above contained tungsten.  Babolat engaged in a long-term advertising campaign, spanning over many years, and no less than 4 years, to

which the consumers, including Plaintiffs, were exposed.  California law holds that a plaintiff need not present each and every advertisement upon which he relied when, as here, the defendant engages in a long-term advertising campaign.  *In re Tobacco II Cases* (2009) 46 Cal.4[th] 298, 328 ("where, as here, a plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements.")  Notwithstanding this fact, Plaintiffs and the Class Members relied on, among other things, (a) Babolat's website, (b) Babolat-sponsored marketing materials shown on authorized online retailer cites, including but not limited to http://www.tennis-warehouse.com, (c) Babolat's television commercials on the Tennis Channel, (d) Tennis Channel, ESPN and other networks showing live Nadal and Roddick matches and highlights from Nadal's and Rodick's matches in which Nadal and Roddick were seen playing with what appeared to be the identical AeroPro Drive and Pure Drive Roddick racquets available to the public for sale, (e) Babolat's advertisements in Tennis Magazine, and (f) the labeling on the racquets and the racquet facecards, themselves.

101.   The representations and warranties contained and displayed within the advertisements and labels led Plaintiffs Ahdoot and Clark to believe they were purchasing Nadal's AeroPro racquet and Roddick's Pure Drive Roddick racquets, respectively, and that they were purchasing racquets with tungsten.

102.   Defendant concealed the truth about its products that the racquets sold are not the same as those used by the pros and that they do not contain tungsten.

103.   Defendant knew these statements were false and misleading. Defendant was aware of laws and regulations concerning the claims and marketing of the racquets.

104.   Whether or not the tennis professional uses a particular racquet and whether the racquets contain tungsten are material features of the racquets, themselves.  Plaintiffs and other members of the Class would not have purchased the racquets but for Defendant's false and misleading representations and concealment of material facts.

105.   Defendant made the misrepresentations and omissions stated with knowledge of the effect of concealing these material facts.  Defendant knew that by misleading consumers, it would sell more racquets, which would result in higher profits.

106.   By misrepresenting and concealing material information about the racquets, Defendant intended to induce and did induce Plaintiffs and members of the Class into purchasing the racquets.

107.   Plaintiffs and the members of the Class justifiably relied on the representations made about the products.

108.   Defendant's representations and omissions regarding the tennis

racquets were made with knowledge or with reckless disregard of the laws of California prohibiting false and misleading statements.

109.   Defendant:

    a.    made representations, as facts, which were not true and Defendant did not believe to be true at the time made;

    b.    made assertions, as facts, which were not true and Defendant had no reasonable grounds for believing to be true at the times they were made; and/or

    c.    misled the public, through misleading images and in other manners, to believe facts which Babolat knew were false;

    d.    suppressed facts, which it was bound to disclose, or give information of other facts which were likely to mislead for want of communications of the suppressed facts.

110.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to monies paid for the tennis racquets, stringing the racquets, tennis accessories, and any interest that would have been accrued on those monies, all in an amount to be determined according to proof at time of trial.

111.   The wrongful acts of Defendants were done maliciously, oppressively

and with the intent to defraud, and Plaintiffs and members of the Class are entitled to punitive and exemplary damages in an amount to be ascertained according to proof, which is appropriate to punish, deter, and set an example of Defendant.

112.   Defendant acted with malice, oppression, or fraudulent intent.

113.   As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiffs and each member of the Class has been damaged in an amount according to proof at trial.

## SIXTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

114.   Plaintiffs incorporate by reference and re-allege each and every allegation contained in paragraphs 1 through 113 above as though fully set forth herein.

115.   Defendants, and each of them, directly or through their agents and employees, made false representations, concealments, and nondisclosures to Plaintiffs and members of the Class as described above.  Defendants breached the duties owed to Plaintiffs and its consumers with their long-term advertising campaign spanning more than 4 years, which contained false and misleading statements designed to deceive consumers about the racquets it sells.  The long-term and pervasive advertising campaign also deceives the public without the use of any "statements" at all.  As set forth above, consumers are led to believe, simply

by viewing players sponsored by Babolat (and their racquets) in matches, and/or by viewing images of these players and their racquets in magazines, other publications, the internet and television, that the players are using the same racquets which are available for sale to the public, when in fact, they are not. In fact, the racquets used by the players sponsored by Babolat are painted and otherwise altered to make them *appear* to be the same ones available for sale to the public, but are significantly different than such racquets.

116.   In making the representations of fact to Plaintiffs and members of the Class described herein, Defendants and each of them, have, at a minimum, *negligently* failed to fulfill its duties to disclose the material facts pertaining to the racquets in question. The direct and proximate cause of said failure to disclose was the negligence and carelessness of Defendant.

118.   In making the representations and omissions, and in doing the acts alleged above, Defendants and each of them, acted without any reasonable grounds for believing the representations were true, and either (a) intended by said representations to induce the reliance of Plaintiffs and members of the Class, or (b) acted in reckless disregard of the possibility that Plaintiffs and the members of the class would rely on the representations in question.

119.   Plaintiffs and members of the Class relied on these false representations, concealments and nondisclosures by Defendant when purchasing

the products at issue herein, which reliance was justified.

120.   As a result of Defendant's wrongful conduct, Plaintiffs and members of the Class have suffered and continue to suffer economic losses and other general and specific damages, including but not limited to the amounts paid for the racquets, the costs of stringing the racquet, purchasing accessories such as grips and vibration dampeners, any interest that would have been accrued on those monies, and other damages, all in an amount to be determined according to proof at time of trial.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and the Class, pray for a judgment:

1.   Certifying the Class as requested herein, and appointing Plaintiffs as Class Representatives, and Plaintiffs' counsel as Class Counsel;

2.   Awarding Plaintiffs and the proposed Class Members all due damages, including actual economic damages and general and specific damages;

3.   Awarding restitution and disgorgement of Defendants' revenues to Plaintiffs and the proposed Class Members;

4.   Awarding declaratory and injunctive relief as permitted by law or equity, including: enjoining Defendants from continuing the unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision,

victims of its conduct and pay them restitution and disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

5.      Ordering Defendants to engage in a corrective advertising campaign;

6.      Awarding attorneys' fees and costs to Plaintiffs' counsel;

7.      Awarding punitive damages as against Defendants;

8.      Awarding damages, fines and penalties against Defendants as permitted by law; and

9.      Providing such further relief as may be just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

Date: _____, 2014          **HAMNER LAW OFFICES, APC**

_____
Christopher J.  Hamner
Amy T. Wootton
Attorneys for Plaintiffs PAYAM AHDOOT
and BRANDON CLARK on behalf of
themselves and all others similarly situated

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PROOF OF SERVICE