LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02823 GAF (VBKx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | Payam Ahdoot v. Babolat VS North America | | |

| Present: The Honorable | **GARY ALLEN FEESS** | | |
|---|---|---|---|
| Stephen Montes | None | N/A | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. | |
| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: | | |
| None | None | | |

**Proceedings:**     **(In Chambers)**

**ORDER REQUESTING FURTHER BRIEFING**

In this action, the Parties are seeking preliminary approval of their Settlement Agreement. (See Docket No. 43-1 (Mem. in Support of Mot. for Preliminary Approval of Class Action Settlement ("Mem.")].)  The Court has two concerns that must be addressed before the Court will consider preliminarily approving this settlement as a class action settlement.  Plaintiff's counsel is **ORDERED** to submit a supplemental brief addressing the Court's concerns explained below **no later than Thursday, September 18, 2014.**

First, Plaintiffs' request for attorneys' fees is made without any supporting billing records which prevents the Court from analyzing the reasonableness of the request.

In common fund cases such as the instant case, the district court has discretion to apply either the "percentage of the fund" method or the "lodestar" method for determining attorney's fees.  Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047 (9th Cir. 2002).  The lodestar method, multiplying reasonable hours worked by a reasonable rate, may be used as a cross-check on the reasonableness of fees awarded through a percentage method. Id. at 1048-50.[1]  The Ninth Circuit has acknowledged 25% as a benchmark for fees in common-fund cases as the starting

---

[1] In Vizcaino, the Ninth Circuit noted:

> Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted. Thus, while the primary basis of the fee award remains the percentage method, the lodestar may provide a  useful perspective on the reasonableness of a given percentage award

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02823 GAF (VBKx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | Payam Ahdoot v. Babolat VS North America | | |

point, which can then be adjusted upward or downward based on the circumstances of the case. See Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 272 (9th Cir. 1989).

As part of the Settlement Agreement, Plaintiffs' counsel are asking for 25% of the Gross Settlement Fund of $4,500,000.  (Mem. at 7; Docket No. 43-2 [Decl. of Christopher J. Hamner ("Hamner Decl.")] at Exhibit 1 [Stip. and Agreement of Settlement ("Settlement Agmt.")], at 21-22.)  As Plaintiffs have not provided any documentation regarding their hourly rates, hours worked, or the reasonableness of either, the Court cannot calculate the lodestar to cross-check the amount asked for by Plaintiffs' counsel as attorneys' fees.

Accordingly, the Court **ORDERS** Plaintiffs to submit further briefing detailing *specific information* regarding the number of hours worked, the hourly rate for each attorney charging time to the case, and the reasonable hourly rate, such as the "hourly amount to which attorneys of like skill in the area would typically be entitled."  Ketchum v. Moses, 24 Cal. 4th 1122, 1133 (2001).

Second, the Court is unable to discern if Rust Consulting, Inc., is an appropriate Settlement Administrator absent any information of any sort regarding Rust Consulting, Inc.'s anticipated fees.

A settlement may be approved only after a hearing and on finding that it is fair, reasonable, and adequate.  See Fed. R. Civ. P. 23(e)(2).  In determining whether the Settlement Agreement is fair, reasonable, and adequate, the Court must consider whether the Settlement Administrator recommended by the Plaintiffs, Rust Consulting, Inc., is an appropriate Settlement Administrator.

The Settlement Agreement provides that the "Settlement Administration Expenses shall be fully paid from the Gross Settlement Fund."  (Settlement Agmt. at 21, § A.) Under the Settlement Agreement, Settlement Administration Expenses are "the fees and costs charged and incurred by the Settlement Administrator, including, but not limited to, the fees and costs associated with the banking and escrow charges for the Settlement Account, required notices under the Class Action Fairness Act, 28 U.S.C. §1715, the Publication Notice . . . , the Settlement website, the banner advertisement on Tennis.com, the tollfree Settlement telephone number with recorded messages, the Settlement Administrator's review of claims to determine whether they are Valid Claims, all reports and declarations required to be submitted by the Settlement Administrator under this Settlement Agreement, the fulfillment of all Valid Claims (not including the Class Recovery) and such other costs and expenses of the Settlement

LINK:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-02823 GAF (VBKx) | Date | September 4, 2014 |
|---|---|---|---|
| Title | Payam Ahdoot v. Babolat VS North America | | |

Administrator as required and approved by the Court pursuant to the Settlement Administrator's services agreement." (<u>Id.</u> at 9, § CC)  However, Plaintiffs have not provided the Court the Settlement Administrator's service agreement or any other statement or estimate of Rust Consulting, Inc.'s fees.  Without such information, the Court cannot determine whether Rust Consulting, Inc., is an appropriate Settlement Administrator.

  Accordingly, the court **ORDERS** Plaintiffs to submit further briefing detailing any agreed-upon fee in the services agreement with Rust Consulting, Inc. and/or any estimates of that fee amount.  Plaintiffs are to submit this information by close of business on **Thursday, September 18, 2014.**

  **IT IS SO ORDERED.**